# United States Court Of Appeals

*for the*

# Third Circuit

Case No. 25-3264

IN RE PAUL M. GEORGE

On Appeal from the United States District Court
for the Eastern District of Pennsylvania, Misc. No. 22-mc-50

## BRIEF OF APPELLANT PAUL M. GEORGE

David Rudovsky
KAIRYS, RUDOVSKY, MESSING,
FEINBERG & LIN LLP
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400

Ilana H. Eisenstein
DLA Piper LLP (US)
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103
215-656-3351

*Attorneys for Appellant Paul M. George*

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

JURISDICTIONAL STATEMENT ......................................................................4

STATEMENT OF RELATED CASES OR PROCEEDINGS...................................4

STATEMENT OF THE CASE................................................................................4

      A. The Underlying Habeas Proceedings. ..........................................................4

      B. The Rule 11 Proceedings. .............................................................................9

      C. The Disciplinary Proceedings.....................................................................11

STATEMENT OF THE ISSUES..........................................................................15

SUMMARY OF ARGUMENT .............................................................................16

STANDARD OF REVIEW ...................................................................................19

ARGUMENT ........................................................................................................19

    I.  The Panel Erred in Failing to Recuse from the District Court's Review of the Report and Recommendation After It Abandoned Its Role as a Neutral Arbiter. ..........................................................................................................19

        A.   The Panel Should Not Have Participated in the District Court's Review of its Report and Recommendation. ..................................................20

        B.   The Panel Was Required to Recuse Because It Did Not Function as a Neutral Arbiter. .....................................................................................20

    II.  Disciplinary Counsel Failed to Prove that Mr. George Knowingly or Intentionally Violated Disciplinary Rules 3.1 or 3.3(a)(1) by Clear and Convincing Evidence. ........................................................................................25

        A.   The Panel Did Not Apply the Requisite Clear and Convincing Evidence Standard .................................................................................205

B.   Under the Clear and Convincing Evidence Standard, There Is No Support for the Panel's Findings .......................................................207

III. Disbarment Is a Disproportionate Sanction....................................................40

CONCLUSION .................................................................................................44

# TABLE OF AUTHORITIES

**Cases**

*Berger v. United States*,
  295 U.S. 78 (1935) ................................................................................... 1, 16, 17

*In re Booker*,
  611 F. App'x. 834 (5th Cir. 2015) ...................................................................26

*Clemmons v. Wolfe*,
  377 F.3d 322 (3d Cir. 2004) .............................................................................20

*Commonwealth v. Anderson*,
  323 A.3d 744, 762 (Pa. 2024) ..........................................................................30

*Commonwealth v. Brown,*
  196 A.3d 130 (Pa. 2018) ............................................................................ 17, 30

*Commonwealth v. Brown,*
  No. 32 EM 2023 (Pa. Nov. 12, 2024) ..............................................................29

*Commonwealth v. Laws*,
  378 A.2d 812 (Pa. 1977) ...................................................................................24

*Easley v. Cromartie*,
  532 U.S. 234 (2001) ..........................................................................................19

*Gov't of the V.I. v. Walker*,
  261 F.3d 370 (3d Cir. 2001) .............................................................................24

*Hartman v. Moore*,
547 U.S. 250 (2006) ............................................................................................26

*Hicks v. City of Phila.*,
  753 F. Supp. 3d 409 (E.D. Pa. 2024) ...............................................................25

*Strickland v. Washington*,
  466 U.S. 668 (1984) ....................................................................................... 5, 19

*McCarthy v. United States Drug Enforcement Administration*,

__F.4th__, 2026 WL 850354 (3d Cir. 2025)..........................................................16, 41, 42

*In re Murchison*,
   349 U.S. 133 (1955).................................................................................................24

*Off. of Disciplinary Couns. v. Anonymous Att'y*,
   331 A.3d 523 (Pa. 2025) ................................................................... 25, 26

*Off. of Disciplinary Couns. v. Cappuccio*,
   48 A.3d 1231 (Pa. 2012) ........................................................................41

*Off. of Disciplinary Couns. v. Davis*,
   614 A.2d 1116 (Pa. 1992) ......................................................................41

*Off. of Disciplinary Couns. v. Keller*,
   506 A.2d 872 (Pa. 1986) ........................................................................40

*Off. of Disciplinary Couns. v. Pozonsky*,
   177 A.3d 830 (Pa. 2018) ........................................................................41

*Off. of Disciplinary Couns. v. Preski*,
   134 A.3d 1027 (Pa. 2016) ......................................................................41

*Off. of Disciplinary Couns. v. Wrona*,
   908 A.2d 1281 (Pa. 2006) ......................................................................41

*Polselli v. Nationwide Mut. Fire Ins.*,
   23 F.3d 747(3d Cir. 1994) ......................................................................26

*In re Surrick*,
   338 F.3d 224 (3d Cir. 2003) ................................................................ 4, 19

*Rice v. McKenzie*,
   581 F.2d 11114 (4th Cir. 1978)..............................................................20

*Russell v. Lane,*
   890 F.2d 947 (7th Cir. 1989)............................................................ 20, 21

*Rogers v. Superintendent Greene SCI*,
   80 F.4th 458 (3d Cir. 2023)....................................................................23

*Strickler v. Greene,*
    527 U.S. 263 (1999)..................................................................................................34

*Thomas v. Terra,*
    No. 24-cv-5191 (E.D. Pa. Sept. 3, 2025)................................................... 34, 35

*United States v. Armstrong,*
    517 U.S. 456 (1996)..................................................................................................26

*United States v. James,*
    938 F.3d 719 (5th Cir. 2019)........................................................................ 25, 26

*United States v. Ottaviano,*
    738 F.3d 586, 595 (3d Cir. 2013)............................................................... 23, 24

*United States v. Vallejo,*
    297 F.3d 1154 (11th Cir. 2002)...........................................................................26

*United States v. Wise,*
    515 F.3d 207 (3d Cir. 2008) ...............................................................................19

*Wharton v. Superintendent SCI Graterford,*
    No. 22-9001 (3d Cir. Feb. 6, 2023)................................................... 29, 30, 31

*Wharton v. Sup't Graterford SCI,*
    95 F.4th 113 (3d Cir. 2024)....................................................................................4

*Wharton v. Sup't Graterford, SCI,*
    95 F.4th 140 (3rd Cir. 2024) ........................................................................*passim*

*Wharton v. Vaughn,*
    371 F. Supp. 3d 195 (E.D. Pa. 2019) ................................................................7

*Wharton v. Vaughn,*
    No. 01-cv-6049, 2022 WL 1488038 (E.D. Pa. 2022)............................... 7, 8, 9

*Wharton v. Vaughn,*
    No. 01-cv-6049, 2022 WL 4133291 (E.D. Pa. Sept. 12, 2022).............. 10, 11

*Wharton v. Vaughn,* [WHARTON I]
    722 F. App'x 268 (3d Cir. 2018)................................................................. 4, 5, 9

*Williams v. Pennsylvania,*
  579 U.S 1, 14 (2016) ....................................................................................*passim*

**Statutes**

28 U.S.C. § 47.....................................................................................................................20

28 U.S.C. § 455...................................................................................................................20

28 U.S.C. § 1291 ...................................................................................................................4

28 U.S.C. § 2241(a) ..............................................................................................................4

28 U.S.C. § 2253(c)(2) ..........................................................................................................8

**Rules**

ABA Model Rules for Lawyer Discipline Rule 3 cmt.......................................................21

E.D.P.A. Local Rule 83.61 ................................................................................................21

E.D.P.A. Local Rule 83.61 ................................................................................................21

Fed. R. Evid. 614...............................................................................................................23

Pennsylvania Rules of Professional Conduct 3.1 .......................................................*passim*

Pennsylvania Rules of Professional Conduct 3.3(a)(1) ...............................................*passim*

Pennsylvania Rules of Professional Responsibility 3.1 .....................................................11

Pennsylvania Rules of Professional Responsibility 3.3(a)(1)............................................11

**INTRODUCTION**

For nearly half a century, Appellant Paul M. George has served the Commonwealth of Pennsylvania and its courts with professionalism, integrity, and respect for the rule of law. He was a public defender and an assistant district attorney, and for a number of years engaged in the private practice of law. Over the course of thousands of cases, Mr. George has earned a reputation for meticulous preparation, candor, and even-tempered judgment. His career reflects the qualities courts have repeatedly identified as hallmarks of our profession: fidelity to constitutional principles, respect for the courts, and a commitment to ensuring that "justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). Indeed, this Court described Mr. George as a "dedicated public servant." *Wharton v. Sup't Graterford, SCI*, 95 F.4th 140, 151 (3rd Cir. 2024). Until this matter, no court or disciplinary body had ever questioned his ethics or professionalism.

