No. 25-3264

# In The United States Court of Appeals for the Third Circuit

IN RE PAUL M. GEORGE,
Appellant.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania, Misc No. 22-mc-50

## BRIEF OF ETHICS SCHOLARS AS AMICI CURIAE SUPPORTING APPELLANT PAUL GEORGE AND SUPPORTING REVERSAL

David Richman
Michael A. Schwartz
Sean M. Craig
TROUTMAN PEPPER LOCKE LLP
3000 Two Logan Square
Philadelphia, PA 19103
215-981-4000
David.Richman@troutman.com
Michael.Schwartz@troutman.com
Sean.Craig@troutman.com

Ellen Brotman
BROTMAN LAW PLLC
834 Chestnut Street, #206
Philadelphia, PA 19107
215-217-1118
ebrotman@ellenbrotmanlaw.com

Abbe Smith
GEORGETOWN    UNIVERSITY    LAW
    CENTER
600 New Jersey Avenue NW
Washington, DC 20001
202-662-9579
smithal@georgetown.edu

*Counsel for Amicus Curiae*

April 7, 2026

**Disclosure Statement and Statement of Consent to File**

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), Michael A. Schwartz states that no counsel for any party authored any part of this brief, and no person or entity other than Amici and their counsel made a monetary contribution to the preparation or submission of this brief.

Pursuant to Federal Rule of Appellate Procedure 29(a)(2), Michael A. Schwartz certifies that counsel for Amici conferred with counsel for Appellant and Disciplinary Counsel Alfred Putnam, and all parties consented to the filing of this brief.

# Table of Contents

Disclosure Statement and Statement of Consent to File ........................i

Table of Authorities.................................................................. iii

Statement of Interest ..................................................................1

Introduction ............................................................................6

Argument................................................................................7

I.  The Panel Failed to Require "Clear and Convincing Evidence" of Professional Misconduct.................................................7

II. Professional Misconduct Was Not Proven by Clear and Convincing Evidence in This Case..............................................9

    A. The Evidence Did Not Establish a Violation of Rule 3.3(a)(1) .......................................................................9

    B. The Evidence Did Not Establish a Violation of Rule 3.1.........13

III. Prosecutors Have a Special Responsibility to Do Justice .............14

IV. Disbarment is an Inappropriate Sanction for the Alleged Violation .............................................................................22

    A. Disciplinary Precedent of Prosecutors Acting in Their Official Capacity Does Not Support Disbarment.....................24

    B. Disciplinary Precedent of Attorneys Violating Rules 3.3 and 3.1 Do Not Support Disbarment ......................................26

    C. Mr. George's Case Has None of the Factors That Warrant Public Discipline...................................................29

Conclusion ............................................................................31

Certifications .........................................................................33

# Table of Authorities

**Page(s)**

**Cases**

*Berger v. United States,*
295 U.S. 78 (1935)................................................................16

*Bowers v. Nat'l Collegiate Athletic Ass'n,*
475 F.3d 524 (3d Cir. 2007) ..............................................7

*Commonwealth v. Brown,*
196 A.3d 130 (Pa. 2018) ....................................................16

*Cooter & Gell v. Hartmarx Corp.,*
496 U.S. 384 (1990)...............................................................7

*In re Fisher,*
179 F.2d 361 (7th Cir. 1950) ..............................................8

*In re Lemisch,*
184 A. 72 (Pa. 1936) .............................................................8

*McCarthy v. U.S. DEA,*
– F.4th –, 2026 WL 850354 (3d Cir. 2026) .........................10

*Off. of Disciplinary Couns. v. Aliano,*
889 A.2d 1160, 25 DB 2003 (Pa. 2005) ..............................25

*Off. of Disciplinary Couns. v. Altman,*
228 A.3d 508 (Pa. 2020) ....................................................27

*Off. of Disciplinary Couns. v. Anonymous Att'y,*
331 A.3d 523 (2025) .........................................................7–9

*Off. of Disciplinary Couns. v. Bentivegna,*
88 DB 2005, 2007 Pa. LEXIS 2968, at *1 (Pa. Jan. 26,
2007)....................................................................................28

*Off. of Disciplinary Couns. v. Campbell,*
345 A.2d 616 (1975) .............................................................8

*Off. of Disciplinary Couns. v. Carbone*,
71 DB 2014 (Pa. 2015) ...................................................................... 24

*Off. of Disciplinary Couns. v. Czmus*,
889 A.2d 1197 (Pa. 2005) .................................................................. 23

*Off. of Disciplinary Couns. v. Fina*,
225 A.3d 568 (Pa. 2020) .................................................................... 24

*Off. of Disciplinary Couns. v. Fisher*,
161 DB 2020 (Pa. 2023) ..................................................................... 27

*Off. of Disciplinary Couns. v. Gallo*,
121 DB 2017 (Pa. 2018) ..................................................................... 27

*Off. of Disciplinary Couns. v. Hindman*,
122 DB 2013 (Pa. 2015) ..................................................................... 29

*Off. of Disciplinary Couns. v. Holston*,
619 A.2d 1054 (Pa. 1993) .................................................................. 28

*Off. of Disciplinary Couns. v. Keller*,
506 A.2d 872 (Pa. 1986) .................................................................... 23

*Off. of Disciplinary Couns. v. Miller*,
32 DB 2017 (Pa. 2019) ...................................................................... 25

*Off. of Disciplinary Couns. v. Pozonsky*,
177 A.3d 830 (Pa. 2018) .................................................................... 23

*Off. of Disciplinary Couns. v. Preski*,
134 A.3d 1027 (Pa. 2016) .................................................................. 23

*Off. of Disciplinary Couns. v. Price*,
732 A.2d 599 (Pa. 1999) .................................................................... 10

*Off. of Disciplinary Couns. v. Reisinger*,
44 DB 2015 (Pa. 2017) ...................................................................... 28

*Off. of Disciplinary Couns. v. Surrick*,
749 A.2d 441 (Pa. 2000) .................................................................... 10

*In re Press,*
  636 F. App'x 606 (3d Cir. 2016) ..............................................................8

*In re Ruffalo,*
  390 U.S. 544 (1968)..................................................................................8