That record makes the district court's decision all the more extraordinary. Despite Mr. George's otherwise exemplary record, the disciplinary Panel recommended, and the district court approved, Mr. George's disbarment based on representations he made in conceding error in single capital case, *Wharton v. Sup't Graterford*, No. 01-cv-6049 (E.D. Pa.), on behalf of the Philadelphia District Attorney's Office ("DAO"). Reversal of this sanction is mandated by a series of procedural and evidentiary errors that undermine the findings of the Panel and the district court. The Panel also erred in not applying the

1

controlling standard of clear and convincing evidence required in disciplinary proceedings. The Panel erred again when it sat in review of its own decision, participating in the vote to adopt the Report and Recommendation ("R&R"), thereby contravening settled recusal doctrine that forbids judges from reviewing their own findings. That participation was particularly prejudicial as the Panel had taken on an advocacy role, interrogating Mr. George in a manner that reflected prejudgment.

On the merits, the Panel's findings are unsupported by the record, incompatible with governing legal standards, and inconsistent with the conclusions this Court reached when it reviewed the same conduct in the Rule 11 proceedings. On the full record, there is no clear and convincing evidence to sustain the district court's adoption of the Panel's finding of a knowing or intentional violation of Pennsylvania Rules of Professional Conduct 3.1 or 3.3(a)(1). The Panel relied on its finding that the DAO and Mr. George had a policy to concede relief in every post-conviction death penalty case regardless of the merits of the claim such that it found the concession here was "pre-ordained." App.226. That finding, which informed virtually every aspect of the Panel's R&R, was not supported by the record, much less by clear and convincing evidence. Neither the Panel nor Disciplinary Counsel presented any evidence that Mr. George conceded relief in any other capital case without a good-faith basis or that he violated any ethical rules in his other submissions. The undisputed evidence, moreover, shows that Mr. George did not concede relief in all capital cases. Rather, Mr. George exercised his professional

judgment on a case-by-case basis to assess which claims lacked merit and those that warranted more careful consideration, at times opposing relief and at other times conceding meritorious claims consistent with constitutional norms.

While there is evidence supporting the finding that Mr. George was negligent in failing to fully advise the district court in *Wharton* of anti-mitigation evidence, negligence cannot serve as the basis for a violation of Rules 3.1 or 3.3(a)(1), let alone provide grounds for disbarment. This Court has held that the Rule 11 sanctions imposed on the DAO were "mild and fitting" and declined to find that Mr. George acted intentionally. *Wharton*, 95 F.4th at 151. Accordingly, there are no grounds to support further sanctions, much less disbarment, especially given the lack of evidence and the fundamental procedural errors that marked this proceeding. The sanction of disbarment—reserved for only the most egregious of ethical violations—is grossly disproportionate to the circumstances here and cannot be upheld.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 2241(a); *In re Surrick*, 338 F.3d 224, 229 (3d Cir. 2003) ("The District Court has the inherent authority to set requirements for admission to its bar and to discipline attorneys who appear before it."). This Court has jurisdiction to hear this appeal under 28 U.S.C. § 1291.

## STATEMENT OF RELATED CASES OR PROCEEDINGS

A related case has been before this Court on the issue of sanctions under Federal Rule of Civil Procedure 11. *Wharton v. Sup't Graterford SCI*, 95 F.4th 140 (3d Cir. 2024); *see also Wharton v. Sup't Graterford SCI*, 95 F.4th 113 (3d Cir. 2024); *Wharton v. Vaughn*, 722 F. App'x 268 (3d Cir. 2018) (per curiam) (appeals in underlying habeas corpus case).

## STATEMENT OF THE CASE

### A.    The Underlying Habeas Proceedings.

This disciplinary proceeding stems from a concession made by Paul George, an Assistant District Attorney for Philadelphia County, of penalty-phase relief sought by Robert Wharton, who had been convicted in 1985 of capital murder and who challenged his death sentence in a 2003 federal capital habeas petition alleging ineffective assistance of trial counsel. On appeal from an order dismissing the habeas claim, this Court vacated and remanded the claim that trial counsel was ineffective for failing to offer penalty-phase mitigating evidence concerning his good behavior while in prison. *Wharton v. Vaughn*, 722 F. App'x 268, 284 (3d Cir. 2018) (per curiam) ("Wharton I"). The Court

held that Wharton had made a *prima facia* showing under the prejudice prong from *Strickland v. Washington*, 466 U.S. 668 (1984), and stated that the district court "must reconstruct the record and assess it anew" and "take account of the anti-mitigation evidence that the Commonwealth would have presented to rebut petitioner's mitigation testimony." *Wharton I*, 722 F. App'x at 282-83 (quoting *Williams v. Beard*, 637 F.3d 195, 227 (3d Cir. 2011)).

At the time of the remand, Mr. George was an Assistant Supervisor of the Law Division within the DAO, where he was responsible for reviewing post-conviction capital cases. App.210. In that capacity, Mr. George provided a memorandum to the District Attorney's Capital Case Review Committee ("CCRC"), which had been established by District Attorney Lawrence Krasner (the "DA") to provide him with recommendations on post-conviction capital matters. App.76-78; App.225.

In preparing that memorandum, Mr. George engaged in a comprehensive review of the 17-day death penalty hearing in Wharton, and the briefing and rulings in the 30-year post-conviction and habeas proceedings that followed. App.137-38; App.439. All agree that the prosecutor in Wharton's capital proceeding zealously advocated for the death penalty. App.138. But that prosecutor elected not to present evidence that, following Wharton's first sentencing, he was convicted of attempting to escape prison. That prosecutor was aware of the escape attempt and could have supplemented its notice with respect to statutory aggravators to admit this evidence, which would also have

rebutted Wharton's evidence of good character. *Id.*; App.445-46. This available, but unutilized, escape attempt would later become the focus of the habeas proceedings on remand from the Third Circuit.

Mr. George reviewed the record of Wharton's death-penalty hearing and the lengthy post-conviction and habeas proceedings that followed in which counsel for the Commonwealth did not reference the conviction. App.439. Mr. George, however, did not take further steps to search for Wharton's prison record beyond what was referenced in post-conviction and habeas proceedings. As he explained, "what misled me, and I'm very sorry that it did, is that when [the prison record] issue came up, years and years and years of litigation took place . . . and nobody ever said, look, he tried to escape before . . . ." App.148-49.

Based on the information in the existing record, the DA agreed with the CCRC recommendation to concede relief, and the DAO filed a Notice of Concession for Death Penalty Relief with the district court, patterned on language in notices filed by previous DAO administrations, stating:

> Following review of this case by the Capital Case Review Committee of the Philadelphia District Attorney's Office, communication with the victims' family, and notice to petitioner's counsel, respondent hereby reports to the Court that it concedes relief on petitioner's remaining claim of ineffective assistance at the second penalty hearing, and does not contest the grant of a conditional writ of habeas corpus with respect to petitioner's death sentence[].

App.308. Thereafter, the DAO filed a notice of joint proposed order for relief, App.311, which stated that based "upon a careful and independent review of all of the parties' submissions and all prior proceedings in this matter," the "writ of habeas corpus is granted in part, as to the sentences of death, on the ground of counsel's ineffectiveness at the second penalty hearing." *Id.*

Judge Goldberg declined to adopt the proposed order, explaining (as had been expressly referenced in the proposed language) that "the law requires that [he] independently evaluate the merits of Wharton's remaining claim." *Wharton v. Vaughn*, 371 F. Supp. 3d 195, 197 (E.D. Pa. 2019). Judge Goldberg ordered the parties to brief two issues: (1) "May a court grant habeas relief based only on the District Attorney's concession, or must it independently evaluate the merits of the conceded claim," and (2) "can an independent evaluation of the merits of the remaining sentencing claim be made on the current record." *Id.* at 199–202 (capitalization removed). On behalf of the DAO, Mr. George filed a brief explaining that that in this case the DAO was "ethically obligated to concede relief," but that the Court was "not bound to[] accept that concession." App.317.

In aid of his independent review, Judge Goldberg also requested that the Pennsylvania Attorney General's Office ("AG") participate as *amicus curiae*. *Wharton v. Vaughn*, No. 01-cv-6049, 2022 WL 1488038, *4 (E.D. Pa. 2022). For the first time in the thirty-year post-conviction proceedings, the AG argued that Wharton was not eligible

for post-conviction relief because of an attempted escape from prison after his first death penalty hearing (while being transported from a City Hall courtroom on a different matter). App.331-32. The AG argued that this anti-mitigation evidence rebutted the claim that trial counsel was ineffective for failing to present evidence of good conduct while in prison, because the escape attempt would have overpowered any mitigation evidence that Wharton presented about his good behavior in prison. *Id.* The AG also asserted that certain family members, including the surviving victim, were not contacted about the status of the case before the concession, and that they were opposed to penalty-phase relief. App.322.