*United States v. Wade,*
  388 U.S. 218 (1967)................................................................................21

*Wharton v. Superintendent Graterford SCI,*
  95 F.4th 140 (3d Cir. 2024)............................................................. 6, 11

*Wharton v. Vaughn,*
  No. 01-cv-6049, 2022 WL 4133291 (E.D. Pa. Sept. 12,
  2022)........................................................................................................ 12

*Young v. United States,*
  315 U.S. 257 (1942)................................................................................15

**Constitutional Provisions**

Sixth Amendment ......................................................................................15

**Rules**

Pa. R. Pro. Conduct 1.3 ...........................................................................16

Pa. R. Pro. Conduct 3.1 ..................................................................... *passim*

Pa. R. Pro. Conduct 3.10 .........................................................................25

Pa. R. Pro. Conduct 3.3 ..................................................................... *passim*

Rule 11............................................................................................. 6, 11–12

**Other Authorities**

Am. Bar Ass'n, *Crim. Just. Standards for the Prosecution
  Function* ......................................................................... 17–18, 22

Bruce Green & Samuel Levine, *Disciplinary Regulation of Prosecutors as a Remedy for Abuses of Prosecutorial Discretion: A Descriptive and Normative Analysis*, 14 Ohio St. J. Crim. L. 143 (2020)..................................................................21

Fred C. Zacharias, *The Professional Discipline of Prosecutors*, 79 N.C. L. Rev. 721 (2001) .............................................21

James M. Anderson & Paul Heaton, *How Much Difference Does the Lawyer Make? The Effect of Defense Counsel on Murder Case Outcomes*, 122 Yale L.J. 154 (2012) ............................19

Mike Fox, *The Untouchables: How Prosecutorial Immunity Breeds Injustice*, CATO Institute: CATO At Liberty, Mar. 11, 2025 ........................................................................................21

N.Y. Univ. School of Law, Peter L. Zimroth Center on the Admin. of Crim. Law, *Prosecutorial Misconduct in the Phila. District Att'y's Office* (2024)..............................................20–21

Pa. Gen. Assemb. J. State Gov't Comm'n, *Capital Punishment in Pa.* (June 2018) ........................................................18

Quattrone Center, Univ. of Pa. Carey L. Sch., *Hidden Hazards: Prosecutorial Misconduct Claims in Pa. 2000– 2016*....................................................................................... 19, 24

Restatement (Third) of Law Governing Lawyers § 110 (A.L.I. 2000)...........................................................................................13

Restatement (Third) of Law Governing Lawyers § 120 (A.L.I. 2000)...........................................................................................10

Thomas P. Sullivan and Maurice Possley, *The Chronic Failure to Discipline Prosecutors for Misconduct: Proposals for Reform*, 105 J. Crim. L. & Criminology 881 (2015)........................................................................................21

**Statement of Interest**

Amici are 19 law professors and practitioners whose teaching, scholarship, and practice include a focus on legal ethics. Amici have a common interest in ensuring that the Rules of Professional Conduct are enforced correctly and fairly. They seek correction of the district court's failure to apply the appropriate standard of proof to a determination of professional misconduct, its misapplication of Rules 3.1 and 3.3(a)(1) to the evidence of culpability, its misunderstanding of the special responsibilities of prosecutors, and its unreasonably harsh and disproportionate sanction. Amici believe the lower court's errors will have broad adverse consequences, including diluting the burden of proof, chilling prosecutors from redressing past injustices, and lowering the bar to the most devastating sanction that a court can impose for attorney misconduct.

A concise description of each Amicus's relevant professional qualifications follows:

*Lara Bazelon* is a Professor of Law and the Barnett Chair in Trial Advocacy at the University of San Francisco and co-chair of the American Bar Association Criminal Justice Section's Ethics Subcommittee;

*Ellen Brotman* focuses her practice on representation of attorneys before the Pennsylvania Disciplinary Board and professional responsibility and legal ethics advising, and she was a

Special Advisor to the American Bar Association Legal Ethics and Professional Responsibility Committee from 2024 to 2026;

*Scott Cummings* is the Robert Henigson Chair in Legal Ethics and Director of the Program on Legal Ethics and Democracy at UCLA School of Law;

*Jennifer Ellis* is a legal ethics attorney with over 25 years of experience who advises attorneys and law firms on ethics compliance;

*Michael Frisch* is ethics counsel at Georgetown University Law Center and a former assistant bar counsel for the District of Columbia;

*Bruce Green* is the Louis Stein Chair at Fordham Law School, where he directs the Stein Center for Law and Ethics, and he chairs the American Bar Association's Standing Committee on Ethics and Professional Responsibility;

*Jennifer Gundlach* is the Emily and Stephen Mendel Distinguished Professor of Law and Clinical Professor of Law at the Maurice A. Deane School of Law at Hofstra University, where she teaches and has published in the areas of Lawyers Ethics, Civil Procedure, and various experiential courses;

*Theodor Liebmann* is the Executive Director of the Freedman Institute for the Study of Legal Ethics at Hofstra Law School and

serves as the Reporter for the Ethics Compendium of the American Immigration Lawyers Association;

*Justin Loughry* has been a legal ethics and criminal defense lawyer for almost 40 years, has taught legal ethics at Rutgers Camden Law School and the Drexel University Thomas R. Kline/Earle Macke School of Law, and has lectured extensively on professional responsibility in New Jersey Continuing Legal Education courses;

*David Luban* is a Distinguished University Professor at Georgetown Law, the co-author of the casebook *Legal Ethics* (9th ed. 2024) and a former member of the District of Columbia Bar Ethics Committee;

*Eleanor Myers*, Associate Professor of Law Emeritus, was a full-time professor at Temple University Law School where she taught and published on Professional Responsibility;

*Arden Olson* has advised and represented lawyers on legal ethics for decades, is a former chair of Oregon's Legal Ethics Committee, and is a former member of the American Bar Association Standing Committee on Ethics and Professional Responsibility;

*Michael Reed* is a retired partner of the firm Troutman Pepper Locke LLP, a former member and chair of a hearing committee of the Disciplinary Board of the Supreme Court of Pennsylvania, and chair of the City of Philadelphia Board of Ethics;