Judge Goldberg denied habeas relief, finding that there was "no reasonable probability that, but for counsel's alleged deficient performance, one juror would have voted to impose a life, rather than a death sentence." *Wharton v. Vaughn*, No. 01-cv-6049, 2022 WL 1488038, *1 (E.D. Pa. May 11, 2022). Nevertheless, Judge Goldberg concluded that it was a close case and issued a certificate of appealability, acknowledging that Wharton had made a "substantial showing of the denial of a constitutional right." App.371 (quoting 28 U.S.C. § 2253(c)(2)). Judge Goldberg also found that "on two critical issues in this case, it appears that the District Attorney was less than candid with this Court." *Wharton*, 2022 WL 1488038, at *16. The first issue involved "facts known to the District Attorney, but withheld, regarding Wharton's premeditated escape from a Philadelphia courtroom." *Id.* The second issue involved the "District Attorney's

representation to [the Court] that in reaching its decision to concede the death penalty, and asking that [the Court] vacate Wharton's death sentence, the District Attorney had consulted with the victims' family." *Id.* Judge Goldberg determined that there were sufficient grounds on which to invoke Rule 11 and held an evidentiary hearing to determine whether the Rule was violated. *See id.* at *21; App. 377-480.

### B.    The Rule 11 Proceedings.

At the Rule 11 evidentiary hearing, Mr. George testified that he was unaware of the attempted prison escape at the time the DAO filed the Notice of Concession. App.448. More specifically, as detailed above, Mr. George had comprehensively reviewed the 17-day death penalty hearing, and the 30-year post-conviction and habeas proceedings that followed. App.137-39. In these circumstances, Mr. George believed that the remand order to search for anti-mitigation evidence that a prosecutor "*would have presented* to rebut the petitioner's mitigation testimony," *Wharton I*, 722 F. App'x at 282-83 (emphasis added) (quoting *Williams*, 637 F.3d at 227), was satisfied. Nevertheless, Mr. George acknowledged that under the remand order, he should have searched Wharton's criminal record. App.138.

With respect to the notifications to the victim's family, the DAO's Witness Victim Coordinator ("WVC") called one of the victim's brothers, Reverend Hart, to inform him that the DAO was considering a possible concession on the death-penalty claim. The WVC asked for the family's additional contact information, but Reverend Hart stated

that he would "talk to his sister, brother, his brother-in-law . . . and his niece [who was the surviving victim] . . . and would provide them with [the WVC's] contact information." App.374. After the call with Reverend Hart, the WVC sent him an email reiterating the WVC's request that Reverend Hart "provide [her] contact information to your siblings [and other family members]." App.376. Once the DAO decided to concede the habeas death-penalty claim, the WVC again notified Reverend Hart and informed him that the family would be notified of any court hearing on the matter. Nevertheless, Mr. George acknowledged that each family member should have been informed of the concession.

Judge Goldberg concluded that "the Philadelphia District Attorney's Office and two of its supervisors violated Federal Rule of Civil Procedure 11(b)(3) based upon that Office's representations to this Court that lacked evidentiary support and were not in any way formed after 'an inquiry reasonable under the circumstances.'" *Wharton v. Vaughn*, No. 01-cv-6049, 2022 WL 4133291, *2 (E.D. Pa. Sept. 12, 2022) (quoting Fed. R. Civ. P. 11(b)(3)). The court found that the representation that the DAO had conducted a "careful review" of the record was inaccurate because Mr. George did not search Wharton's criminal record and that the statement in the Notice of Concession that the DAO's concession followed "communication with the victims' family" was "misleading" because it gave the impression that the entire family had been consulted before the decision to concede and agreed with that decision. *Id.* at *9–11.

10

Judge Goldberg ordered the DAO to send written apologies to the families of the victims in *Wharton* and, in future cases of concessions of relief, ordered the DAO to provide a "full, balanced explanation of facts that could affect [the Court's] decision to accept or reject the concession." *Id.* at *13. Judge Goldberg noted that "[o]ther than the admonition contained in this Opinion, the Court declines to impose any monetary or non-monetary sanctions on" Mr. George and his supervisor. *Id.*

On appeal, this Court affirmed and held that the district court did not abuse its discretion in imposing Rule 11 sanctions. *Wharton v. Superintendent Graterford, SCI*, 95 F.4th at 150. The Court emphasized that Judge Goldberg "did not find that [Mr. George] misled the court intentionally, nor do we." *Id.* at 151. Accordingly, the Court described Judge Goldberg's sanctions as "mild and fitting" and properly "tailored" to Rule 11's central goal of deterrence. *Id.*

## C. The Disciplinary Proceedings.

The Chief Judge of the district court referred this matter for consideration of disciplinary sanctions to a panel of three district court judges, App.10, and appointed Disciplinary Counsel to determine whether there was cause to believe that Mr. George or his supervisor had engaged in unprofessional conduct under the Rules of Professional Conduct, App.481.

Disciplinary Counsel filed a Petition for Rule to Show Cause why Mr. George should not be disciplined under Pennsylvania Rules of Professional Responsibility 3.1

and 3.3(a)(1). App.481-495. The Show Cause Petition framed the question presented as "whether Mr. George intentionally misled the Court on the facts and the law when he directed his subordinates to ask the Court to enter an order vacating a jury's sentence of death in response to a habeas corpus petition brought by Robert Wharton[.]" App.481. Disciplinary Counsel further suggested that Mr. George acted pursuant to "a policy or practice not to contest habeas corpus petitions challenging a death sentence." App.492.

In response to the assertion by Disciplinary Counsel (and the Panel) that the DAO had a policy not to contest any habeas corpus petitions challenging a death sentence, Mr. George testified that there was no DAO concession policy and that he conducted an individualized review of cases to recommend the DAO's position. App.191. He explained that, on behalf of the DAO, he opposed relief in death penalty cases where the claim was not supported by the facts or law and did so without CCRC review. *See* App.87-90; *see also* App.201. In support, he submitted court documents from five capital cases where, at different stages of the proceedings, he had opposed granting relief. App.510. At the same time, Mr. George made clear that, just as courts consider new claims for relief, if the defendant-petitioner later alleged meritorious grounds for relief, he would concede error. Yet, neither the Panel (which had stated its intention to investigate all capital case concessions) nor Disciplinary Counsel (who raised the issue of a concessions policy) identified any other cases in which the DAO conceded relief

12

without a good-faith basis for doing so, or in which it misled the courts that granted relief. *See generally* App.209-39.

Nevertheless, the Panel found that the DAO had a policy "to concede relief in every death penalty case that arises on post-conviction review," App.226, that "[the] so-called Capital Case Review Committee was designed solely to facilitate the manner in which to concede relief, not debate whether or not to do so," *id.*, and that Mr. George was "the chief architect of the stratagem" to "overturn" death sentences, App.228, 236. The Panel's R&R cited no record evidence in support of these conclusions. The Panel and the district court nevertheless relied on these findings in concluding that Mr. George knowingly made false statements in violation of Pennsylvania Rules of Professional Conduct 3.1 and 3.3(a)(1). App.221. Essential to each aspect of the Panel's decision—its adverse credibility determinations against Mr. George, its finding on the merits that Mr. George intentionally lied, and its ultimate of disbarment of Mr. George—was the Panel's predicate finding that the DAO had a policy of conceding error in all death penalty cases. It ruled that Mr. George's representations in the *Wharton* case were intentionally misleading because they were in furtherance of that policy, App.226, 229, and that his refusal to acknowledge this purported policy reflected dishonesty, App.237.

The Panel recommended that Mr. George be disbarred "to protect the profession and the public." App.234. In explaining the basis for this sanction, the Panel asserted

13

that Mr. George acted out of a "dishonest or selfish motive" by "placing the DAO's policy priorities above its professional and prosecutorial obligations" and tried "to use a federal court to bypass the state judiciary's limits on prosecutorial authority." App.235-36. Although the Panel briefly noted Mr. George's exemplary forty-eight-year career, it found, without evidence of any ethical violations beyond the disclosure in *Wharton*, that "[i]n the final years of his career, he used that experience to circumvent and subvert, in misleading and dishonest ways, verdicts rendered by judges and juries who heard the evidence and applied the law." App.238.

Mr. George lodged objections to the R&R and requested that the Panel members recuse from the district court's vote to accept or reject the R&R. App.240, 273. The judges who comprised the Panel nevertheless actively participated in the vote itself. App.305. The district court adopted the R&R by a divided vote. *Id.* The number of judges who voted for or against was not revealed.[1]

---

[1] Counsel for Mr. George moved the district court to disclose whether the Panel members participated in the deliberation and vote on the R&R as well as the final vote by the district court on whether to affirm the R&R. *Id.* The Chief Judge disclosed the fact of the Panel members' participation in the vote but denied the request to reveal the actual vote count. *Id.*

## STATEMENT OF THE ISSUES

1.    Whether the Panel, which refused to recuse itself from participating in the district court's vote to adopt the Panel's Report and Recommendation, after acting as investigators and showing a lack of neutrality, created an appearance of impropriety and violated the due process rights of Mr. George.

2.    Whether disciplinary counsel failed to prove that Mr. George knowingly or intentionally violated the Rules of Professional Conduct by clear and convincing evidence, and whether the district court erred in failing to apply this standard in finding that Mr. George engaged in sanctionable conduct.