3

*Amy Richardson* is Chair of HWG LLP's Legal Ethics and Malpractice Practice Group, has served on the North Carolina Ethics Committee, and chairs the American Bar Association's Business Section's Professional Responsibility Committee;

*David Richman* is a retired partner of the firm of Troutman Pepper Locke LLP, a Fellow of the Pepper Center for Public Service, a former chief of the appeals division of the Office of the District Attorney of the City of Philadelphia, who has lectured on the professional responsibilities of prosecutors and civil litigators and co-founded The Pennsylvania Innocence Project;

*Abbe Smith* is the Scott K. Ginsburg Professor of Law, Director of the Criminal Defense & Prisoner Advocacy Clinic, and Co-Director of the E. Barrett Prettyman Fellowship Program at the Georgetown University Law Center, and she is the author, with Monroe H. Freedman, of *Understanding Lawyers' Ethics* (Carolina Academic Press, 6th ed. 2023) (and previous editions), and co-editor, with Monroe H. Freedman and Alice Woolley, of *Lawyers' Ethics* (Rutledge 2017);

*Rayman Soloman* is Dean Emeritus at Rutgers Law School and the co-editor and author of a book on legal professionalism;

*Ellen Yaroshefsky* is a Distinguished Professor of Legal Ethics Emerita and Special Ethics Advisor to the American Bar Association Criminal Justice Section Council;

4

*Steven Zeidman* is Co-Director of the Defenders Clinic at CUNY School of Law and the Founder and Co-Director of the Second Look Project: Beyond Guilt, and he has authored articles on a range of issues including the ethics of effective assistance of counsel.

## Introduction

The ethical rules requiring candor to a tribunal and prohibiting frivolous pleadings are not violated by innocent mistakes. The Rules of Professional Conduct are intended to protect clients and the public from untrustworthy, dishonest, or incompetent lawyers, not from a lawyer who, after a long career of serving clients and the public, admitted having made misstatements that this Court, in the Rule 11 context, found to be careless, but unintentional. *See Wharton v. Superintendent Graterford SCI,* 95 F.4th 140, 151 (3d Cir. 2024) ("The District Court did not find that [Mr. George] misled the court intentionally, nor do we. … [He] made mistakes; [he] should have investigated more before approving the misstatements.")

Four errors account for the district court's anomalous disbarment of Mr. George:

First, the court failed to hold Disciplinary Counsel to the correct burden of proving professional misconduct by clear and convincing evidence as required by federal and Pennsylvania law.

Second, the court misapplied Rules of Professional Conduct 3.1 and 3.3(a)(1) in finding that Mr. George's misrepresentations were intentional, a finding unsupported by any evidence and contradicted by the showing that the frequency of concessions to death penalty challenges by the Philadelphia District Attorney, which undergirded

6

the Panel's finding, reflected systemic failures of the local criminal justice system, not a disregard of the merits of individual claims.

Third, the court ignored the special responsibility of prosecutors to do justice, not merely secure or defend convictions.

Last, the sanction of disbarment is unduly harsh and irreconcilable with precedent, particularly precedent involving the official actions of prosecutors who are rarely sanctioned for willful misconduct injurious to an accused.

## Argument

### I.    The Panel Failed to Require "Clear and Convincing Evidence" of Professional Misconduct

A district court abuses its discretion by imposing sanctions based "on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)). Here, the district court adopted a recommendation of sanctions predicated on fact-finding made without applying the "clear and convincing evidence" standard required to find professional misconduct.

To find professional misconduct under the Pennsylvania Rules of Professional Conduct, the evidence must be "clear and convincing." *Off. of Disciplinary Couns. v. Anonymous Att'y*, 331 A.3d 523, 534–35 (2025). Professional misconduct may be shown by

7

circumstantial evidence, but only if the evidence is "strongly persuasive and leads to but one conclusion." *In re Lemisch*, 184 A. 72, 72 (Pa. 1936) (cited and quoted with approval in *Anonymous Att'y*, 331 A.3d at 533). The same standard applies in federal disciplinary proceedings, including in this Circuit, at least, as here, where the underlying state applies that standard. *See In re Press*, 636 F. App'x 606, 611 (3d Cir. 2016) ("In an attorney disciplinary proceeding, investigating counsel bears the burden of proving a violation by clear and convincing evidence."); *accord In re Fisher*, 179 F.2d 361, 369 (7th Cir. 1950).

The failure to apply the correct burden of proof in disciplinary proceedings is serious and consequential. "[T]he allocation and weight of the burden of proof is critical in determining who should prevail." *Anonymous Att'y*, 331 A.3d at 532. In addition, a clear burden of proof prevents arbitrary and improperly motivated findings. As expressed in *Anonymous Att'y*, "[t]he purpose of imposing a burden of proof is to ensure fair and consistent adjudications pursuant to principles of due process." *Id.*

Because of the professional, economic and reputational costs of a finding of professional misconduct, Pennsylvania attorney-disciplinary proceedings are deemed "quasi-criminal." *Off. of Disciplinary Couns. v. Campbell,* 345 A.2d 616, 620 (1975) (citing *In re Ruffalo*, 390 U.S. 544, 551 (1968)). The burden of

8

proving professional misconduct is elevated commensurately with the gravity of the potential consequences.

In this case, despite Mr. George's entreaty to the Disciplinary Panel to apply the clear and convincing evidence standard, the Panel never articulated what, if any, burden of proof disciplinary counsel needed to meet. The Panel found that "George testified falsely" by denying the existence of a DAO policy to reverse death penalties "when it is beyond obvious that one exists." App.237. Saying it was "beyond obvious" that the office had such a policy, App.237, was a rhetorical flourish, not a reasoned application of the clear and convincing evidence standard.

Amici believe that when a violation may have been found on less than clear and convincing evidence—or when a disciplinary panel failed to acknowledge any burden of proof—the appropriate remedy is to remand for proceedings conducted pursuant to that standard. *Anonymous Att'y*, 331 A.3d at 540.