3.    Whether the district court erred in concluding that disbarment was an appropriate sanction.

## SUMMARY OF ARGUMENT

The disciplinary order cannot stand for three independent reasons. First, the proceedings were fundamentally tainted by procedural structural errors. After conducting evidentiary hearings, making credibility determinations, and issuing an R&R, the judges on the Panel participated in the district court's vote to adopt its own findings. Their participation in the review process was improper because factfinders may not sit in a review of their own decision. Vacatur is required for this defect alone.

Second, the Panel and the district court failed to apply the governing clear and convincing standard of proof in attorney-discipline matters. The Panel did not cite or acknowledge this heightened standard. Moreover, the record does not support its findings that Mr. George knowingly or intentionally violated Rules 3.1 or 3.3(a)(1). *See McCarthy v. United States Drug Enforcement Administration*, __F.4th__, 2026 WL850354, at *5 (3d Cir. 2025) (Rule 3.3 requires "*knowingly* making a false statement of material fact to a tribunal or failing to correct a false statement" made previously) (emphasis added, alterations omitted). The Panel's conclusions rested on an unfounded premise—that the Philadelphia DAO maintained a blanket policy of conceding relief in all capital post-conviction cases, and that Mr. George intentionally misled the court to advance that alleged policy. There was no clear and convincing evidence that such a policy existed and, to the contrary, the undisputed testimony showed a practice of case-by-case, individualized assessments, all consistent with longstanding prosecutorial practices and

16

the constitutional responsibility of a prosecutor to ensure "justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). The concessions were the result of structural constitutional infirmities that historically plagued death-penalty cases in Philadelphia, rather than an unproven "stratagem" by Mr. George to concede relief irrespective of the facts or law.

The Panel's assertion that the Pennsylvania Supreme Court's decision in *Commonwealth v. Brown*, 196 A.3d 130 (Pa. 2018), required prosecutors to vigorously defend capital sentences and to maintain an adversarial process was mistaken. There, the Court recognized the prosecutor's duty to concede error in cases of constitutional violations, but it also made clear that the court should independently evaluate the evidentiary and legal basis for the concession. *Id.* at 323. The remaining findings—that Mr. George failed to verify the extent of victim-family contact—reflect at most negligence, a level of culpability that cannot justify sanctions under Rules 3.1 or 3.3(a)(1).

Third, even if some violation could be inferred, the sanction of permanent disbarment is grossly disproportionate. Disbarment is reserved for the most egregious misconduct: fraud, exploitation, dishonesty that causes concrete harm, or patterns of deceit. Nothing in Mr. George's nearly fifty-year spotless career resembles such conduct. This Court described the "minor" Rule 11 sanctions imposed as "mild and fitting." *Wharton II*, *Wharton v. Superintendent Graterford, SCI*, 95 F.4th at 151. To impose the

harshest penalty for the same conduct is inconsistent with principles of proportionality and with all relevant precedent.

For these reasons, the judgment should be reversed and the charges dismissed. In the alternative, the matter should be remanded for a new hearing before a new panel.

## STANDARD OF REVIEW

This Court reviews attorney-discipline decisions for abuse of discretion. *In re Surrick*, 338 F.3d 224, 229 (3d Cir. 2003). A district court abuses its discretion "if its decision was based on a clearly erroneous factual conclusion or an erroneous legal conclusion." *United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008). A factual finding is clearly erroneous when this Court has a "definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001). This Court's review of the district court's legal determinations is *de novo. In re Surrick*, 338 F.3d at 229.

## ARGUMENT

**I.  The Panel Erred in Failing to Recuse from the District Court's Review of the Report and Recommendation After It Abandoned Its Role as a Neutral Arbiter.**

The District Court's decision should be vacated because the Panel members failed to recuse from the full court vote. After presiding over an evidentiary hearing, and taking on the role of trial judges, the Panel members engaged in what was effectively appellate review of their decision. In this case, where the Panel took on the role of investigators and advocates, rather than that of neutral arbiters, the Panel's failure to recuse was structural error that was "not amenable" to harmless error review. *Williams v. Pennsylvania,* 579 U.S 1, 14 (2016) (internal quotation marks omitted).

### A.    The Panel Should Not Have Participated in the District Court's Review of its Report and Recommendation.

The Panel's participation in the district court's vote on its own R&R contravened 28 U.S.C. § 455 and created an appearance of impropriety and a violation of Mr. George's due process rights. As this Court has ruled, it is a "bedrock principle of a hierarchal judiciary that '[n]o judge shall hear or determine an appeal from the decision of a case or issue tried by him.'" *Clemmons v. Wolfe*, 377 F.3d 322, 325 (3d Cir. 2004) (alteration in original) (quoting 28 U.S.C. § 47). Even in "[t]he absence of a directly applicable statute," it "in no way diminishes the importance to a litigant of review by a judge other than the judge who presided over the case at trial." *Id.* Allowing a judge to sit in review of its own decision "create[s] an appearance of impropriety that runs 'the risk of undermining the public's confidence in the judicial process.'" *Id.* at 328 (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)). This Court has exercised its inherent "supervisory power to require that each federal district court judge in this circuit recuse himself or herself from participating in" habeas proceedings where they had played a role in the prior proceedings. *Id.* at 329.

Other courts have reached the same result under 28 U.S.C. § 455(a), which requires judges to disqualify if there is a risk of bias. *See Russell v. Lane,* 890 F.2d 947, 948 (7th Cir. 1989) (Posner, J.) (the district judge should have recused from a habeas petition because the judge reviewed the conviction as a state appellate judge); *Rice v. McKenzie*, 581 F.2d 11114, 117 (4th Cir. 1978). As the Seventh Circuit explained in *Russell*, "it is

20

considered improper—indeed is an express ground for recusal, *see* 28 U.S.C. § 47—in modern American law for a judge to sit on the appeal from his own case." 890 F.2d at 948.

Here, the Panel, whose role was that of a trial court, sat in appellate review of its own R&R. *See* ABA Model Rules for Lawyer Discipline Rule 3 cmt. (those presiding over disciplinary proceedings "conduct trials"); L.R. 83.6, Rule V.B ("[I]f any issue of fact is raised . . . the Chief Judge shall set the matter for prompt hearing . . . before a panel of three other judges of this court."). The Panel conducted hearings, heard testimony, and made findings of fact and conclusions of law. Mr. George submitted objections to the Panel's R&R, a filing that served as an appellate brief. The District Court reviewed those findings and conclusions, along with Mr. George's objections, in a proceeding that constituted appellate review of the Panel's factual findings and legal conclusions.

That error was structural and requires vacatur. In *Williams*, the U.S. Supreme Court found a structural due process error where the Chief Justice of the Pennsylvania Supreme Court participated in a death penalty appeal in a case in that was brought while he was the District Attorney, though he was not the prosecuting attorney at the trial. 579 U.S. at 4. The Court vacated the death penalty even though the Chief Justice's vote was not outcome determinative. *Id.* at 14. Surely, if a former District Attorney may not participate in a judicial review of a death sentence imposed during his tenure as the chief

prosecutor, even where he had no direct involvement in the underlying case, judges who, as here, make evidentiary rulings, factual findings, and legal conclusions, may not participate in a review of the trial or hearing over which they presided.

### B. The Panel Was Required to Recuse Because It Did Not Function as a Neutral Arbiter.

The failure to recuse was particularly problematic where the Panel departed from its role as a neutral arbiter and undertook an active inquisitorial and advocacy role. On both direct and cross-examination of Mr. George, the Panel repeatedly interrupted counsel's questioning and engaged in aggressive and demeaning questioning. Disciplinary Counsel asked some seventy questions, App.155-185, while the Panel asked close to two hundred. *See, e.g.*, App.74-77, 80, 90-92, 188-200. More troubling, the Panel's questions reflected a prejudgment of the case and an entirely baseless belief that Mr. George had conceded relief in other cases where there was no legal or factual basis for vacating the death penalty. The Panel pointedly reminded Mr. George that he was "under oath" when he testified to his case-by-case review of death penalty claims and his opposition to relief in specific cases. App.105. The Panel even insinuated that Mr. George, a seventy-five-year-old man who relies on a hearing aid, was lying when he stated that he had not heard part of a panel member's question. App.146 (Judge responding, "Well, you heard it. You may not want to answer it, but you heard it.").[2] In

---

[2] *See also* App.134 (accusing Mr. George of acting "as counsel" and not as a witness when he testified that the death concession statement in *Wharton* and in other DAO

doing so, the Panel's duty to neutrality was seriously compromised. *See Williams*, 579 U.S. at 16 (due process is meant to ensure that "no member of the court is 'predisposed to find against [the appellant]'" (quoting *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980)).

Although a court is permitted to conduct probing and critical questioning of witnesses, the Panel's questioning crossed into the role of an advocate for Disciplinary Counsel. These questions and assertions reflected the Panel's preconceived view that the DAO had a policy of concessions, a view that was particularly problematic because the Panel refused to allow Mr. George to fully explain his practices in considering concessions. *See* Fed. R. Evid. 614, Advisory Committee's note to subdivision (b) ("The authority [to question a witness] is, of course, abused when the judge abandons his proper role and assumes that of advocate . . . .").