## II. Professional Misconduct Was Not Proven by Clear and Convincing Evidence in This Case

### A. The Evidence Did Not Establish a Violation of Rule 3.3(a)(1)

The gravest misconduct attributed to Mr. George was breaching the duty of candor to a tribunal embodied in Rule 3.3(a)(1). This Rule's prohibition is straightforward: a lawyer shall not "knowingly" make a false statement of material fact or law to a

9

tribunal. "Knowingly" means "actual knowledge of the fact in question," though "[a] person's knowledge may be inferred from circumstances." Pa. R. Pro. Conduct 1.0(f) (2024). "Actual knowledge does not include unknown information, even if a reasonable lawyer would have discovered it through inquiry." Restatement (Third) of Law Governing Lawyers § 120 cmt. c (A.L.I. 2000); *accord McCarthy v. U.S. DEA*, – F.4th –, 2026 WL 850354, at *2 & n.2 (3d Cir. 2026) (noting that a violation of Rule 3.3 requires the lawyer's actual knowledge that his or her statement is false).

Once the falsity of statements purporting to be based upon the lawyer's own knowledge is established, Pennsylvania shifts to the lawyer the burden of producing evidence showing that his or her allegations were true *or* were made with "an objective reasonable belief that the allegations were true, based upon a reasonably diligent inquiry." *Off. of Disciplinary Couns. v. Price*, 732 A.2d 599, 604 (Pa. 1999); *accord* Pa. R. Pro. Conduct 3.3(a)(1) & cmt. 3; *Off. of Disciplinary Couns. v. Surrick*, 749 A.2d 441, 444 (Pa. 2000). The Pennsylvania Rules offer guidance as to whether a lawyer's belief can be deemed reasonable. "Reasonably believes … denotes that the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable." Pa. R. Pro. Conduct 1.0(i).

According to the Panel, Mr. George knowingly and deliberately hid the fact of Mr. Wharton's escape attempt from Judge Goldberg in

10

service to a District Attorney's Office (DAO) blanket policy of conceding every death penalty challenge regardless of the merits. App.226.

Amici believe there are multiple problems with these findings. To avoid restating the arguments made by counsel for Mr. George, Amici will limit its discussion to these observations:

First, the finding that Mr. George knew of and consciously hid anti-mitigation is in conflict with this Court's finding in the Rule 11 proceedings that Mr. George was negligent in failing to uncover this evidence. *See Wharton*, 95 F.4th at 150–51.

Second, the record is barren of evidence contradicting or overcoming Mr. George's consistent testimony that he believed, based on his investigation (which included reviewing the 1985 and 1992 penalty phase hearings and the papers filed in the ensuing appeals and post-conviction proceedings that raised a claim of ineffective assistance of counsel at sentencing), that no anti-mitigation material existed beyond that identified in this Court's remand opinion. *See* App.135, 137–38. That Mr. George overlooked a source that he acknowledges he should have consulted, App.49–50, does not negate the reasonable diligence in the circumstances of the inquiry that he did conduct. It also is important to note that Mr. George is not alleged to have denied that Mr. Wharton had been

11

convicted of trying to escape, only that he, Mr. George, did not uncover it.[1]

Finally, misstatements made without the intent to deceive do not rise to the level of professional misconduct. In the expert report that he submitted on behalf of the Office of the Philadelphia District Attorney in the Rule 11 proceedings, Professor Bruce Green, a prominent and widely cited expert on prosecutorial ethics, noted:

> The relevant professional conduct rules do not provide for sanctioning lawyers who unwittingly or unintentionally mislead the court or fail to disclose information that the court would have considered to be important. … The rule[s] would not apply to an innocent nondisclosure even if, in retrospect, the court was misled.

Expert Report of Professor Bruce A. Green at 4, *Wharton v. Vaughn*, No. 01-cv-6049 (E.D. Pa. June 17, 2022), Dkt. 300-2 at 153. A finding that Mr. George intended to deceive the court by withholding information cannot be squared with the finding that, for lack of due care, he never acquired the information at all.

---

[1] Asked by Judge Goldberg if the DAO knew of the escape attempt, Mr. George answered in the affirmative based on the DAO's obvious constructive knowledge of an offense and prosecution that occurred 30 years before George joined the office. *See Wharton v. Vaughn*, No. 01-cv-6049, 2022 WL 4133291 at *4 (E.D. Pa. Sept. 12, 2022). To the Panel, Mr. George's answer was further evidence that he lied in denying that he knowingly concealed anti-mitigation evidence. App.237.

**B.    The Evidence Did Not Establish a Violation of Rule 3.1**

In Amici's view, the Panel also misapplied Rule 3.1, which is concerned with abusive advocacy through baseless claims, defenses, or contentions, as opposed to unintentional misstatements that are not meant to prolong proceedings and do not cause lasting harm.

As explained in Comment b to Section 110 of Restatement (Third) of the Law Governing Lawyers, the rationale for professional rules such as Rule 3.1 is to prevent needless distress, time, and cost, but it rarely leads to bar discipline:

> Frivolous advocacy inflicts distress, wastes time, and causes increased expense to the tribunal and adversaries and may achieve results for a client that are unjust. Nevertheless, disciplinary enforcement against frivolous litigation is rare. Most bar disciplinary agencies rely on the court in which the litigation occurs to deal with abuse.

The elements that characterize a violation of Rule 3.1 are the lawyer's failure to make "an inquiry about the facts and law that is reasonable under the circumstances," lawyer assertions that fail to meet "an objective, minimal standard of supportability," and an improper purpose. Restatement (Third) of Law Governing Lawyers § 110 cmt. c (A.L.I. 2000).

Mr. George's misrepresentations did not give rise to the harms contemplated by Rule 3.1, and the usual elements of a Rule 3.1 violation are missing. The evidence presented to the Panel fell short

13

of demonstrating that Mr. George made any statements without conducting a reasonable inquiry, however flawed. The evidence also failed to establish that his legal assertions were erroneous, let alone frivolous, or that his misrepresentations were in service of any improper purpose.