This Court has noted that "the Pennsylvania Supreme Court has proscribed questioning from the bench that 'clearly convey[s] the impression that the trial court d[oes] not believe [a witness'] trial testimony' or puts 'pressure [on] a witness to testify in a particular way.'" *Rogers v. Superintendent Greene SCI*, 80 F.4th 458, 463 (3d Cir. 2023) (alterations in original) (quoting *Commonwealth v. Laws*, 378 A.2d 812, 816 (Pa. 1977)). "[A] trial judges cannot . . . take over the cross-examination from the government to merely emphasize the government's proof or question the credibility of the defendant

---

concession were in the same form as submitted by former DAO administrations); App.171, 190 (interrupting and eventually cutting off Mr. George's testimony, with an admonition to "stop arguing" and refusing Mr. George's request to explain his practices).

and [the] witness." *United States v. Ottaviano*, 738 F.3d 586, 595 (3d Cir. 2013) (ellipses in original) (quoting *United States v. Beaty*, 722 F.2d 1090, 1095 (3d Cir. 1983)). While such questioning is particularly problematic in a jury trial, the concern of improper questioning remains even outside the presence of a jury because the trial judge's questioning may unduly pressure a witness to change their testimony. *See Laws*, 378 A.2d at 326.

As argued further below, because the Panel lacked clear and convincing evidence to find an intentional or knowing violation, the district court's order of disbarment should be reversed, as discussed in Part II.B *infra*. Alternatively, because of the Panel's improper refusal to recuse from the full district court vote, vacatur and remand for a new hearing is mandated before a different panel as a matter of due process as in *Williams*, pursuant to this Court's supervisory authority, or as a violation of Section 455(a), *Williams,* 579 U.S. at 16; *see also Gov't of the V.I. v. Walker*, 261 F.3d 370, 376 (3d Cir. 2001) (ruling that a new judge be appointed on remand, stating the "conduct and comments of the trial judge here make it exceedingly difficult to resurrect an appearance of impropriety without remand to a different sentencing judge"); *see also In re Murchison*, 349 U.S. 133, 133 (1955) (finding due process violation where the judge who sat as the "Michigan 'judge-grand jury'" also presided over a hearing at which witnesses were adjudged in contempt for their conduct before the grand jury).

24

**II.    Disciplinary Counsel Failed to Prove that Mr. George Knowingly or Intentionally Violated Disciplinary Rules 3.1 or 3.3(a)(1) by Clear and Convincing Evidence.**

**A.    The Panel Did Not Apply the Requisite Clear and Convincing Evidence Standard.**

The Pennsylvania Supreme Court has held that Disciplinary Counsel bears the burden of establishing a violation of the Rules of Professional Conduct by clear and convincing evidence. *Off. of Disciplinary Couns. v. Anonymous Att'y*, 331 A.3d 523, 534–35 (Pa. 2025).[3] That standard "requires evidence that is 'so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, the truth of the precise facts [in] issue.'" *Id.* at 533 (alterations in original) (quoting *Rohm & Haas Co. v. Continental Cas. Co.*, 781 A.2d 1172, 1179 (2001)). The Panel neither mentioned the "clear and convincing" standard in its R&R, nor did it make any statements acknowledging the heightened standard of proof. And, notwithstanding *Anonymous Attorney*, Disciplinary Counsel, in his post-hearing briefing, questioned whether that standard should be applied. App.297.

In these circumstances, the Panel's failure to address the burden of proof in the R&R, and the district court's failure to address the burden of proof in its adoption of that R&R, strongly supports the conclusion that both the Panel and the district court

---

[3] "The Rules of Professional Conduct adopted by this court are the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania." *Hicks v. City of Phila.*, 753 F. Supp. 3d 409, 414 n.7 (E.D. Pa. 2024) (quoting E.D. Pa. Civ. R. 83.6.IV.B).

failed to apply this standard. *See United States v. James*, 938 F.3d 719, 723 (5th Cir. 2019) (remanding case because the trial court "was silent as to the burden of proof" and thus it was "not clear whether the district court here applied a clear and convincing evidentiary standard"); *United States v. Vallejo*, 297 F.3d 1154, 1171 (11th Cir. 2002) ("We will not assume that the district court applied the proper standard in the absence of any explicit statement by the court."); *In re Booker*, 611 F. App'x. 834, 835–36 (5th Cir. 2015) (in an attorney discipline case the failure of the magistrate judge and district court to cite the clear and convincing evidence standard required a remand); *Off. of Disciplinary Couns.*, 331 A.3d at 540 (remanding attorney discipline case for the disciplinary tribunal to reconsider the case under "a standard of clear and convincing evidence"); *Polselli v. Nationwide Mut. Fire Ins.*, 23 F.3d 747, 752 (3d Cir. 1994) (remanding trial court's decision because it did not apply a clear and convincing standard of proof).

As explained below, because there was no evidentiary basis for the finding that Mr. George acted intentionally or knowingly under the Rules of Professional Conduct, this Court should reverse the District Court's decision. At a minimum, however, this Court should remand for a new hearing before a different panel.[4]

---

[4] A rigorous application of the clear and convincing evidence standard is particularly important here, where the Panel is reviewing Mr. George's conduct in the course of his prosecutorial duties, which would normally be entitled to a strong presumption of prosecutorial regularity that could be displaced with only "clear evidence to the contrary." *United States v. Armstrong,* 517 U.S. 456, 464 (1996) ("[I]n the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." (internal quotation marks omitted)); *see also Hartman v. Moore,* 547 U.S. 250, 263

**B.    Under the Clear and Convincing Evidence Standard, There Is No Support for the Panel's Findings.**

If the district court had applied the proper standard of proof—clear and convincing evidence—it could not have found that Mr. George violated the Rules of Professional Conduct. The Panel determined that Mr. George intentionally misstated that he had (1) carefully reviewed the record before filing the Notice of Concession, and (2) communicated with the victims' family. App.209-39.

### 1.    There is no clear and convincing evidence that Mr. George knowing or intentionally misled the district court regarding his review of the record.

The Panel's finding that Mr. George intentionally misled Judge Goldberg was based on the Panel's stated belief that Mr. George acted in furtherance of a blanket "policy" of always conceding relief. *See* App.226. But the predicate finding that Mr. George and the DAO pursued a policy to always concede relief is not supported by clear and convincing evidence. No direct evidence supported the existence of the purported blanket policy: Disciplinary Counsel called no witness to testify that the DAO had any such policy (the only witness, Mr. George, denied it), nor did Disciplinary Counsel present any documents suggesting the existence of a policy.[5] Instead, the Panel

---

(2006) ("[T]his presumption that a prosecutor has legitimate grounds for the action he takes is one we do not lightly discard, given our position that judicial intrusion into executive discretion of such high order should be minimal.").

[5] Particularly considering the number of attorneys, the span of years, and the dozens of capital cases implicated by the Panel's R&R, the failure to bring even a single witness or document supporting the existence of a supposedly elaborate concession policy is a

inferred that a concession policy existed because it believed there were no cases in which the DAO had not conceded relief. That inference is unsupportable for several reasons.

First, the fact the DA Krasner (and former DAOs) conceded error in other death penalty cases does not prove that any of those concessions were improper. On this question, it is telling that the Panel asserted that it would undertake an independent investigation of all cases in which the DAO had conceded death penalty relief (on the belief that they were the result of improper concessions of error), but did not identify a single case in which there was an improper or misleading concession of penalty error.[6] To the contrary, in response to the Panel's stated concern about other cases, Mr. George filed a comprehensive summary of the 12 other federal habeas concessions that had been approved by district judges that fully documented the factual and legal basis for each concession. App.510-635. Neither Disciplinary Counsel nor the Panel provided any evidence that these concessions were improper, that judges of the district court were misled by the DAO, or that the judges did not engage in an independent review before accepting the concessions. Thus, if as the Panel has urged, other concessions are highly relevant, the fact that these concessions were entirely proper and that there is no

_____

glaring evidentiary hole that cannot be sustained under the clear-and-convincing standard.

[6] Although the R&R references a brief from the Pennsylvania Attorney General alleging misconduct in other cases, there is no finding by any court that Mr. George or the Krasner DAO engaged in any misconduct in any of these cases. App.223 n.5. Allegations alone are not evidence, much less clear and convincing evidence.

evidence of improper submissions in these cases, fully supports the testimony of Mr. George that no blanket concession policy existed.