Thus, Mr. George's assertion that Wharton's claim "was not lacking in merit," given his ignorance of the petitioner's attempted escape, was entirely sound. Indeed, even after the escape attempt came to light, it was not unreasonable for the District Attorney to conclude that the evidence still supported a finding that Wharton was prejudiced by his lawyer's ineffective assistance. App.178–79. Although this Court has affirmed the dismissal of Wharton's petition for relief from his death sentence, reasonable minds might differ whether there was a reasonable probability that at least one juror would have been moved by the evidence of Wharton's pre-1992 positive prison adjustment record, notwithstanding the attempted escape, to vote against imposing the death penalty. That is surely the significance of Judge Goldberg's issuance of a certificate of appealability with respect to his order dismissing Wharton's habeas petition. App.371.

## III.  Prosecutors Have a Special Responsibility to Do Justice

In its findings, the Panel inferred the existence of a DAO policy or practice of conceding collateral attacks on capital convictions or

14

sentences based solely on the relative number of conceded claims compared to contested claims. The Panel drew that inference without any apparent consideration of the merits of the conceded claims, claims that state or federal post-conviction courts had sustained with few exceptions. Nor did the Panel identify a single case in which Mr. George or the DAO misled the habeas court into sustaining a non-meritorious claim. Nevertheless, the Panel concluded that the DAO confessed error in the *Wharton* proceedings in keeping with this alleged policy and not, as Mr. George testified, App.112–13, based on the merits of Wharton's Sixth Amendment claim. Then the Panel concluded that Mr. George was dishonest in testifying that the DAO's concession to relief (and his own) was merits-driven, not policy-driven.

To reach its conclusion, the Panel ignored Mr. George's evidence demonstrating that the frequency of concessions troubling the Panel was attributable to systemic problems with homicide convictions and sentences generated by Philadelphia homicide prosecutors since 1978 and especially in the 1990s. App.128–29, 133–34, 262. Just as a district attorney has the "special responsibility" not to prosecute a person without a sufficient legal and factual basis, Pa. R. Pro. Conduct 3.8(a), so, too, is a district attorney duty-bound to confess error rather than defend a conviction that he finds was tainted by non-harmless error, *Young v. United*

15

*States*, 315 U.S. 257, 258 (1942) ("The public trust reposed in the law enforcement officers of the Government requires that they be quick to confess error when, in their opinion, a miscarriage of justice may result from their remaining silent.") (quoted with approval in *Commonwealth v. Brown*, 196 A.3d 130, 148 (Pa. 2018)).

The Panel's analysis failed to acknowledge this special responsibility of prosecutors. Instead, it seems the Panel believed that a district attorney who opposes the death penalty cannot be trusted to contest meritless challenges to a death sentence. To Amici, it appears that Mr. George has been punished because of the Panel's jaundiced view of how District Attorney Lawrence Krasner, carries out his responsibilities as Philadelphia's chief prosecutor, and, in particular, how Mr. Krasner, as "the servant of the law," strikes the balance between the law's "twofold aim … that guilt shall not escape or innocence suffer." *Berger v. United States*, 295 U.S. 78, 88 (1935).

To the extent the Panel's ruling was, as we perceive it to have been, at least partly influenced by disagreement with a shift away from policies followed by prior Philadelphia District Attorneys, the ruling overlooked the core ethical responsibility of prosecutors. Unlike lawyers who represent clients, and who, as a matter of ethics, must pursue the interests of the client with diligence and zeal, *see* Pa. R. Pro. Conduct Rule 1.3 cmt. 1, prosecutors have a different,

16

"special responsibility" that "carries with it specific obligations to see that the defendant is accorded procedural justice," Pa. R. Pro. Conduct 3.8 cmt. 1.

As the ABA Standards state:

> The primary duty of the prosecutor is to seek justice within the bounds of the law, not merely to convict. The prosecutor serves the public interest and should act with integrity and balanced judgment to increase public safety both by pursuing appropriate criminal charges of appropriate severity, and by exercising discretion to not pursue criminal charges in appropriate circumstances. The prosecutor should seek to protect the innocent and convict the guilty, consider the interests of victims and witnesses, and respect the constitutional and legal rights of all persons, including suspects and defendants.

Am. Bar Ass'n, *Crim. Just. Standards for the Prosecution Function* ("ABA Standards"), Standard 3.1-2(b) (4th ed. 2017).

Although the ABA Standards state that, along with being an "administrator of justice" and an "officer of the court," the prosecutor also plays the role of "zealous advocate," this role must be tempered by the "exercise [of] sound discretion and independent judgment in the performance of the prosecution function." *Id.* at 3.1-2(a). Importantly, the ABA Standards call for the prosecutor to be more than "merely a case-processor but also a problem-solver responsible for considering broad goals of the criminal justice system." *Id.* at 3.1-

2(f). Specifically, the prosecutor should "seek to reform and improve the administration of criminal justice, and when inadequacies or injustices in the substantive or procedural law come to the prosecutor's attention, the prosecutor should stimulate and support efforts for remedial action." *Id.*

Mr. Krasner's concessions to post-conviction challenges to the death penalty, carried out by staff attorneys after a thorough review, are vindicated by the extraordinarily high rate of reversals of Philadelphia capital convictions and sentences over many years and are in keeping with his special responsibilities. *Roughly two-thirds of the 201 Philadelphia capital convictions or death sentences returned since 1978 already have been reversed in the courts*—most predating the Krasner administration. *See* App.128–29, 133–34, 151. A reversal rate of that magnitude is indicative of systemic flaws in Philadelphia capital prosecutions. *See* App.262. A prosecutor is ethically bound to forbear from defending a capital conviction or sentence that, in his professional judgment, was obtained by unconstitutional or otherwise unlawful means.

Research shows that Philadelphia capital prosecutions have been tainted by, among other things, the systematic underfunding of court-appointed private counsel. *See* Commonwealth of Pa. Gen. Assemb. J. State Gov't Comm'n, *Capital Punishment in Pa.*, at 57 (June 2018),

18

https://jsg.legis.state.pa.us/resources/documents/ftp/publications/2018-06-25%20SR6%20(Capital%20Punishment%20in%20PA)%20FINAL%20REPORT%20June%2025%202018.pdf. Indeed, prominent death penalty lawyer Steven Bright found Philadelphia's reimbursement rates for court-appointed attorneys so low, he called Philadelphia's fee schedule "outrageous even by Southern standards." James M. Anderson & Paul Heaton, *How Much Difference Does the Lawyer Make? The Effect of Defense Counsel on Murder Case Outcomes*, 122 Yale L.J. 154, 161 (2012).[2] Given the historical underfunding of capital defense in Philadelphia, it is to be expected that an ethical prosecutor would often find it necessary and appropriate, upon scrutiny of each post-conviction claim, to confess error.