Second, undisputed empirical data contradicted the Panel's assertion of a DAO blanket policy of conceding penalty relief in all capital cases, but the Panel inexplicably ignored this evidence in its R&R. In particular, Mr. George presented evidence that death-penalty reversal rates under DA Krasner were similar to those under prior DAs—rebutting any claim that DA Krasner had a blanket policy of conceding relief in death penalty cases. In the pre-Krasner era, prosecutorial concessions or adversarial litigation led to the reversal of 72% of challenged death sentences. App.151; Appellee's Supplemental Appendix, *Wharton v. Superintendent SCI Graterford*, No. 22-9001, ECF No. 44 at 6 (3d Cir. Feb. 6, 2023).[7] By comparison, the Pennsylvania Attorney General's review of death penalty cases on which the Krasner DAO conceded relief found a similar concession rate of 75%. Petitioner's Reply Brief at 11, *Commonwealth v. Brown,* No. 32 EM 2023 (Pa. Nov. 12, 2024); *see* App.223 (discussing Pennsylvania Attorney General's brief in *Brown*). The Panel failed to explain how it could find a blanket concession policy when concessions do not occur in a quarter of all death penalty cases, or how DA Krasner could have a new concession policy when the concession rate is comparable to previous DAO administrations.

---

[7] *See also* DA Krasner Statement on Death Penalty Announcement, Philadelphia District Attorney's Office (Feb. 16, 2023), https://phillyda.org/news/da-krasner-statement-on-death-penalty-announcement (noting the 72% reversal rate under prior administrations).

The evidence further showed the DAO's high concession rate is consistent with systemic constitutional deficiencies in historic capital litigation. Thus, contrary to the Panel's assumption that the concession rate showed that the practices of the DAO were nefarious, Justices on the Pennsylvania Supreme Court have properly attributed these high rates of death penalty reversals to the "deficient performance of defense counsel in numerous Pennsylvania death-penalty cases." *Brown*, 196 A.3d at 201 (Saylor, C.J., dissenting) (joined by then Justice, now Chief Justice, Debra M. Todd). Chief Justice Saylor explained that "Pennsylvania has long been on notice that leaders of national, state, and local bar associations do not believe that capital litigation is being conducted fairly and evenhandedly in the Commonwealth, not the least because of the *ad hoc* fashion by which indigent defense services are funded from the local government level." *Id.* Justice McCaffery recently echoed these concerns. *See Commonwealth v. Anderson*, 323 A.3d 744, 762 (Pa. 2024) (McCaffery, J., concurring) ("I seriously question the death penalty's constitutionality and efficacy, given the truly dire state of capital representation in this Commonwealth.").

Mr. George was aware of the troubling history of defense counsel ineffectiveness in capital cases due in large part, as the Justices of the Pennsylvania Supreme Court have recognized, to systemic underfunding of appointed counsel. In a review of Philadelphia death sentences imposed from 1978-2017, the DAO found that 112 of 155 death penalty verdicts were overturned by the courts. Of the 112 reversals, 74 were on

30

ineffectiveness of counsel grounds at the penalty stage and 38 were due to trial court error, prosecutorial misconduct, actual innocence, or changes in death penalty law. *See* Appellee's Supplemental Appendix, *Wharton v. Superintendent SCI Graterford*, No. 22-9001, ECF No. 44 at 6 (3d Cir. Feb. 6, 2023); DA Krasner Statement on Death Penalty Announcement, Philadelphia District Attorney's Office (Feb. 16, 2023), https://phillyda.org/news/da-krasner-statement-on-death-penalty-announcement.

For the period 1980-2012, during which 152 of the 155 capital convictions occurred, court-appointed counsel for capital defendants had inadequate training and no mandated support in terms of mitigation specialists, investigators, or experts. They were compensated at a shockingly low rate, with a flat fee of $1,800 to prepare the entire capital case, and $400 per diem at trial. These rates were at the lowest level for any jurisdiction in the nation. *See* Report and Recommendation, Judge Benjamin Lerner, *Commonwealth v. McGarrell,* filed February 21, 2012 (Pa. Supreme Court, No. 77 EM 2001). As a result, many death sentences have been set aside pursuant to concessions by different District Attorneys and by court rulings in litigated cases. *See* App.126-34.

Mr. George also referenced a Rand Corporation study published by the Yale Law Journal that provided strong evidence concerning the underfunding and lack of training of capital defense counsel. The Rand Corporation study found that in murder cases in Philadelphia for the period from 1992-2012, defendants were less likely to be convicted and less likely to be sentenced to life in prison if they were represented by the

31

Philadelphia public defenders as opposed to other appointed counsel—even when the assignment of counsel was random. James Anderson & Paul Heaton, *How Much Difference Does the Lawyer Make? The Effect of Defense Counsel on Murder Case Outcomes*, 122 Yale L. J. 154, 182–83 (2012) (taking advantage of the random assignment of murder cases in Philadelphia to study the effect of counsel on sentences and guilt). Notably, at the time of the study, no client represented by the Philadelphia public defenders has ever received a death sentence, which cannot be said for those represented by other appointed counsel. *Id.* at 182–83 & n.73.

The Panel ignored the undisputed data and studies showing the systemic constitutional flaws in historical capital proceeding that help to explain the high concession rate, questioning counsel, "[w]hat are we talking about" and "[w]hat on [E]arth does this have to do—," App.152; "Mr. Rudovsky, again it does seem to me that you're representing the DA's office here, not Mr. George," App.153; and derisively calling the Yale Law Journal, "[e]verybody's source for news," App.154. None of the data and analysis showing the structural flaws in past capital cases was referenced in the R&R, and the Panel failed to even address the argument that these data provide a compelling explanation for the high concession rates by successive District Attorneys in Philadelphia.

Moreover, the Panel had no basis for rejecting Mr. George's testimony that he evaluated each petition for death-penalty relief on a case-by-case—and indeed, claim-

by-claim basis—rather than following a predetermined "policy" of concession. In support of that testimony, Mr. George presented documentary evidence from five capital cases in which he did not concede relief on penalty-phase claims that had no merit as evidence that he engaged in a case-by-case and issue-by-issue assessment of the death penalty claims. App.511-635; App.87-88, 109-112. Even though Mr. George opposed relief at critical stages of each case (in some cases all the way through Pennsylvania Supreme Court review), the Panel nevertheless concluded in its R&R that Mr. George was "mendacious" because "the DAO eventually conceded relief in each one." App.219. The Panel went even further by elevating Mr. George's "denial" of wrongdoing into proof of his culpability, stating that the CCRC "was designed solely to facilitate the manner in which to concede relief, not debate whether to do so," and that Mr. George "was the chief architect behind the strategies employed to concede death penalty relief." App.226. These bald assertions lack any evidentiary support.

The Panel failed to recognize that Mr. George opposed relief on non-meritorious issues in each case, without knowing whether the defense would later state a meritorious claim.[8] The Panel never explained why Mr. George would oppose relief in first instance

---

[8] The Panel's assertion that Mr. George would ultimately concede death penalty relief in cases in which he initially opposed relief fails to take into account the duty of a prosecutor (and a court) to consider claims on an individual basis, as there are instances (including the cases detailed in his submission to the Panel, App.510-635) in which a litigant's initial claim lacks merit, but a later claim is meritorious. In the Anthony Reid and Lavar Brown cases detailed in that exhibit, App.515-16, the DAO federal habeas unit (and not Mr. George) independently conceded death-penalty relief in federal habeas

33

if it were the policy of the DAO to concede-at-all-costs, or why or how Mr. George (or the DAO) would implement a piecemeal concession strategy that would include repeated *opposition* to death-penalty relief at crucial stages through even the Pennsylvania Supreme Court's review. There was simply no evidence supporting the Panel's finding that Mr. George or the DAO had undertaken such an utterly implausible and convoluted "stratagem." App.236.  And the Panel never found that, where the DAO later conceded error in these cases, it did so for an improper purpose or that the concessions were not appropriate.

The Panel's finding that the DAO ultimately conceded relief in each of the five cases Mr. George presented is also contradicted by the record. In *Commonwealth v. Donte Thomas*, Mr. George defended a death-penalty verdict on the defendant's direct appeal to the Pennsylvania Supreme Court and throughout the state-court post-conviction proceedings. The Panel speculated that the DAO may "advise[] whoever might represent Thomas in his eventual federal habeas proceeding which arguments would enable the DAO to concede relief" including by "proving newly discovered evidence via its open file policy and other means."[9] App.229 (internal quotation marks omitted). That

_____

proceedings (claims that await a ruling). Thereafter, the defendants filed new penalty-phase claims in state court and Mr. George *opposed* relief. As a result, if the federal courts deny habeas relief, the new state law claims for penalty relief would proceed without a DAO concession.

[9] The Panel asserted that the DAO's "open file" policy served a broader blanket concession policy as one of "several means by which it works with petitions to vacate death sentences." App.229. This is a puzzling critique given that it is entirely appropriate

34

speculation, which cannot form the basis for a finding under the clear and convincing evidence standard, was baseless and ultimately proved untrue as the DAO has opposed each of the claims filed by Thomas in federal habeas. *See Thomas v. Terra,* No. 24-cv-5191, ECF No. 19, at 51 (E.D. Pa. Sept. 3, 2025).