Prosecutorial misconduct is a second factor accounting for overturned capital convictions or sentences.[3] That Mr. Krasner's

---

[2] Echoing Bright's comment, a 2012 report issued by a homicide calendar judge in Philadelphia noted that court-appointed capital defense lawyers in Philadelphia were paid less than capital defense counsel in Mississippi, Montana, Arkansas, Tennessee, and South Carolina when pay was adjusted for cost of living. Anderson & Heaton, *supra,* at 163–64.

[3] A study by the University of Pennsylvania Carey School of Law's Quattrone Center for the Fair Administration of Justice of Pennsylvania criminal cases for the period 2000–2016 identified 42 Philadelphia cases in which prosecutors were found to have committed professional misconduct. *See* Quattrone Center, Univ. of Pa. Carey L. Sch., *Hidden Hazards: Prosecutorial Misconduct Claims in Pa. 2000–2016*, at 15,

predecessors too often adopted a win-at-all-costs approach to prosecution was documented in a recent study by New York University School of Law's Zimroth Center on the Administration of Criminal Law. In its March 2024 report, *Prosecutorial Misconduct in the Philadelphia District Attorney's Office*, researchers highlight systemic issues of prosecutorial misconduct in the Philadelphia DAO from 1978 to 2021. Based on 50 cases over 45 years in which prosecutorial misconduct was found—either by a court or the Conviction Integrity Unit established by Mr. Krasner—the report documents a history of prosecutors subordinating justice to "winning," leading to wrongful convictions and a culture of unaccountability. N.Y. Univ. School of Law, Peter L. Zimroth Center on the Admin. of Crim. Law, *Prosecutorial Misconduct in the Phila. District Att'y's Office*, 25–26 (2024) https://www.law.nyu.edu/sites/default/files/Prosecutorial%20Misconduct%20in%20the%20Philadelphia%20District%20Attorney%E2%80%99s%20Office_508_0.pdf (last viewed Apr. 6, 2026).

Prosecutorial misconduct in Philadelphia has taken many forms including withholding evidence, coercing witnesses, problematic informant testimony, ignoring other suspects, and ignoring police misconduct. *Id.* The report also documents the office's

---

https://www.law.upenn.edu/live/files/11857-hidden-hazards-prosecutorial-misconduct-claims-in.

history of "aggressively defending convictions and misapplying the law." *Id.* at 18. To Amici's knowledge, none of the prosecutors who committed the very serious misconduct documented in the case law and the Zimroth study were ever disciplined.[4]

The Panel's legitimate concern that a prosecutor's concessions to relief deprive courts of the benefit of an adversarial proceeding is one that Amici share. But Amici are also mindful that the prosecutor's adversarial role is eclipsed by the prosecutor's duty to do justice. "Law enforcement officers have the obligation to convict the guilty and to make sure they do not convict the innocent. … To this extent, our so-called adversary system is not adversary at all; nor should it be." *United States v. Wade*, 388 U.S. 218, 256 (1967) (White, J., concurring in part).

---

[4] This is a national problem. See generally Fred C. Zacharias, *The Professional Discipline of Prosecutors*, 79 N.C. L. Rev. 721, 725 (2001) (describing the "rarity of discipline" of prosecutors); see also Mike Fox, *The Untouchables: How Prosecutorial Immunity Breeds Injustice*, CATO Institute: CATO At Liberty, Mar. 11, 2025, https://www.cato.org/blog/untouchables-how-prosecutorial-immunity-breeds-injustice (describing how prosecutors avoid accountability even in high profile cases, and noting that "[p]rosecutors are the most powerful—and least accountable—actors in our criminal justice system"); Bruce Green & Samuel Levine, *Disciplinary Regulation of Prosecutors as a Remedy for Abuses of Prosecutorial Discretion: A Descriptive and Normative Analysis*, 14 Ohio St. J. Crim. L. 143 (2020) (discussing the challenges in disciplining prosecutors who engage in misconduct); Thomas P. Sullivan and Maurice Possley, *The Chronic Failure to Discipline Prosecutors for Misconduct: Proposals for Reform*, 105 J. Crim. L. & Criminology 881 (2015).

In stressing the special responsibilities of prosecutors to do justice, Amici are in no way suggesting a lesser ethical standard for prosecutors in other respects. The ABA Standards rightfully hold prosecutors to a "heightened duty of candor to the courts" and prohibit a prosecutor from making a statement of law or fact to a court "that the prosecutor does not reasonably believe to be true." ABA Standard 3-1.4.

Here, it appears to Amici that the Panel's finding that Mr. George made statements that he did not reasonably believe were true was influenced by the Panel's disagreement with how a thrice-elected, reform-minded prosecutor has resolved the tension between his competing obligations to fulfill an adversary function and confess error as justice requires. A prosecutor's opposition to the death penalty or commitment to uprooting wrongful convictions or unconstitutionally obtained death sentences may constitute a break with past practice, but it is not a marker of dishonesty and should not have colored the Panel's judgment of Mr. George's culpability.

## IV. Disbarment is an Inappropriate Sanction for the Alleged Violation

The range of disciplinary sanctions for attorney misconduct reflects the spectrum of professional misconduct. Lawyers meriting the mildest sanctions are those who were negligent, violated a duty to a single client without causing irreparable harm, accepted

responsibility, took remedial action, and had no prior discipline. More severe sanctions are reserved for more egregious and harmful misconduct by repeat offenders who refuse to accept responsibility. *See* Model Rules for Law. Disciplinary Enf't r. 10(C) (A.B.A. 2002).