Beyond these clearly erroneous factual findings, the Panel's reasoning was internally contradictory. On the one hand, the Panel found that Mr. George was carrying out a DAO "policy" to concede all capital cases regardless of merit (a finding that lacks evidentiary support); but on the other, it asserted that what occurred in other cases was irrelevant and therefore refused to consider unrebutted evidence that informed Mr. George's practices and which show that he and the DAO acted consistently with prior DAOs.[10] The Panel should have focused on the specific charge that Mr. George misled Judge Goldberg, but it was the Disciplinary Counsel and the Panel that insisted

---

(and in some cases, mandatory) for prosecutors to affirmatively disclose constitutional defects in the historic record. Indeed, the U.S. Supreme Court has acknowledged that open-file policies "may increase the efficiency and the fairness of the criminal process." *Strickler v. Greene,* 527 U.S. 263, 283 n.23 (1999).

[10] For example, the Panel questioned the relevance of the data comparing historical DAO concession rates to those of the present DAO because Mr. George was not charged regarding whether "he may have done or not done what officers in prior administrations did or didn't do. He is here because Judge Goldberg and a Third Circuit panel . . . found that he misled the [District] Court." App.134; *see also* App.229 ("But what prior district attorneys did or didn't do, or what policies they did or didn't implement, isn't the issue. The issue is whether George knowingly and intentionally lied to Judge Goldberg by stating he and the DAO conducted a careful review of the facts and law.").

that what Mr. George did in other death penalty cases was proof that his filings in *Wharton* were intentionally deceptive and that his denial of those allegations justified the sanction of disbarment. Having refused to cabin its decision to the specific allegations in this case, it was error for the Panel to ignore the undisputed evidence refuting the existence of a blanket concession policy.

### 2.     The concession of penalty relief does not support the finding of a knowing or intentional violation of the Rules of Professional Conduct

Beyond the finding of a blanket concession policy, the Panel concluded that there was a knowing or intentional misstatement to the District Court in that Mr. George did not look beyond the existing record in response to the Third Circuit's remand order, App.222; that Mr. George did not include any anti-mitigation evidence in his memorandum to the CCRC, App.225; and that Mr. George submitted his Notice of Concession without a statement of facts, App.224. None of these findings is supported by clear and convincing evidence.

First, Mr. George acknowledges that he should have looked outside the existing record and that his failure to do so was "negligent." App.138. But there is no dispute that the review of the record by Mr. George, including the transcript of the seventeen-day death penalty hearing and of all post-conviction and habeas pleadings, did not provide any indication of an escape attempt. App.138. As Mr. George explained, he

36

failed to separately check Wharton's criminal record as he mistakenly assumed that if there was other anti-mitigation evidence, the prosecutors would have relied on the escape attempt, and it would have been reflected in the existing record. App.148. While that assumption proved incorrect, and it was negligent to rely on the assumption, it does not amount to an intentional or knowing misleading of the court.

Second, the Panel's conclusion that the fact that Mr. George did not list the anti-mitigation evidence in his memorandum to the CCRC showed that he either "lied about reviewing Wharton's prison record, kept known anti-mitigation evidence from the [CCRC], or both," App.225, is not supported by clear and convincing evidence. Indeed, as detailed above, Mr. George's review of the death penalty hearing and post-conviction record did not provide any indication of the escape attempt. Mr. George's failure to include that anti-mitigation evidence in the CCRC memorandum therefore reflected Mr. George's lack of knowledge of the prison escape, not an intentional attempt to shield that information from the CCRC.

Finally, with respect to the Panel's conclusion that the DA's submission of the Notice of Concession without a statement of facts constitutes an ethical violation, App.224, the Panel ignored the fact that the proposed order in *Wharton* was modeled on concessions filed in dozens of other post-conviction and federal habeas cases by other prosecutors and under other district attorneys. *See* App.510-635. The Panel never explained how Mr. George could have *intentionally* violated the ethical rules by submitting

a proposed order similar to those that had been submitted—and accepted by courts—in numerous other cases.

In addition, in response to Judge Goldberg's question as to whether the court must accept the concession, Mr. George stated that once the DAO determined that there was merit to the claim of ineffective assistance of counsel it was "ethically obligated to concede relief," but it was still the case that the Court "may, but is not bound to, accept that concession." App.317. This statement was a proper application of *Brown*, where the Pennsylvania Supreme Court ruled that a prosecutorial concession was entitled to "great weight," but that courts may accept the concession only after an independent review shows that the concession is supported by the record. 196 A.3d at 144. Mr. George submitted the proposed Order on the undisputed premise that Judge Goldberg was aware of the *Brown* ruling and that the concession could be accepted if it was supported by the court's independent review.[11] App.171-72.

### 3. There is no clear and convincing evidence that Mr. George knowingly or intentionally misled the court about the communications with the victims' family.

The Panel's conclusion that Mr. George violated Rule 3.1 "by implying that the victim's family had been contacted about and consented to the penalty-phase concession knowing that he had no factual basis for doing so," App.234, is also unsupported by

---

[11] That the proposed order would have had the judge state that the court conducted an independent review of the record was an invitation for the court to do so, further undermining the argument that Mr. George intended to secure a ruling by deception.

clear and convincing evidence. The Notice of Concession states that the concession followed "communication with the victims' family." App.308. As Mr. George explained, the DAO victim coordinator contacted Reverend Hart, the brother of Lisa Hart (the surviving victim), and informed him that the DAO was considering conceding relief of the death penalty. App.373-74. The reason the WVC asked the brother to share this information with other family members was because the brother had acted as a spokesperson for the victims' family. App.423. The WVC specifically asked about other family members, and Reverend "Hart stated that he did not feel a certain way about the death penalty, but was adamant that [Wharton] not be released." App.374. Reverend Hart also stated that he would talk to his family, including Lisa Hart, and provide the coordinator's contact information. *Id.* The coordinator followed up with an email asking the Reverand Hart to "[p]lease provide my contact information to your siblings [and other family members]." App.376. Later, the victim coordinator informed Reverend Hart that the DAO intended to agree to death-penalty relief. App.374. In response, Reverend Hart stated that he and his brother would attend the hearing. *Id.*

The Third Circuit sustained the district court's ruling that the DAO was negligent in its contacts with the family and Mr. George has acknowledged that the DAO should have been more diligent in ensuring contact with the surviving victim. But given the undisputed facts, there is no clear and convincing evidence that Mr. George knew or

intentionally made a false statement of fact to Judge Goldberg.[12]

## III.    Disbarment Is a Disproportionate Sanction

The District Court imposed "the most serious form" of discipline possible—disbarment—against an attorney with a previous unblemished 48-year career based on a single act that has already been subject to "mild" remedial action under Rule 11. App.234. As noted above, Mr. George has practiced law with professionalism, integrity, and respect for the rule of law. Over the course of thousands of cases as a public defender, private practitioner, and assistant district attorney, Mr. George has earned a reputation for careful preparation and even-tempered judgment. His career reflects the qualities this Court has repeatedly identified as hallmarks of our profession: fidelity to constitutional principles, respect for the courts, and a commitment to justice. In these circumstances, even if the record supported any finding of a disciplinary violation—which it does not—the sanction of disbarment is so disproportional and vindictive as to constitute a serious abuse of discretion.

The Pennsylvania Supreme Court has stated, "[d]isbarment is an extreme sanction which should be imposed only in the most egregious cases." *Off. of Disciplinary Couns. v. Keller*, 506 A.2d 872, 879 (Pa. 1986) (disbarment of attorney that engaged in forgery, conversion of entrusted funds and misrepresentations aimed at avoiding detection); *see*

---

[12] As directed by Judge Goldberg, the DAO wrote a letter of apology to the surviving victim. The DAO also stated that notice of its actions will be provided in any case in which there are court proceedings that could impact the sentence of the defendant.

*also Off. of Disciplinary Couns. v. Pozonsky*, 177 A.3d 830, 840 (Pa. 2018) (disbarment of judge who stole drugs admitted into evidence in criminal cases to support his drug habit); *Off. of Disciplinary Couns. v. Cappuccio*, 48 A.3d 1231, 1234-35 (Pa. 2012) (disbarment of Chief Deputy District Attorney who engaged in sexual relationships with minors in cases in which they were complainants); *Off. of Disciplinary Couns. v. Wrona*, 908 A.2d 1281, 1288-89 (Pa. 2006) (disbarment of attorney who falsely accused judicial officers of doctoring transcripts and audiotapes); *Off. of Disciplinary Couns. v. Davis*, 614 A.2d 1116, 1122 (Pa. 1992) (disbarment of attorney for a "pattern of misconduct" that included neglect of legal matters, counseling clients to undertake dishonest acts in court proceedings, the deceitful use of an affidavit, and commingling of entrusted funds); *Off. of Disciplinary Couns. v. Preski*, 134 A.3d 1027, 1031 (Pa. 2016) ("Despite the fact-intensive nature of this endeavor, we strive for consistency so that similar misconduct 'is not punished in radically different ways.'" (quoting *Off. of Disciplinary Couns. v. Lucarini,* 472 A.2d 186, 190 (Pa. 1983))).