Discipline "is not intended to be punitive, [rather] … the primary purpose of the disciplinary process … is the protection of the public, the preservation of the integrity of the courts, and the deterrence of unethical conduct." *Off. of Disciplinary Couns. v. Pozonsky*, 177 A.3d 830, 838 (Pa. 2018); *see also Off. of Disciplinary Couns. v. Czmus*, 889 A.2d 1197, 1203 (Pa. 2005). "Disbarment is an extreme sanction which must be imposed only in the most egregious cases." *Off. of Disciplinary Couns. v. Keller*, 506 A.2d 872, 879 (Pa. 1986). While each case "must be resolved according to its unique facts and circumstances," Pennsylvania endeavors to maintain consistency in disciplinary matters "so that similar misconduct is not punished in radically different ways." *Pozonsky*, 177 A.3d at 838 (quoting *Off. of Disciplinary Couns. v. Preski*, 134 A.3d 1027, 1031 (Pa. 2016)). As the cases discussed below demonstrate, if the professional misconduct finding against Mr. George is upheld, milder, private discipline is the appropriate sanction.

23

### A. Disciplinary Precedent of Prosecutors Acting in Their Official Capacity Does Not Support Disbarment

Cases where discipline was imposed on Pennsylvania prosecutors for misconduct in their official capacity contrast sharply with this case. Only one of those cases resulted in disbarment, while others resulted in brief suspensions or private discipline only.[5]

Mr. George's misstatements to the court in a single proceeding do not rise to the level of misconduct for which Pennsylvania prosecutors have either been disbarred, suspended, or publicly censored for abuse of their office:

- *Off. of Disciplinary Couns. v. Carbone*, 71 DB 2014 (D. Bd. Rpt. 6/17/2015) (S. Ct. Order 8/12/2015) (Pa. 2015) (prosecutor disbarred after refusing to participate in the disciplinary process that established his repeated misconduct over multiple cases over several years in violation of court orders and that caused multiple convictions to be overturned);[6]

- *Off. of Disciplinary Couns. v. Fina,* 225 A.3d 568, 572–73 (Pa. 2020) (Wecht, J., concurring) (prosecutor who

---

[5] As the Quattrone Center found in a study, out of 1,351 disciplinary cases from January 2000 to December 2016 in which the Pennsylvania Supreme Court issued an opinion, only eight involved prosecutors being disciplined for misconduct, and only two related to misconduct in the handling of a criminal case. *See* Quattrone Center, *supra* note 3, at 41.

[6] Found at: https://www.pacourts.us/assets/opinions/DisciplinaryBoard/out/71DB2014-Carbone.pdf.

violated Rule 3.10 in issuing grand jury subpoenas, resulting in dismissal of high-profile criminal cases and who misled the supervising court, was suspended for one year and one day);

- *Off. of Disciplinary Couns. v. Miller*, 32 DB 2017 (D. Bd. Rpt. 12/16/2018) (S. Ct. Order 2/8/2019) (Pa. 2019) (prosecutor who repeatedly engaged in ex parte communications with judges and had her staff use a phony Facebook account for investigation suspended for one year and one day);[7]

- *Off. of Disciplinary Couns. v. Aliano*, 889 A.2d 1160, 25 DB 2003 (D. Bd. Rpt. 8/31/2005) (Pa. 2005) (public censure deemed sufficient punishment for a District Attorney who involved himself in dropping criminal charges against a defendant while he was representing that defendant's wife in an unrelated matter in his private practice).[8]

In some cases, prosecutors who violated Rule 3.3(a)(1) and other rules were privately disciplined. That mild sanction was deemed appropriate for a prosecutor who failed to disclose to the

---

[7] Found at: https://www.pacourts.us/assets/opinions/DisciplinaryBoard/out/32DB2017-Miller.pdf.

[8] Found at: https://www.pacourts.us/assets/opinions/DisciplinaryBoard/out/25DB2003-Aliano.pdf.

capital defendant's lawyer that a Commonwealth witness had been promised consideration for his testimony and argued to the jury that no deal had been made for the witness's testimony, rule violations that resulted in the dismissal of all charges.[9] In another case of private discipline, the District Attorney directed his staff to refuse to negotiate pleas for any clients of a certain defense lawyer in retaliation for the attorney's public criticism of him.[10]

The disbarment of Mr. George is wholly out of keeping with this body of precedents.

### B.    Disciplinary Precedent of Attorneys Violating Rules 3.3 and 3.1 Do Not Support Disbarment

When the search for comparators is broadened beyond prosecutors to include Pennsylvania lawyers generally, Mr. George's disbarment is a clear outlier. No other Pennsylvania lawyer, to our knowledge, has ever been disbarred or suspended for violating only Rules 3.1 or 3.3(a)(1). Our research has identified Pennsylvania attorneys who have been disbarred for violating multiple rules of professional conduct, including Rules 3.1 or 3.3(a)(1). The egregiousness of the misconduct deemed to warrant disbarment in

---

[9] Found at https://www.padisciplinaryboard.org/cases/case-research-collection/case?id=b6cf1df6-a1b6-44bb-99ce-2a489e79c2b6.

[10] Found at https://www.padisciplinaryboard.org/cases/case-research-collection/case?id=cd11a140-a563-4a85-b301-6ecb17deb1af.

these cases again contrasts sharply with the nature of Mr. George's errors. *See, e.g.*:

- *Off. of Disciplinary Couns. v. Fisher*, 161 DB 2020 (S. Ct. Order 2/17/2023) (Pa. 2023) (consent disbarment: attorney misappropriated over $119,000 from a client estate, lied to the Orphans' Court, falsely responded to a disciplinary subpoena, and never disgorged stolen funds);[11]

- *Off. of Disciplinary Couns. v. Altman*, 228 A.3d 508 (Pa. 2020) (attorney filed a meritless counterclaim against his former client for fees, supported it with false contractor affidavits, engaged in a sexual relationship and undisclosed financial transactions with that same client and refused to accept responsibility);

- *Off. of Disciplinary Couns. v. Gallo*, 121 DB 2017 (D. Bd. Rpt. 8/10/2018) (S. Ct. Order 11/2/2018) (Pa. 2018) (attorney continued to practice despite being suspended, failed to cooperate with disciplinary process, lied to a court about his active status, and was convicted for issuing bad checks);[12]

---

[11] Found at https://www.pacourts.us/assets/opinions/DisciplinaryBoard/out/161DB2020-Fisher.pdf.