Recently, moreover, this Court determined that a sanction of a *reprimand* was sufficient to further the aims of the Rules of Professional Conduct even where the attorney "misrepresented the legal authorities he cited," "failed to read the cases" cited, and "when alerted to these errors . . . did not correct those statements and submitted *additional* mischaracterizations of the citations in his Reply Brief." *See McCarthy*, 2026 WL

850354, at *4-5. The extreme severity of disbarment cannot be reconciled with the sanction imposed in *McCarthy.*

Moreover, the Panel recommended disbarment based on findings that are unsupported by the record, and which are inconsistent with this Court's opinion on the Rule 11 appeal. The Panel relied on the flawed premise that the Philadelphia DAO maintained a blanket policy of conceding relief in capital post-conviction cases as a reason to propose disbarment. App.235-36. As discussed above, the record does not support that finding and, to the contrary, the record shows that Mr. George engaged in case-by-case assessments of capital matters, at times opposing relief and at other times conceding meritorious claims consistent with constitutional norms.

The Panel also sought to justify the disbarment sanction on the ground that Mr. George "lied to us." App.209. It described Mr. George's efforts to explain why a policy did not exist as "mendacious," App.219, ruled that Mr. George's conduct was the result of a "dishonest or selfish motive" of placing the DAO's "policy priorities above its professional and prosecutorial obligations," App.235-36, and stated that Mr. George was "the chief architect of [the] stratagem," of "abrogating capital sentences whenever and however possible," App.236.

These findings are without record support. Mr. George had reviewed the anti-mitigation evidence that was produced at the death penalty hearing and that was referenced in the Commonwealth's filings (by former DAO administrations) in the

42

voluminous post-conviction and habeas record. He provided reasons for not checking Wharton's criminal record, but even so, he acknowledged that he was negligent in failing to do so.

The Panel also discounted Mr. George's exemplary ethical conduct as an attorney, and turned that record into an aggravating factor, suggesting that Mr. George used his experience and reputation as a sword in becoming the "chief architect" of the supposed policy to "use a federal court to bypass the state judiciary's limits on prosecutorial authority." App.228. The sole basis for the finding that Mr. George was the "chief architect" was its view that Mr. George "was best positioned to achieve the desired outcome—abrogating capital sentences whenever and however possible." App.238. In other words, the Panel concluded that Mr. George was the "chief architect" of an alleged policy based exclusively on his experience and background working on death penalty cases. But the mere fact that Mr. George is an experienced death penalty attorney is not clear and convincing evidence that he is in any way responsible for any alleged DAO policy of conceding death penalty cases or that such a policy existed.

Further, the Panel disregarded letters of good character from lawyers who had worked with Mr. George over his career on the ground that these were from criminal defense lawyers who "are acquainted with George's character as a Public Defender and in private practice . . . not as an ADA." *Id.* To the contrary, the letters of good character specifically referenced Mr. George's integrity as an ADA.

43

To label Mr. George as a liar, and by disbarment, to place him among the worst of the lawyers in our community is vastly disproportionate and offends basic tenets of justice. Accordingly, if the Court finds any violations, the matter should be remanded for a full reconsideration of the sanction.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's decision and remand with directions that the disciplinary complaint against Mr. George be dismissed. In the alternative, the Court should reverse and remand for a new evidentiary hearing before a new three-judge panel based on the significant and prejudicial errors discussed above.

Respectfully submitted,

*s/Ilana H. Eisenstein*
Ilana H. Eisenstein

*Counsel for Paul M. George*
March 31, 2026

# COMBINED CERTIFICATIONS

Undersigned counsel certifies as follows:

1.    Undersigned counsel is a member of the bar of the United States Court of Appeals for the Third Circuit. L.A.R. 28.3(d).

2.    This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,743 words.

3.    This Brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office in 14-point Garamond font.

4.    A copy of this brief was served on all counsel of record through the Court's Electronic Case Filing System.

5.    The text of the electronic brief is identical to the text in the paper copies to be filed with the Court. L.A.R. 31.1(c).

6.    A virus check was performed on the PDF file of this brief and no virus was found.

March 31, 2026

_s/Ilana Eisenstein_
Ilana H. Eisenstein

# United States Court Of Appeals

*for the*

# Third Circuit

Case No. 25-3264

IN RE PAUL M. GEORGE

On Appeal from the United States District Court
for the Eastern District of Pennsylvania, Misc. No. 22-mc-50

---

**BRIEF OF APPELLANT PAUL M. GEORGE AND APPENDIX**
**Volume I of III (Pages Appx-001 to Appx-002)**

---

| | |
|---|---|
| David Rudovsky<br>KAIRYS, RUDOVSKY, MESSING,<br>FEINBERG & LIN LLP<br>718 Arch Street, Suite 501 South<br>Philadelphia, PA 19106<br>(215) 925-4400 | Ilana H. Eisenstein<br>DLA Piper LLP (US)<br>One Liberty Place<br>1650 Market Street, Suite 5000<br>Philadelphia, PA 19103<br>215-656-3351 |

*Attorneys for Appellant Paul M. George*

# TABLE OF CONTENTS

**Page**

**Volume I:**

Order, filed October 22, 2025 ...................................................................... Appx-001

Notice of Appeal, filed November 13, 2025 .............................................. Appx-002

**Volume II:**

Docket Entries.............................................................................................. Appx-003

Order, filed September 14, 2022 ................................................................ Appx-010

Transcript of Attorney Disciplinary Hearing, held April 24, 2024 ................ Appx-011

Transcript of Attorney Discipline Hearing, held May 16, 2025 .................... Appx-064

Report and Recommendations, filed August 19, 2025 ................................ Appx-208

Objections to the Panel's Report and Recommendation, filed September 19, 2025
....................................................................................................................... Appx-240

Disciplinary Counsel's Reply to Mr. George's Objections to the Panel's Report,
filed October 7, 2025.................................................................................... Appx-296

Order, filed December 5, 2025 ................................................................... Appx-305

Notice of Concession of Penalty Phase Relief, *Wharton v. Vaughn,* United States
District Court for the Eastern District of Pennsylvania, Case No. 2:01-cv-06049,
filed February 6, 2019.................................................................................. Appx-306

Order, *Wharton v. Vaughn*, filed February 8, 2019............................................ Appx-311

Brief, *Wharton v. Vaughn*, filed April 3, 2019 .................................................. Appx-313

Brief of *Amicus Curiae* Pennsylvania Office of Attorney General, *Wharton v. Vaughn*, filed July 22, 2019................................................................................Appx-320

Order, *Wharton v. Vaughn*, filed May 11, 2022.................................................Appx-371

Affidavit of Heather Wames Victim/Witness Coordinator, Law Division Philadelphia District Attorney's Office, *Wharton v. Vaughn*, filed February 8, 2019 ....................................................................................................................Appx-373

Transcript of Show Cause Hearing Before the Honorable Mithcell S. Goldberg United States District Court Judge, *Wharton v. Vaughn*, held June 23, 2022 ....................................................................................................................Appx-377

**Volume III:**

Petition for Rule to Show Cause, filed September 11, 2023.............................Appx-481

Notice to the Court in Response to Order of May 7, 2024, filed May 23, 2024 ....................................................................................................................Appx-510

Supplement to Respondents May 23, 2024 Notice to The Court, filed June 4, 2024 ....................................................................................................................Appx-636

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF         :        **MISCELLANEOUS**

                                        :

**PAUL M. GEORGE**         :        **No. 22-mc-50**

                                          :

---

## O R D E R

**AND NOW**, this 22nd day of October, 2025, after consideration by the Board of Judges of the August 19, 2025 Report and Recommendation of a panel of the Court's Attorney Discipline Committee in which the panel recommended that Mr. George be disbarred; Mr. George's Objections thereto; and a vote whereby the majority of the Judges of this Court approved the Report and Recommendation, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. The August 19, 2025 Report and Recommendation (Doc. No. 51) is **APPROVED**;

2. Mr. George is **DISBARRED** from the bar of the United States District Court for the Eastern District of Pennsylvania effective immediately.

It is **FURTHER ORDERED** that all filings in this matter, including the Panel's Report and Recommendation remain **SEALED** pending the termination of all appeals and any further proceedings in this Court.

                                          **BY THE COURT:**

                                          /s/ Wendy Beetlestone
                                          **WENDY BEETLESTONE, C.J.**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISCTRICT OF PENNSYLVANA

**IN THE MATTER OF PAUL M. GEORGE**     :     **Misc. No. 2:22-mc-50**

## Notice of Appeal

Notice is hereby given that Paul George, Respondent in the captioned disciplinary case, appeals to the United States Court of Appeals for the Third Circuit from the Order of the District Court of October 22, 2025, approving of the Report and Recommendation of the Disciplinary Panel ordering the disbarment of Mr. George. This appeal challenges the legality and constitutionality of the final judgment of disbarment. This matter is under seal.

/s/ David Rudovsky

KAIRYS, RUDOVSKY, MESSING

FEINBERG & LIN LLP

718 Arch Street, Suite 501 South

Philadelphia, PA 19106

(215) 925-4400

*Counsel for Paul George*