[12] Found at https://www.pacourts.us/assets/opinions/DisciplinaryBoard/out/121DB2017-Gallo.pdf.

- *Off. of Disciplinary Couns. v. Reisinger,* 44 DB 2015 (D. Bd. Rpt. 8/15/2016) (S. Ct. Order 3/31/2017) (Pa. 2017) (attorney filed baseless lawsuits falsely accusing sitting judges and court personnel of criminal conspiracy, then filed criminal complaints against his own disciplinary hearing committee on the eve of his scheduled hearing and failed to appear for scheduled Supreme Court argument);

- *Off. of Disciplinary Couns. v. Bentivegna,* 88 DB 2005 (D. Bd. Rpt. 11/21/2006) (S. Ct. Order 1/26/2007), 2007 Pa. LEXIS 2968, at *1 (Pa. Jan. 26, 2007) (attorney, who failed to participate in disciplinary proceedings and had a prior suspension, lied to her creditors and the bankruptcy court, and perjured herself.);[13]

- *Off. of Disciplinary Couns. v. Holston,* 619 A.2d 1054 (Pa. 1993) (attorney neglected a client's matter, fabricated a judicial divorce decree, mailed the forged order to his client as genuine, and then denied responsibility for the decree when directly questioned by the presiding judge in open court).

---

[13]   Found   at   https://www.pacourts.us/assets/opinions/DisciplinaryBoard/out/88DB2005-BENTIVEGNA.pdf.

A comparison of the facts of these cases to Mr. George's demonstrates that disbarment in this case is unduly harsh and inconsistent with precedent.

## C.    Mr. George's Case Has None of the Factors That Warrant Public Discipline

Mr. George has accepted responsibility; his actions were not intentional or criminal; he caused no irreparable harm to any client or to the *Wharton* case itself; he did not prejudice the administration of justice; the charges were isolated to a single case; he had strong character evidence; and he participated fully in the disciplinary process. Further, Mr. George has never before been charged with an ethics violation in almost 50 years of practice. App.68–69. Also, he has the respect and admiration of his peers.

In other cases in which lawyers have been found to have deliberately deceived courts by submitting altered documents or other misrepresentations in violation of Rule 3.3(a)(1), a public censure was deemed to be the appropriate sanction considering mitigation evidence less compelling than that presented on behalf of Mr. George. *See, e.g.*, *Off. of Disciplinary Couns. v. Hindman*, 122 DB 2013 (D. Bd. Rpt. 12/8/2014) (S. Ct. Order 2/10/2015) (Pa. 2015) (collecting cases).[14]

---

[14]    Found    at    https://www.pacourts.us/assets/opinions/Disciplinaryboard/out/122DB2013-Hindman.pdf.

Moreover, violations of Rule 3.3(a)(1) have been frequently sanctioned by private, not public, discipline. We reviewed 19 cases from 2016 to 2024 in which lawyers were privately disciplined for misrepresentations to a tribunal in violation of Rule 3.3.[15] These cases describe misconduct that is either comparable to, or more egregious than, the misconduct alleged here. Of those 19 cases, 16 resulted in an informal admonition, while three resulted in a private reprimand.

As scholars and practitioners who are committed to upholding the standards of the legal profession, we find it impossible to reconcile the imposition of disbarment on Mr. George with the body of precedents we have cited and with the nature of the misconduct in question, even viewed in a light least favorable to Mr. George. And we are deeply troubled by the appearance of a double standard arising from the harsh sanction imposed on a prosecutor engaged in protecting the rights of an accused when prosecutors whose adjudicated misconduct results in a defendant's imprisonment are almost never punished at all.

For all these reasons, Amici believe that disbarment here represents an unjustified departure from the norms of professional

---

[15] Private cases are found only on the Pennsylvania Disciplinary Board's Case Research Collection on its website: https://www.padiscipli-naryboard.org/cases/case-research-collection. These 19 cases were found using search parameters of "private discipline" and Rule 3.3.

discipline and should be set aside in the interest of maintaining those norms.

## Conclusion

For all the foregoing reasons, the Court should reverse the finding of professional misconduct as clearly erroneous or, in the alternative, remand for a new hearing governed by the clear and convincing evidence standard.

Respectfully submitted,        */s/ Michael A. Schwartz*
DAVID RICHMAN (PA. 4179)
Dated: April 7, 2026            MICHAEL A. SCHWARTZ (PA. 60234)
SEAN M. CRAIG (PA. 331672)
TROUTMAN PEPPER LOCKE LLP
3000 Two Logan Square
Philadelphia, PA 19103
215-981-4000
*David.Richman@troutman.com*
*Michael.Schwartz@troutman.com*
*Sean.Craig@troutman.com*

ELLEN BROTMAN (PA. 71775)
BROTMAN LAW PLLC
834 Chestnut Street, #206
Philadelphia, PA 19107
215-217-1118
*ebrotman@ellenbrotmanlaw.com*

ABBE SMITH
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Avenue NW
Washington, DC 20001
202-662-9579
*smithal@georgetown.edu*

32

## Certifications

1.    <u>Bar Membership</u>

I hereby certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.    <u>Certificate of Compliance with Rules 29 and 32(a) and LAR 31.1(c)</u>

This brief complies with the type volume, typeface, and typestyle requirements of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(5) and (6), because it contains 6,099 words, exclusive of the cover, tables, and certificates, and has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Century Schoolbook font.

In accordance with Third Circuit LAR 31.1(c), I certify that the text of the electronic brief is identical to the text of the paper copies being filed. I further certify that the electronic submission was subjected to a virus scan using Microsoft Defender.

3.    <u>Certificate of Service</u>

I hereby certify that, on April 7, 2026, a true and correct copy of this document was served on counsel of record through the Court's CM/ECF system.

Dated: April 7, 2026                  */s/ Michael A. Schwartz*
                                      Michael A. Schwartz

33