No. 25-3264

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

*In re: Paul M. George*

ON APPEAL FROM THE ORDER ISSUED BY THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA IN NO. 2:22-MC-00050 APPROVING THE REPORT
AND RECOMMENDATION OF THE DISCIPLINARY PANEL AND
DISBARRING PAUL M. GEORGE

## ANSWERING BRIEF OF APPELLEE

Alfred W. Putnam, Jr. (Pa. No. 28621)
Renée M. Dudek (Pa. No. 325368)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania  19103
(215) 988-2700 (telephone) / (215) 988-2757 (facsimile)
alfred.putnam@faegredrinker.com
renee.dudek@faegredrinker.com

*Counsel for the*
*U.S. District Court for the Eastern District of Pennsylvania*

# CORPORATE DISCLOSURE STATEMENT

Appellee the United States District Court for the Eastern District of Pennsylvania is a governmental entity that does not have a parent company or stock; accordingly, no public company holds more than 10% of its stock.

# TABLE OF CONTENTS

**Page(s)**

JURISDICTIONAL STATEMENT ........................................................... 1

STATEMENT OF RELATED CASES AND PROCEEDINGS ................ 2

COUNTER-STATEMENT OF THE ISSUES .................................... 3

SUMMARY OF ARGUMENT ........................................................... 3

STANDARD AND SCOPE OF REVIEW ................................................ 6

COUNTER STATEMENT OF THE CASE .......................................... 7

    A.    Procedural History ....................................................... 7

    B.    Counter Statement of Facts ..................................... 12

ARGUMENT .................................................................................... 20

  I.   THE PROCESS THE DISTRICT COURT USES TO DECIDE DISCIPLINARY CASES DOES NOT DEPRIVE RESPONDENT LAWYERS OF DUE PROCESS OF LAW ......... 20

  II.  MR. GEORGE PLAINLY VIOLATED DISCIPLINARY RULES 3.1 AND 3.3 IN THE *WHARTON* CASE. ....................... 26

  III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN CONCLUDING THAT MR. GEORGE SHOULD BE DISBARRED. ....................................... 34

  IV. A PROSECUTOR'S DUTY TO "DO JUSTICE" DOES NOT TRUMP HIS OTHER LEGAL AND ETHICAL DUTIES. ............ 40

CONCLUSION .................................................................................... 48

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Adams v. Ford Motor Co.*,
653 F.3d 299 (3d Cir. 2011) ........................................................ 7

*In re Att'y Discipline Matter*,
98 F.3d 1082 (8th Cir. 1996) ...................................................... 13

*In re Barach*,
540 F.3d 82 (1st Cir. 2008) ........................................................ 13

*Commonwealth v. Brown*,
196 A.3d 130 (Pa. 2018) ..................................................... *passim*

*In re Doherty*,
No. 21-1258, 2021 WL 5190865 (3d Cir. Nov. 9, 2021) ............. *passim*

*Johnson v. Superintendent, Mahanoy SCI*,
144 F.4th 178 (3d Cir. 2025) ................................................ 39, 42

*Johnson v. Superintendent, Mahanoy SCI*,
23-2531, 2025 WL 1922769 (3d Cir. July 14, 2025) ...................... 37

*In re Justice*,
No. 20-5479, 2021 WL 3808965 (6th Cir. Aug. 26, 2021) ................. 13

*In re Malofiy*,
758 F. App'x 264 (3d Cir. 2018) .................................................... 7

*McCarthy v. DEA*,
171 F.4th 245 (3d Cir. 2026) ................................................ 42, 43

*Off. of Disciplinary Couns. Anonymous Att'y A*,
714 A.2d 402 (Pa. 1998) ............................................................ 29

*Off. of Disciplinary Couns. v. Altman*,
228 A.3d 508 (Pa. 2020) ............................................................ 39

*Off. of Disciplinary Couns. v. Anonymous Att'y*,
331 A.3d 523 (Pa. 2025) ............................................................ 12

*Off. of Disciplinary Couns. v. Czmus,*
889 A.2d 1197 (Pa. 2005) ................................................. 35

*Off. of Disciplinary Couns. v. Price,*
732 A.2d 599 (Pa. 1999) ............................... 5, 12, 29, 30

*Off. of Disciplinary Couns. v. Surrick,*
749 A.2d 441 (Pa. 2000) ................................................. 30

*Off. of Disciplinary Couns. v. Wrona,*
908 A.2d 1281 (Pa. 2006) ............................................... 34

*In re Rodriguez,*
No. 08-8037, 2008 WL 5273515 (3d Cir. Dec. 10, 2008) ................. 34

*Sibron v. New York,*
392 U.S. 40 (1968) ....................................................... 37

*Strickland v. Washington,*
466 U.S. 668 (1984) ................................................... 9, 32

*In re Surrick,*
338 F.3d 224 (3d Cir. 2003) ................................... *passim*

*Travelers Cas. & Sur. Co. v. INA,*
609 F.3d 143 (3d Cir. 2010) ........................................... 47

*Tsirelman v. Daines,*
794 F.3d 310 (2d Cir. 2015) ........................................... 13

*United States v. Price,*
558 F.3d 270 (3d Cir. 2009) ............................................. 7

*Wharton v. Superintendent Graterford SCI,*
95 F.4th 113 (3d Cir. 2024) ......................................... 2, 10

*Wharton v. Superintendent Graterford SCI,*
95 F.4th 140 (3d Cir. 2024) ................................... *passim*

*Wharton v. Vaughn,*
722 F. App'x 268 (3d Cir. 2018) (per curiam) .............. 2, 8, 14

*Wharton v. Vaughn*,
No. 01-6049, 2022 WL 1488038 (E.D. Pa. May 11, 2022) .................. 10

**Statutes, Rules & Regulations**

18 U.S.C § 3771 ............................................................... 17, 36, 44, 46

28 U.S.C. § 1291 .............................................................................. 1

28 U.S.C. § 2241(a) ......................................................................... 1

D. Del. R. 83.6 ............................................................................... 23

D.N.J. Civ. R. 104.1(e)(11) ............................................................ 24

Fed. R. Civ. P. 11 ................................................................. *passim*

L. Civ. R. 83.6 ................................................................. 4, 11, 12, 20

M.D. Pa. L. R. 83.24.4 .................................................................. 23

Pa. R.P.C. 3.1 ........................................................................ 3, 11, 27

Pa. R.P.C. 3.3 .................................................................. 3, 11, 27, 43

S.D.N.Y. L. Civ. R. 1.5 .............................................................. 22, 23

W.D. Pa. Civ. R. 83.3(B)(4) .......................................................... 23

**Other Authorities**

Am. Bar Ass'n, *Criminal Justice Standards for the
Prosecution Function* § 3-1.4(a)–(b) (4th ed. 2017) ...................... 40, 41

Bruce A. Greene, *Candor in Criminal Advocacy*, 44 Hofstra
L. Rev. 1105, 1115–19 & n. 62 (2016) ............................................ 40

National District Attorneys Association, *National
Prosecution Standards* § 6-1.1 (3d ed. 2009) ................................. 40

# JURISDICTIONAL STATEMENT

The District Court had subject-matter jurisdiction under 28 U.S.C. § 2241(a); *In re Surrick*, 338 F.3d 224, 229 (3d Cir. 2003) ("The District Court has the inherent authority to set requirements for admission to its bar and to discipline attorneys who appear before it."). This Court has jurisdiction to hear an appeal from a final order imposing discipline under 28 U.S.C. § 1291.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

The disciplinary order in this case has not previously been before this Court. There is a disciplinary order in a related case that is before this Court at *In re: Nancy Winkelman*, 26-1798 (appeal of district court docket *In the Matter of Nancy Winkelman*, 2:22-MC-00051-PD).

The subject matter at issue in these two disciplinary orders was previously before this Court on an appeal from an order imposing sanctions under Federal Rule of Civil Procedure 11. *Wharton v. Superintendent Graterford SCI* ("**Wharton III**"), 95 F.4th 140 (3d Cir. 2024); *see also Wharton v. Superintendent Graterford SCI* ("**Wharton II**")*,* 95 F.4th 113 (3d Cir. 2024) (appeal in underlying habeas corpus case); *Wharton v. Vaughn* ("**Wharton I**"), 722 F. App'x 268 (3d Cir. 2018) (per curiam) (same).

## COUNTER-STATEMENT OF THE ISSUES

1.     Does the Process the District Court Uses to Decide

Disciplinary Cases Violate the Due Process Clause?

*Suggested answer: No.*

2.     Did the District Court Clearly Err in Concluding that

Mr. George's Conduct in the *Wharton* case Violated Disciplinary Rules

3.1 and 3.3(a)(1).

*Suggested answer: No.*

3.     Did the District Court Abuse its Discretion in Barring

Mr. George From Appearing Before it?

*Suggested answer: No.*

4.     On an Issue Raised by the Amici Curiae: Does a Prosecutor's

"Special Duty to Do Justice" Trump other Legal and Ethical Duties

Imposed by Federal Law and the Applicable Disciplinary Rules?

*Suggested answer: No.*

## SUMMARY OF ARGUMENT

This is an appeal from a decision by the United States District

Court for the Eastern District of Pennsylvania barring the Appellant,

Paul George, from practicing before that court because he made

misrepresentations of fact and law to the court.  Decisions regarding the admission or discipline of lawyers appearing before a court are within the inherent authority of that court and should not be disturbed absent an erroneous view of the law or a clearly erroneous assessment of the evidence.

The principal legal error cited by Mr. George's counsel is that the district court, in evaluating disciplinary complaints, uses a procedure whereby the matter is referred to a disciplinary panel of three judges, which panel hears the case and then issues a "Report and Recommendation," ("*R&R*") that is then referred to the full court for an ultimate decision on whether (and what) discipline is appropriate. Mr. George's counsel says that this process deprived Mr. George of due process of law because the three judges who heard the case and issued the R&R also participated in the full court's decision on the merits.  In fact, the district court has used this process for at least the last forty years, *see* L. Civ. R. 83.6 § XIII, and it is comparable, if not identical, to the disciplinary process followed by other district courts.  It is not unconstitutional or otherwise illegal.

Mr. George also argues that Disciplinary Counsel failed to prove a violation of the ethical rules by "clear and convincing evidence." The disciplinary panel found otherwise—finding, in fact, that the proof was "beyond question." And Mr. George does not even specify which evidence he contends was insufficiently proven.

Mr. George's legal argument on this point is based on (1) a misunderstanding of what constitutes a "knowing" misrepresentation to a court under the applicable rules and (2) an apparent belief that Disciplinary Counsel needed to prove a specific intent to mislead the court as opposed to a false statement of fact or law made without an objectively reasonable basis for believing that it was true. *See Off. of Disciplinary Couns. v. Price*, 732 A.2d 599, 603–04 (Pa. 1999).

Finally, Mr. George says that even if he did violate the applicable rules, disbarment is nevertheless a disproportionate sanction. That is not an issue on which Disciplinary Counsel was called upon to take a position below and he does not do so here except to note, respectfully, that the scope of any sanction was an issue for the district court to decide and it did not abuse its discretion here. Its decision may not properly be second-guessed by this Court even if one or more members

of the appellate court might have decided it differently. *Surrick*, 338 F.3d at 237.

Disciplinary Counsel also responds to an argument made by Mr. George's *amici curiae* who contend that because he was a prosecutor in Mr. Wharton's case, Mr. George had a "special responsibility to do justice" as he saw it. Disciplinary Counsel does not dispute that such a responsibility to do justice exists, but does not agree that that duty trumps or displaces other responsibilities that prosecutors have, including the duty of candor to the court, the obligation to take the interests of crime victims into account in considering what penalty to seek, and the duty to follow the applicable law—all of which Mr. George disregarded in this case.

### STANDARD AND SCOPE OF REVIEW

The district court "has the inherent authority to set requirements for admission to its bar and to discipline attorneys who appear before it." *In re Doherty*, No. 21-1258, 2021 WL 5190865, at \*2 (3d Cir. Nov. 9, 2021) (quoting *Surrick*, 338 F.3d at 229). This Court "review[s] district courts' decisions regarding the regulation of attorneys who appear before them for abuse of discretion." *Id.*

6

When that discretion is based upon the district court's factual findings, this Court reviews those findings only for clear error. *Id.* (citing *Adams v. Ford Motor Co.*, 653 F.3d 299, 304 (3d Cir. 2011)). Clear error review applies to credibility determinations because they are "purely factual." *In re Malofiy*, 758 F. App'x 264, 267 (3d Cir. 2018). Here, both Judge Goldberg and the three-judge disciplinary panel held hearings and assessed Mr. George's credibility on that basis. This Court asks only whether the district court's "account of the evidence is plausible in light of the record viewed in its entirety." *Id.* (quoting *United States v. Price*, 558 F.3d 270, 277 (3d Cir. 2009)). This Court does not reverse in such a case even if it would have weighed the evidence differently if it had been the trier of fact. *Id.*

## COUNTER STATEMENT OF THE CASE

### A.   Procedural History

This Court remanded Mr. Wharton's habeas corpus case on January 11, 2018, instructing the district court to consider a single issue: whether Mr. Wharton's trial counsel had been ineffective because he did not present evidence of Mr. Wharton's prison record as a mitigating factor for the jury to consider in the penalty phase of

Mr. Wharton's murder trial.  In addressing this issue, this Court told the district court (the Honorable Mitchell S. Goldberg) to "reconstruct the record and assess it anew" and that it cannot "merely consider the mitigation evidence that went unmentioned in the first instance" but "must also take account of the anti-mitigation evidence that the Commonwealth would have presented to rebut the petitioner's mitigation testimony."  *Wharton I*, 722 F. App'x at 282–83.

Ten months after the remand, the Philadelphia District Attorney's Office ("*DAO*") decided that Mr. Wharton's ineffective assistance of counsel claim was "not without merit" and, in February of 2019, it filed a "Notice of Concession" informing Judge Goldberg that the DAO was agreeing with Mr. Wharton "[f]ollowing review of [his] case by [the DAO's Capital Case Review Committee ("*CCRC*")], communication with the victims' family and notice to [Mr. Wharton's] counsel[.]"  App.221; Notice of Concession ¶ 9, *Wharton v. Vaughn*, No. 1-cv-06049-MSG (E.D. Pa. Feb. 6, 2019), Dkt. 155.  Two days later, the DAO and Mr. Wharton's counsel submitted a joint proposed order asking Judge Goldberg to state that he was granting death penalty relief "upon a careful and independent review of all parties' submissions and all prior

8

proceedings in this matter."  Notice of Joint Filing of Proposed Order, *Wharton v. Vaughn*, No. 1-cv-06049-MSG (E.D. Pa. Feb. 8, 2019), Dkt. 156.

Aware that he himself had not conducted any such careful and independent review of the record and, indeed, that he had not been provided with any facts or analysis explaining the DAO's change of position, Judge Goldberg declined to sign the proffered order, but he did give the DAO an opportunity to justify its concession.  In response, Mr. George filed a supplemental brief in which he assured the court that the DAO had "carefully reviewed the facts and law and determined that Wharton's ineffectiveness claim fulfill[ed] the criteria articulated in *Strickland v. Washington*, 466 U.S. 668 (1984)."  Brief at 3, *Wharton v. Vaughn*, No. 1-cv-06049-MSG (E.D. Pa. Apr. 3, 2019), Dkt. 162.  He also told Judge Goldberg that while the district court was not obliged to defer to the DAO's "careful[] review[] [of] the facts and the law," his colleagues on the district court had frequently done so in the past, and deference to the DAO's judgment was entirely appropriate such that the court could sign the order in reliance on what the DAO had done.  *Id.* at 3–5.

Judge Goldberg still declined to do so and, instead, concluded that he would need to hold a hearing on the subject. He also appointed the Pennsylvania Attorney General's Office ("**OAG**") to research the matter and participate as an *amicus curiae*. Order, *Wharton v. Vaughn*, No. 1-cv-06049-MSG (E.D. Pa. May 7, 2019), Dkt. 165. The OAG looked into Mr. Wharton's prison record and found significant anti-mitigation evidence, including a violent escape attempt and several prison misconducts. Thereafter, Judge Goldberg, over the DAO's objection, permitted the OAG to call and cross-examine witnesses at evidentiary hearings that lasted five days. *See* Transcripts, *Wharton v. Vaughn*, No. 1-cv-06049-MSG (E.D. Pa.), Dkts. 238, 250, 252, 267, 275. Having heard evidence submitted by both the DAO and the OAG, Judge Goldberg ultimately denied Mr. Wharton's ineffective assistance of counsel claim. *Wharton v. Vaughn*, No. 01-6049, 2022 WL 1488038, at *1 (E.D. Pa. May 11, 2022). That holding was subsequently affirmed by this Court. *Wharton II*, 95 F.4th at 113.

Judge Goldberg also questioned the propriety of Mr. George's conduct in making certain representations to the court. After conducting a sanctions hearing, Transcript of Show Cause Hearing

("Show Cause Tr."), *Wharton v. Vaughn*, No. 1-cv-06049-MSG (E.D. Pa. June 22, 2022), Dkt. 309, he concluded that Mr. George had violated Federal Rule of Civil Procedure 11 when he told the court that the DAO had conducted a careful review of the facts and law, and that the court could rely upon that review. He also found that Mr. George's representations regarding the DAO's communications with the victims' family were misleading and a violation of the rule. Judge Goldberg's Rule 11 sanctions were subsequently affirmed by this Court. *Wharton III*, 95 F.4th at 140.

As contemplated by the district court's local rules, *see* L. Civ. R. 83.6 § V(B), Judge Goldberg referred the question whether Mr. George should be disciplined for his conduct to the Chief Judge who, in turn, appointed Disciplinary Counsel and referred the case to a panel of three judges of the court. Appx-004; Appx-218. Disciplinary Counsel duly filed a Rule to Show Cause why Mr. George should not be disciplined for violations of Pennsylvania Rules of Professional Conduct 3.1 and 3.3. Appx-481. The DAO responded, and the disciplinary panel conducted a series of hearings after which it sent an R&R to the whole court. Appx-219 (R&R). The whole court met and ultimately decided to accept and

11

adopt the R&R.  Appx-305.  Mr. George has taken this appeal from that order.

## B.    Counter Statement of Facts

Although Mr. George and his *amici* express some doubt whether the disciplinary panel found the evidence presented to prove the case to be "clear and convincing,"[1] what the panel actually said was:  "The issue

---

[1] The district court's local rules provide that an attorney may be disciplined for misconduct (including violating the Pennsylvania Rules of Professional Conduct) and for good cause shown.  L. Civ. R. 83.6 § IV(A)– (B).  Neither this Court nor the district court has restricted what it considers to be "misconduct" or "good cause" under this rule, and, although this Court has held that a violation of the Pennsylvania Rules of Professional Conduct is a basis for discipline, it has not itself established that the district court should apply any particular standard of proof for finding such a violation or for imposing any particular discipline.

Under Pennsylvania law, disciplinary counsel has the initial burden of proving attorney misconduct "by a preponderance of the evidence and the proof must be clear and satisfactory."  *Price*, 732 A.2d at 603.  The Pennsylvania Supreme Court has recently held that this "clear and satisfactory" burden of proof is indistinguishable from a "clear and convincing" standard.  *See Off. of Disciplinary Couns. v. Anonymous Att'y*, 331 A.3d 523, 534–35 (Pa. 2025).  In any event, the burden then shifts to respondent to prove, where the charges relate to the making of false statements, that he or she had an objectively reasonable belief that his or her statements were true based upon a reasonably diligent inquiry. *Surrick*, 338 F.3d at 234–35 (citing *Price*, 732 A.2d at 603).

The district court was not required to apply any particular standard of proof in determining what sanction to impose.  Indeed, several circuits recognize that a preponderance of the evidence standard does not offend

is whether George knowingly or intentionally lied to Judge Goldberg by stating he and the DAO conducted a careful review of the facts and the law. He did—beyond any question." Appx-229. Disciplinary Counsel respectfully suggests that a "beyond any question" standard would be even more demanding than a "clear and convincing" standard. But rather than teasing out any difference between the two, it might be helpful to lay out those facts that are, as far as counsel is aware, not only clearly proven but actually entirely uncontradicted. Thus:

1.     The only remaining habeas claim in Mr. Wharton's case after this Court remanded it to the district court was whether Mr. Wharton's counsel had been ineffective because he had failed to

---

due process in disciplinary proceedings. *See In re Justice*, No. 20-5479, 2021 WL 3808965, at *4 (6th Cir. Aug. 26, 2021) ("Tennessee's use of a preponderance of the evidence standard [in attorney disciplinary proceedings] did not offend due process"); *see also id.* at *4 n.2 ("Several of our sister circuits have held that a preponderance standard does not offend due process in professional discipline proceedings" (citing *Tsirelman v. Daines*, 794 F.3d 310, 316–17 (2d Cir. 2015) (holding that using a preponderance standard in a physician discipline proceeding was constitutional); *In re Barach*, 540 F.3d 82, 86–87 (1st Cir. 2008) (holding that a preponderance standard was a "constitutionally permissible choice" in attorney discipline proceedings); *In re Att'y Discipline Matter*, 98 F.3d 1082, 1086–87 (8th Cir. 1996) (affirming a district court's imposition of reciprocal disbarment when the attorney was originally disbarred based on a preponderance of the evidence)).

introduce evidence of Mr. Wharton's adjustment to prison as a mitigating factor for the jury to evaluate when considering the imposition of the death penalty.

2. In order to determine the merits of this one remaining claim, this Court expressly directed the district court to consider, on remand, not only whatever mitigation evidence had gone unmentioned in the first instance, but also to take into account whatever anti-mitigation evidence the Commonwealth would have presented to rebut Mr. Wharton's mitigation argument. *Wharton I*, 722 F. App'x at 282–83. In this regard, this Court specifically noted that Wharton's prison records showed some "very serious misconducts." *Id.* at 283 n.21.

3. Mr. George had read the remand order and knew what it said. Appx-150:2–16. Nevertheless, on November 26, 2018, he submitted a report to the DAO's CCRC on the issue "whether to pursue capital punishment" in the *Wharton* case. Appx-233; Appx-168:7–170:14; Supp.App.001. In that report, Mr. George told the committee that Mr. Wharton had "remained on Graterford's death row for twenty-six years and in that time ha[d] remained a model prisoner" and cited favorable evidence ostensibly supporting Mr. Wharton's "[e]xemplary

14

conduct in prison." Supp.App.005. Mr. George did not disclose to the CCRC any negative evidence about Mr. Wharton's behavior in prison nor did he refer to the anti-mitigation evidence referred to in this Court's remand opinion. *Id.* The memorandum also listed seven "victim family contacts" but did not disclose whether any of them had actually been contacted. Supp.App.006.

4. When Mr. George submitted his memorandum to the CCRC, neither he nor anyone else in the DAO had actually checked Mr. Wharton's prison record, and they took the position in the district court that none of them knew what that record was. Appx-223; Appx-225.

5. As of the time the CCRC held its meeting to consider whether to pursue capital punishment in the *Wharton* case, no one at the DAO had contacted any of the seven members of the victims' family listed in Mr. George's memorandum. Thereafter (in December of 2018) the DAO contacted one of the seven family members listed, but it did not contact or communicate with Lisa Hart-Newman, the sole survivor of Mr. Wharton's criminal attack on her family. Appx-232.

6. Although the DAO had tried to prevent the OAG from calling or cross-examining witnesses at the hearing before Judge Goldberg, Appx-487–88 ¶¶ 15–16; Objection to OAG's Intervention, *Wharton v. Vaughn*, No. 1-cv-06049-MSG (E.D. Pa. Feb. 26, 2021), Dkt. 226, the OAG was ultimately allowed to call Lisa Hart-Newman as a witness and she testified that she was opposed to the proposed change in Mr. Wharton's death penalty sentence. Hr'g Day 3 Tr. 90:3–96:1, *Wharton v. Vaughn*, No. 1-cv-06049-MSG (E.D. Pa. Mar. 25, 2021), Dkt. 252. Judge Goldberg only learned of the family's opposition to the concession due to the OAG's participation as an *amicus*. Appx-232.

7. When it told the district court that it was conceding on the merits of Mr. Wharton's "adjustment to prison claim," the DAO had said that it had communicated with the victims' family and that it had decided to concede on Mr. Wharton's claim only after a "careful review of the facts and the law" applicable to that claim. Appx-213; Appx-235; Appx-237. The DAO also told the district court that the court could and should defer to the DAO's careful review of the facts and the law rather than proceeding to conduct its own hearing on the facts and law applicable to Mr. Wharton's claim. Had the district court signed the

16

order Mr. George gave him, the victims' family would not have been afforded the opportunity to be heard required by 18 U.S.C § 3771 and there would have been no independent review of the facts and law required by the Pennsylvania Supreme Court's decision in *Commonwealth v. Brown*, 196 A.3d 130, 146 (Pa. 2018).[2]

8.     At the time Mr. George told Judge Goldberg that he could sign the DAO's proposed order, Mr. George knew that Judge Goldberg had not himself conducted a careful and independent review of the record and, indeed, he did not expect that he would. Appx-175:21–176:9; Appx-224.  Mr. George also knew that the Pennsylvania Supreme Court had held in *Brown* that **someone** had to conduct such an independent review before the proposed relief could be granted.  Even so, he cited pre-*Brown* authority for the proposition that Judge Goldberg did not

---

[2] In *Brown*, the Pennsylvania Supreme Court "limited" the DAO's "practice" of conceding "many death-penalty cases without giving substantive reasons."  *Wharton III*, 95 F.4th at 150 (citing *Brown*, 196 A.3d 130, 146 (Pa. 2018)).  In doing so, the Court rejected an attempted concession by Mr. George and his office and held "that a district attorney's concession of error is not a substitute for independent judicial review."  *Id.*  *Brown* further held that "neither the parties, by agreement, nor this Court, absent a finding of legal error, have the power or ability to order that the jury's verdict be commuted to a life sentence without parole." 196 A.3d at 144.

17

need to hold a hearing but could and should defer to the DAO's own judgment on this issue.  Appx-483–84 ¶¶ 8–9; Brief at 3–5, *Wharton v. Vaughn*, No. 1-cv-06049-MSG (E.D. Pa. Apr. 3, 2019), Dkt. 162.

9.  Judge Goldberg ultimately declined to sign the proffered order accepting the DAO's concession and dismissing the claim. Instead, he asked the OAG to participate in the case as *amicus curiae*. Appx-214.  The OAG checked Mr. Wharton's prison records, and on July 22, 2019, revealed to the district court that those records disclosed substantial anti-mitigation evidence, including a violent escape attempt and at least six other examples of prison misconduct.  Appx-214–15; Appx-486 ¶ 12.

10.  Upon learning the truth about Mr. Wharton's prison record, Mr. George did **not** reconvene the CCRC in order to ascertain whether the "new" information might lead the DAO to reconsider its decision to concede on the merits of Mr. Wharton's claim.  Instead, Mr. George and the District Attorney concluded that the anti-mitigation evidence had no bearing on their previous decision and, in later proceedings before Judge Goldberg, Mr. George continued to insist that his office did not think that it owed the district court any explanation for the

18

representations it had made.  Show Cause Tr. 11:24–12:14, *Wharton v. Vaughn*, No. 1-cv-06049-MSG (E.D. Pa. June 22, 2022), Dkt. 309. Mr. George also told the disciplinary panel below that those representations were "entirely true," that the DAO had considered both mitigation and anti-mitigation evidence, and that his office had "independently evaluated Wharton's claims and reached a fact-specific decision to concede relief."  Appx-236–37.

Disciplinary Counsel does not understand Mr. George—or his counsel or *amici*—to dispute any of these facts.  Instead, what they say is that even these facts are insufficient to show that Mr. George's misrepresentations to the Court were made "knowingly" and that he had no specific intention to mislead the Court.  As is argued below (in Argument § II, *infra*), the district court found that Mr. George's misleading statements were made both "knowingly" and "recklessly" and therefore violated the ethical rules under the applicable law. Initially, however, Disciplinary Counsel addresses Mr. George's procedural due process argument.

19

**ARGUMENT**

## I. THE PROCESS THE DISTRICT COURT USES TO DECIDE DISCIPLINARY CASES DOES NOT DEPRIVE RESPONDENT LAWYERS OF DUE PROCESS OF LAW

For at least the last forty years, the District Court for the Eastern District of Pennsylvania has referred disciplinary matters to a panel of three of its judges. *See* L. Civ. R. 83.6 §§ V(A), (E), XIII. Typically, when a district judge believes there may be a reason to discipline a lawyer appearing before him or her, he or she refers the matter to the Chief Judge, who then appoints disciplinary counsel to determine whether to file a Rule to Show Cause why discipline should not be imposed. *Id.* § V(A), (D). If Disciplinary Counsel files such a Rule, it is referred to the three judge disciplinary panel (which does not include the district judge who initially raised the question). *See id.* § V(B). The lawyer whose conduct is the subject of the Rule then responds to the Rule and is afforded an opportunity to be heard. *Id.* After the hearing, if any, the three-judge panel issues an R&R, and that R&R is then referred to the full court, along with any objections thereto. *Id.* § V(E). The full court, including the judges who sat on the disciplinary panel, then decides whether discipline should be imposed. *Id.*

20

In their brief, Mr. George's counsel argue that this process is the equivalent of an appellate process in which the three-judge panel has acted as a trial court and the full court is acting as an appellate court reviewing the disciplinary panel's findings of fact and conclusions of law. Persuaded by their own analogy, counsel then say that the three judges who sat on the panel should therefore not participate in the full court's determination of what discipline should be imposed. But the fact is that the district court sitting as a whole is not sitting as an appellate court. A better analogy (albeit not entirely on all fours) is how an *en banc* court sits when considering a prior ruling of a panel of this Court. The members of the panel can still participate in the *en banc* court deciding the case, and their previous opinion has no legal effect until the Court rules *en banc*.

So, here, the disciplinary panel itself does not have the power to impose discipline; it can only issue an R&R. It is for the district court "as a whole"—including three members of the court who actually heard the case—to decide whether and what discipline should be imposed. The court does so after a meeting at which the members of the court

21

discuss the matter and ask questions. Neither disciplinary counsel nor counsel for the respondent attends that meeting.

Mr. George suggests that this long-established process is somehow unconstitutional. In support of this position, he cites cases in which appellate judges are not permitted to review cases in which they sat as trial judges or trial judges are not permitted to hear cases in which they participated as a party or counsel for a party. None of those cases applies here. The district court "as a whole" does not sit as an appellate court reviewing the decision of the disciplinary panel. It is, instead, the court that is actually deciding the case—in this instance deciding to disbar one of the lawyers appearing before it. The court hearing the appeal from that determination is this Court.

It is hard to understand how or why anyone would think this process fails to afford a respondent due process of law. Other district courts follow similar albeit not identical processes. In the Southern District of New York, the entire subject matter is referred to a committee of judges, which decides the case without further resort to the court as a whole. S.D.N.Y. L. Civ. R. 1.5(a) ("The chief judge will appoint a committee of the Board of Judges known as the Committee on

Grievances, which, under the direction of the chief judge will have charge of all matters relating to the discipline of attorneys. Magistrate judges and district judges may serve on the Committee on Grievances"); *id.* 1.5(d)(1), (4) (providing for evidentiary hearings before a magistrate judge of the court or before a panel of three attorneys and empowering the Committee on Grievances to impose discipline or to take such action as justice and the rules may require). Other district courts also use a panel of judges although the rules don't expressly specify whether the proposed discipline is considered by the full court. *See* W.D. Pa. Civ. R. 83.3(B)(4) (providing "that if the disciplinary proceeding is predicated upon the complaint of a Judge of this Court the hearing shall be conducted before a panel of three other Judges of this Court appointed by the Chief Judge"); M.D. Pa. L. R. 83.24.4 (same); D. Del. R. 83.6(e)(3) ("The show cause hearing shall be conducted by one or more Judges of the Court, as determined by the Chief Judge, and may include the Chief Judge"); *id.* 83.6(e)(4) ("After a show cause hearing, the Court may impose such sanctions as the circumstances warrant, including private admonition, public reprimand, suspension, or disbarment."). In New Jersey, a single judge hears the case but, as here, the ultimate decision

23

is left to the full court. *See* D.N.J. Civ. R. 104.1(e)(11) ("The full Court

shall review the findings of fact, conclusions of law[,] and

recommendations of the District Judge designated by the Chief Judge to

hear the matter, the transcript of the hearings and the briefs previously

filed with the Court, if any. The record may be supplemented by the

filing of briefs pursuant to a schedule fixed by the Chief Judge for

review on the record and briefs, without oral argument, by the full

Court. The full Court shall take whatever action it deems appropriate

. . . .").[3]

In fairness, it should also be said that Mr. George's counsel does

not really seem to believe that the members of the disciplinary panel

should have been strictly recused from participating in the meeting of

the full court when it decided to accept the R&R. *C.f.* Appx-244; Appx-

273 (Mr. George's objections). They just think that the members of the

---

[3] In New Jersey, the complaining judge who originally referred the disciplinary question to the Chief Judge does not participate in the deliberations of the full court, but the judge appointed by the Chief Judge to hear the disciplinary case and issue a report and recommendation does participate. So, here, Judge Goldberg, the judge who referred the matter to the Chief Judge below, did not participate in the decision of the full court but the judges who heard the disciplinary case and issued the R&R did participate.

panel shouldn't have been allowed to vote on the question. *Id.* Evidently, counsel believes the panel members could argue in favor of discipline at the closed meeting of the court—but, counsel says, they shouldn't get a vote. Presumably the district court could adopt such a rule if it thought it desirable. But Disciplinary Counsel is unaware of any district court that has done so, and "due process of law" certainly does not require it.

What Mr. George and his counsel really think, of course, is that the three judges on this particular disciplinary panel should not have voted because, counsel believes, they were biased against Mr. George. On this point, it is certainly true that the judges on the panel asked some tough questions. And they occasionally expressed skepticism about Mr. George's answers to those questions. But, with all due respect, the record was what it was. Mr. George and his colleagues at the DAO did what they did. Their conduct was and is difficult to defend or even explain. The panel's R&R reflected that fact. Mr. George was not entitled to a judge or judges who were willing to be as willfully blind to the merits of the case as he was to Mr. Wharton's actual prison record.

What Mr. George was entitled to—and what he got—was constitutionally sufficient due process including notice and an opportunity to be heard. He had notice of the charges, including from the Rule to Show Cause. He had notice of the law and standards. *See, e.g., Surrick*, 338 F.3d at 233–34. He was on notice of the procedures which, as noted, have been in place for over forty years. He had repeated opportunities to be heard and he was heard. He, via his able counsel, submitted multiple briefs and made various objections. He testified. It follows that he had due process.[4]

## II. MR. GEORGE PLAINLY VIOLATED DISCIPLINARY RULES 3.1 AND 3.3 IN THE *WHARTON* CASE.

Mr. George and his *amici* argue that even though he should have researched Mr. Wharton's prison record, his failure to do so was merely an "innocent mistake[]" that cannot be said to constitute a violation of the ethical rules. *See* Amicus Br. 6. While he subsequently made some inaccurate statements to the district court, they say, he did not make

---

[4] It is worth noting that the requirements of due process in attorney disciplinary proceedings are not as demanding as those afforded to a defendant in a criminal proceeding. *Surrick*, 338 F.3d at 233; *see also* n.1, *supra* (discussing cases regarding the burden of proof needed to satisfy the due process clause in a disciplinary case).

them "knowingly" or with any intention to mislead the court because he simply did not know what Mr. Wharton's prison record was. It follows, presumably, that the district court had no legal basis even to reprimand him for his conduct here.

But under the applicable law, Mr. George's statements were not "innocent mistakes." Although Mr. George says he did not "intentionally" mislead the Court, the word that is actually used in Rule 3.3 (and elsewhere) is "knowingly." And in determining whether a misrepresentation is made "knowingly," Comment 3 to Rule 3.3 draws a distinction regarding certain kinds of representations made by a lawyer:

> An advocate is responsible for pleadings and other documents prepared for litigation, but is usually not required to have personal knowledge of matters asserted therein, for litigation documents ordinarily present assertions by the client, or by someone on the client's behalf, and not assertions by the lawyer. *Compare* Rule 3.1. ***However, an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry.*** There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation.

Pa. R.P.C. 3.3, cmt. 3 (emphasis added).

The applicability of Comment 3 to Mr. George's misrepresentations in this case should be obvious. The representations in question were not about what some party or witness had said or done; they were about what the lawyers making the representations had said or done.

Mr. George and the DAO told the district court that they had decided to concede on Mr. Wharton's case only after undertaking a careful review of the facts and the law applicable to the question to be decided. They also said that their office had communicated with the victims' family prior to reaching the decision to concede. These were not representations about Mr. Wharton or his conduct—they were representations about what Mr. George and his office had done. And they were representations made in an effort to persuade Judge Goldberg that he did not need to conduct an evidentiary hearing because he could rely on the "careful review of the facts and law" that DAO had already conducted.

But the incontrovertible fact is that Mr. George and the DAO had ***not*** conducted a "careful review." Indeed, they had not even looked to see whether there was any anti-mitigation evidence on Mr. Wharton's

prison record—even though this Court had referred to the need to consider any anti-mitigation evidence when it remanded the case. Mr. George's statements to the Court were false and were made without conducting a reasonable (or indeed any) inquiry into their basis in fact. With regard to representations of this kind, it is not sufficient to say "I didn't know what the truth was" if you never conducted a reasonably diligent inquiry to find out. Whatever Mr. George knew, he and his office certainly failed to conduct the kind of reasonably diligent inquiry they were expected to conduct in order to comply with the Disciplinary Rules and the applicable law.

Mr. George suggests that this Court can only find an ethical violation here if it also determines that he ***intentionally*** misled the district court. But that is not what the law requires. Sufficient "intention" can be established in connection with a false statement to a court if the statement was made "recklessly." "Recklessness may be described as 'the deliberate closing of one's eyes to facts that one had a duty to see or stating as fact, things of which one was ignorant.'" *Price*, 732 A.2d at 604 (citing *Off. of Disciplinary Couns. Anonymous Att'y A*, 714 A.2d 402, 407 (Pa. 1998)).

Here, Mr. George told the court that his office had conducted a "careful review of the facts and the law" applicable to Mr. Wharton's case when it had done no such thing. Whether making that false statement to the District Court constituted an ethical violation "hinges upon whether respondent acted recklessly or with the support of a reasonable factual basis." *Off. of Disciplinary Couns. v. Surrick*, 749 A.2d 441, 444 (Pa. 2000). In examining a respondent's asserted belief regarding the truth of statements he or she made, Pennsylvania applies an objective standard. *Price*, 732 A.2d at 604 (rejecting respondent's argument that the Office of Disciplinary Counsel must prove respondent acted with purposeful intent, and "find[ing] that an objective standard, which examines the factual basis for the assertion, is necessary to protect the public, the profession[,] and the courts").

Applying that standard, the district court found that Mr. George knowingly and intentionally lied. *See* Appx-231 ("We nonetheless find that George's representations were intentional; they were certainly at least knowing under the objective standard."). And it makes no difference whether Mr. George actually knew about undisclosed anti-mitigation evidence, e.g., escape attempts. It is undisputed that no

"careful review" occurred.  The statement that it did was false.  At best, Mr. George's eyes were deliberately closed to the fact that no careful review had been done, and that a careful review was not the basis of the concession.

And—before we pass on from the question whether Mr. George's conduct amounted to "innocent mistakes"—it may be worth examining what Mr. George—and his lawyers—said and did once they learned that Mr. Wharton was not, in fact, the "model prisoner" Mr. George had described in his memorandum to the CCRC.  It is true that lawyers sometimes make mistakes and when they do—particularly when they involve statements they have made to a court—lawyers usually hurry to correct the mistakes they made.

In this case, Mr. George says he learned about the anti-mitigation evidence he had failed to tell the CCRC about on July 22, 2019, when the OAG disclosed it to the district court.  But he saw no reason to tell the CCRC about this "newly discovered" evidence or to ascertain whether it changed the CCRC's view on the concession.  And he continued to defend the concession and the supposed carefulness of his

office's review of the facts and the law upon which the concession rested.

Worse, even when it had become obvious that the DAO had failed to conduct the kind of review this Court had contemplated on remand and that Judge Goldberg was considering sanctions, Mr. George "steadfastly insisted that [he] ha[d] done nothing wrong, owe[d] no explanation, and w[ould] provide none." *See, e.g.*, Opinion at 12, 24, *Wharton v. Vaughn*, No. 1-cv-06049-MSG (E.D. Pa. Sept. 12, 2022), Dkt. 314; Show Cause Tr. 11:24–12:14, *Wharton v. Vaughn*, No. 1-cv-06049-MSG (E.D. Pa. June 22, 2022), Dkt. 309 ("Our position at this point, just to be clear, is that we don't think any explanation is necessary. . . . You know our position that they did not violate any lack of candor."). And, in response to the Rule to Show Cause in this case, he told the disciplinary panel that his misrepresentations were "entirely true and were not grounds for any sanction[.]" Supp.App.038–39. Indeed, he continued to take the position that "[t]he DAO carefully reviewed Wharton's *Strickland* claim—including both mitigation ***and anti-mitigation evidence***—and determined that relief was warranted and,

32

further that communications with the victims' family took place."

Appx-236–37 (emphasis in R&R).

Mr. George spent much of his efforts in the district court arguing that the DAO did not have a policy and practice of conceding relief in death penalty cases going so far as to cite several cases in which, he said, the office had declined to concede such relief. The disciplinary panel did not believe him, noting that he had been able to cite no cases in which the DAO ended up defending the imposition of the death penalty and that the OAG had found over 120 in which the DAO had conceded that relief.[5] But the fact is that Mr. George was disciplined not for his (or his office's) conduct in other cases, but for statements he made to Judge Goldberg in connection with one case—the *Wharton* case. And the false and misleading nature of those statements was not

---

[5] *See* Appx-299–300 (Disciplinary's Reply to Mr. George's Objections to the R&R) at 4 n.3 (noting Mr. George's proffered examples of his office defending the death penalty actually show that his office's practice is evidently to wait until the petitioner is able to challenge the imposition of the death penalty in a different proceeding and then to concede the point in that proceeding); *see also* Appx-492–94 (Rule to Show Cause) ¶¶ 28–30 (discussing apparent DAO policy of concession); Pet. for Exercise of King's Bench Jurisdiction, *Pet. of Fam. Members of Murder Victims Richardson & Crawford,* 20-EM-2023 (Pa. June 9, 2023).

just established by "clear and convincing" evidence—it was and is incontrovertible.

## III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN CONCLUDING THAT MR. GEORGE SHOULD BE DISBARRED.

The district court had discretion to impose the sanction of disbarment on Mr. George. *Surrick*, 338 F.3d at 229 (district courts possess the inherent authority to suspend and disbar the attorneys who appear before them); *see also In re Rodriguez*, No. 08-8037, 2008 WL 5273515, at *7 (3d Cir. Dec. 10, 2008) ("[E]ven in a reciprocal disciplinary proceeding arising following imposition of discipline in another court, a federal court has the power to determine who may be admitted to its bar."). And it did not abuse that discretion. Disbarment is an appropriate sanction for ethical violations involving making false statements of material fact. *Doherty*, 2021 WL 5190865, at *1–2 (affirming district court's disbarment of attorney for conduct including false statements where sanction was based on district court's assessment that attorney was not credible); *see also Off. of Disciplinary Couns. v. Wrona*, 908 A.2d 1281 (Pa. 2006) (adopting recommendation and disbarring attorney for making false statements and engaging in

other dishonest conduct); *Off. of Disciplinary Couns. v. Czmus*, 889 A.2d 1197, 1204–05 (Pa. 2005) (same). Here, the district court found Mr. George was not credible and that he had lied—repeatedly—to both Judge Goldberg and to the disciplinary panel. "Even if 'reasonable jurists may disagree' with the District Court's decision to order [Mr. George's] disbarment if 'called upon to examine [the same evidence] in the first instance,' that decision, in and of itself, was not unreasonable. Accordingly, [it] must affirm." *Doherty*, 2021 WL 5190865, at *3 (quoting *Surrick*, 338 F.3d at 237).

Disciplinary Counsel was not asked to opine below on the appropriate sanction for Mr. George's conduct and we do not do so here. That was a matter for the district court to decide. That having been said, we point out some of the reasons why, we believe, the district court may have acted as it did.

***First***, Mr. George was trying to convince Judge Goldberg to sign an order he could not legally sign. This is so because after the Supreme Court of Pennsylvania's ruling in *Brown*, it was settled law the ***someone*** had to conduct a careful and independent review of the merits of Mr. Wharton's claim before it could be granted. Mr. George knew

that Judge Goldberg had not conducted such a review and, in fact, he conceded that he did not expect him to. *See* Appx-175:21–113:9; Appx-224. Nevertheless, the order he pressed on Judge Goldberg suggested that the judge had done so. Moreover, Mr. George told Judge Goldberg that even though he was not obliged to defer to the DAO's judgment, he was free to do so without conducting any review or hearing of his own, citing six Eastern District cases in which judges had done just that— but not noting that all six of the cases antedated *Brown*, which made it clear that that is exactly what a district court could not do. *See* n.2, *supra.* Similarly, under 18 U.S.C. § 3771, the court had an obligation to ensure that members of the victims' family had been given a reasonable opportunity to be heard on the proposed death penalty relief. Mr. George sought to assure the court that his office had taken care of this legal requirement, even though it had not. It thus would have been error for Judge Goldberg to sign the order Mr. George gave him. And Mr. George, who had argued unsuccessfully in *Brown* that a court was obliged to defer to the DAO's determination in such a case, knew that.

*Second*, the disciplinary panel considered the effort to "reverse" the jury verdict in Mr. Wharton's murder trial to be an abuse of both

the DAO's authority and that of a federal court in a habeas case. As the

panel stated in the R&R:

> Lies like those George told Judge Goldberg are even more problematic when asking a federal court to disturb a state-court conviction. "Comity is the backbone of federal habeas review." [*Johnson v. Superintendent, Mahanoy SCI*, 23-2531, 2025 WL 1922769, at *1 (3d Cir. July 14, 2025)]. By conceding relief in the manner he did, George was hoping that Judge Goldberg would simply trust him and "blindly" vacate a state court's sentence of death, which would improperly intrude on a "sovereign judicial system" and would "be a disservice to the [Commonwealth of Pennsylvania] and an abdication of [the court's] obligation to ... decide cases upon proper constitutional grounds." [*Sibron v. New York*, 392 U.S. 40, 58–59 (1968)]. Further, by asking Judge Goldberg to agree to the concession based on falsehoods, the DAO was "undermin[ing] the state [supreme] court's insistence that the executive branch lacks the authority to unilaterally 'reverse a jury's verdict without any judicial review.'" *Johnson*, 2025 WL 1922769, at *5 (quoting *Brown*, 196 A.3d at 146)).

Appx-229–30.

***Third***, Mr. George refused to provide an explanation for what the

DAO had decided. And he steadfastly continued to do so throughout the

proceedings before Judge Goldberg. Thus, when the Rule 11 issue was

before this Court in 2024, the DAO had yet to disclose the actual

memorandum that George had distributed to the CCRC—a

memorandum that showed that notwithstanding this Court's express

instruction in the 2018 remand opinion, the CCRC had not considered

*any* anti-mitigation evidence. Supp.App.005. This memorandum was not disclosed on the ground that it was privileged as a confidential "deliberation" by the DAO.[6] Given the remand order, the DAO's reasons for protecting this memorandum and for refusing to explain its reasoning on the concession may have made sense as a litigation strategy, but the disciplinary panel was certainly free to conclude that it tended to show an intention to mislead.[7]

---

[6] *See* Show Cause Tr. 59:18–22, 66:14–67:18, *Wharton v. Vaughn*, No. 1-cv-06049-MSG (E.D. Pa. June 22, 2022), Dkt. 309; Supplemental Memorandum in Opp'n to Sanctions at 2 n.3, *Wharton v. Vaughn*, No. 1-cv-06049-MSG (E.D. Pa. July 14, 2022), Dkt. 312 ("Respondents objected to the hearing based on the arguments in Respondents' Motion to Cancel and Dismiss (ECF 300), the changing nature of the scope of the hearing, the Court's interpretation of the Third Circuit's opinion, and the privileged deliberations of the DAO's [CCRC].") (citing Appx-382:2–388:14); Appx-488 (Rule to Show Cause) ¶ 16 (noting Judge Goldberg was unable to obtain a clear explanation of what the CCRC considered and why it made the decision it made because of the invocation of the deliberative process privilege); Supp.App.019 (asserting Mr. George "properly lodged privileged objections to certain questions by the District Court based on the deliberative process privilege and work product—claims that the District Court accepted and did not challenge . . . .").

[7] Of course, the invocation of the deliberative process privilege, insofar as it was appropriate, was for the DAO itself—not Mr. George. The disciplinary panel raised a question—and held hearings—below on whether a conflict of interest might arise between the DAO and certain of its lawyers. The memorandum at issue was ultimately provided by one of the respondents once she had obtained separate counsel, and the privilege question is therefore moot.

***Fourth***, Mr. George and the DAO continued to argue that they had conducted a careful review even after they learned that they had missed all the anti-mitigation evidence. It is at least possible that a timely explanation and an expression of remorse would have helped the argument for a lesser sanction. *C.f. Doherty*, 2021 WL 5190865, at *2–3 (affirming sanction of disbarment where attorney failed to accept responsibility for her misconduct, noting that was a credibility determination and therefore reviewed for clear error); *Off. of Disciplinary Couns. v. Altman*, 228 A.3d 508, 517 (Pa. 2020) (refusing to credit acceptance of responsibility where the attorney's concern was with the impact on his own life and was accompanied with excuses). But that's not the course that Mr. George chose. This, coupled with overwhelming evidence that the DAO was continuing to follow its pre-*Brown* practice of conceding death penalty relief in each and every capital case may have led the district court to conclude that the misrepresentations in this case were not "innocent mistakes" but were, instead, part of a policy to work around Pennsylvania law on the subject. *See Johnson v. Superintendent, Mahanoy SCI*, 144 F.4th 178, 185–86 (3d Cir. 2025) (disapproving of breakdown of the adversarial

process by DAO's efforts to avoid judicial review of *habeas* relief and attempted end-run around *Brown*).

## IV. A PROSECUTOR'S DUTY TO "DO JUSTICE" DOES NOT TRUMP HIS OTHER LEGAL AND ETHICAL DUTIES.

Mr. George's *amici curiae* devote eight full pages of their brief to an argument that "prosecutors have a special responsibility to do justice." Amicus Br. 14–22. Disciplinary counsel agrees with that proposition. But this well-settled obligation, does not give a prosecutor *carte blanche* to overlook his other duties. For example, the American Bar Association has recognized that, based on their "public responsibilities, broad authority[,] and discretion," prosecutors have a "heightened duty of candor," which requires that they "not make a statement of fact or law" that they "do[] not reasonably believe to be true" and that they "correct a . . . representation of material fact or law" that they "reasonably believe[] is, or later learn[] was, false." Am. Bar Ass'n, *Criminal Justice Standards for the Prosecution Function* § 3-1.4(a)–(b) (4th ed. 2017) ("*Criminal Justice Standards*"); *see also* National District Attorneys Association, *National Prosecution Standards* § 6-1.1 (3d ed. 2009) (similar); *see also* Bruce A. Greene, *Candor in Criminal Advocacy*, 44 Hofstra L. Rev. 1105, 1115–19 & n.62

(2016) (describing the "higher degree of candor" expected of prosecutors). As this Court has observed, the ethics rules for prosecutors expressly prohibit a prosecutor from making "a statement of fact or law . . . that the prosecutor does not ***reasonably*** believe to be true, to a court." *Wharton III*, 95 F.4th at 148 (affirming Rule 11 sanctions) (quoting *Criminal Justice Standards* § 3-1.4(b)) (emphasis in *Wharton*).

And a prosecutor's already heightened duty may be even higher where, as here, Mr. George was aware there was no adverse party to consider his assertions. *See id.* at 149 ("Candor is especially critical when proceedings are non-adversarial. . . . So lawyers must be particularly candid in cases like this one, where both sides agree."). In other words, prosecutors have a responsibility not to make misrepresentations of fact or law to the court. And a belief that the death penalty is unjust does not relieve them of that duty to be truthful and candid.

A prosecutor also has a duty to follow the law applicable to his case and to accurately represent that law to the court. The disciplinary panel found that Mr. George did not do that here. His Notice of

Concession followed the DAO's standard practice prior to the

Pennsylvania Supreme Court's decision in *Brown*, which had

disapproved the practice, and his subsequent brief told Judge Goldberg

that his colleagues on the district court had routinely approved such

concessions citing six examples—all of them decided before *Brown*. *See*

Brief at 4–5, *Wharton v. Vaughn*, No. 1-cv-06049-MSG (E.D. Pa.

Apr. 3, 2019), Dkt. 162. The disciplinary panel concluded that this was

"an attempt at evading *Brown*, a strategy that, as outlined in yet

another more recent precedential opinion from the Third Circuit,

appears to be the [DAO's] *modus operandi*." Appx-218 (citing *Johnson*,

144 F.4th at 185 (noting that the DAO's concession in a separate case

was an attempt to "circumvent state law")) (other citation omitted)

(cleaned up). Nor does Mr. George have the excuse that he was

unaware of the holding in *Brown* when he told Judge Goldberg he could

follow the pre-*Brown* procedure. He had represented the DAO in that

very case and had championed the ultra-deferential position that the

Pennsylvania Supreme Court rejected.[8]

---

[8] In *McCarthy v. DEA*, 171 F.4th 245 (3d Cir. 2026), this Court declined to apply a "reckless" standard to a lawyer's misstatements of law where it was debatable whether the lawyer knew his statements were false

The *amici* also argue that "the finding that Mr. George knew of and consciously hid anti-mitigation [evidence] is in conflict with this Court's finding in the Rule 11 proceedings that Mr. George was negligent in failing to uncover this evidence." Amici Br. 11. Of course, Mr. George was indeed negligent in failing to discover any anti-mitigation evidence, particularly after this Court told him where to find it. But this Court, which does not sit as a finder of fact, did not "find" that Mr. George did not knowingly mislead Judge Goldberg when he told him that the DAO had conducted a careful review of the facts and the law applicable to Mr. Wharton's ineffective assistance of counsel claim. That issue was not presented on appeal from the Rule 11 sanction. When it was presented in the proceedings below, the disciplinary panel, aware (as neither Judge Goldberg nor this Court was aware at the time of the Rule 11 proceedings) that Mr. George had

---

because he had never read the applicable cases. *Id.* at 248 & n.2. The Court agreed with the dissent, however, that comment 3 to Rule 3.3(a) relating to representations by a lawyer would plainly apply to misstatements of fact. *See id.* Here, Mr. George made misstatements of fact and, as to his misleading statements regarding the law, it is certainly **not** debatable that he knew what the Supreme Court had held in *Brown*, a case in which he participated as counsel of record for the Commonwealth.

included **no** anti-mitigation evidence in his memorandum to the CCRC, found that he did knowingly mislead the court and its finding to that effect was not only not "clearly erroneous" it was, in the words of the R&R, "beyond any question." Appx-229.

Another responsibility that most prosecutors believe they have, even if it goes unrecognized (or at any rate unmentioned) by the *amici* here, is to take into account the interests of the victims of a given crime. On this subject, the *amici* briefly acknowledge that ABA standards provide that a prosecutor should "consider the interests of victims and witnesses," Amicus Br. 17, but they say nothing at all about 18 U.S.C. § 3771 and therefore give the reader no idea how they think that statute is supposed to work.[9] The statute provides that when a prosecutor proposes to concede defending a death penalty verdict, the victims' family must be given the opportunity to be "reasonably heard." Appx-233; *see also* 18 U.S.C. § 3771 (providing that victims and their

---

[9] It should be acknowledged that the *amici* cannot be fairly criticized for unfamiliarity with the record below. For one reason or another, much of it (e.g., the Rule to Show Cause, *see* Appx-481, and Mr. George's response thereto, *see* Supp.App.007–77) was and is under seal and the *amici*'s able counsel would not have been able to review it even if they wanted to.

families have rights to be informed, to communicate with the government, and to be heard at proceedings including at sentencing). Here, the DAO never spoke to Lisa Hart-Newman but led Judge Goldberg to believe it had. As this Court said in connection with the Rule 11 sanctions: "Any reasonable reader would expect, as Judge Goldberg did, that "communication with the victims' family" meant Lisa had been contacted. *See* Notice of Concession ¶ 9, *Wharton v. Vaughn*, No. 1-cv-06049-MSG (E.D. Pa. Feb. 6, 2019), Dkt. 155. Yet she was not. And any reasonable reader would expect, as Judge Goldberg did, that the Office had solicited the views of other family members. "Yet the Office had not contacted anyone besides Bradley's brother." *Wharton III*, 95 F.4th at 150. And even that communication took place only after the decision to concede on Mr. Wharton's ineffectiveness claim had been made. Appx-491 ¶ 24.

How, then, do the *amici* think that Lisa was supposed to be "reasonably heard"? In the end, she was—but only because the OAG called her as a witness at a hearing before Judge Goldberg. Hr'g Day 3 Tr. 90:3–96:1, *Wharton v. Vaughn*, No. 1-cv-06049-MSG (E.D. Pa. Mar. 25, 2021), Dkt. 252. But the OAG was able to do so only after

Judge Goldberg denied the DAO's motion to bar the OAG from calling and cross-examining witnesses. Objection to OAG's Intervention, *Wharton v. Vaughn*, No. 1-cv-06049-MSG (E.D. Pa. Feb. 26, 2021), Dkt. 226; Appx-487 ¶ 15. Evidently, none of this bothers the *amici*, believing as they do that a prosecutor's "special responsibility to do justice" as he or she sees it overrides any obligation to consider the interests of the victims or any duty to assist the court in ensuring compliance with 18 U.S.C. § 3771. But given the ABA standards and a federal statute regarding a victim's rights to be heard, how can distinguished "ethics scholars" defend a prosecutor's affirmatively opposing letting the one surviving victim have her day in court?

In fairness, much of the *amici*'s complaint focuses on their belief that the disciplinary panel ignored Mr. George's evidence about the supposedly systemic problems with homicide convictions and sentences in Philadelphia since 1978 and especially in the 1990s, Amicus Br. 15–21, and that this led the panel to conclude that the DAO was following a concession policy that it was not in fact following. *Id.* at 14–15. But the evidence that the DAO was following a policy of conceding death penalty relief was overwhelming. Mr. George himself could not

remember a single instance in which a member of the CCRC even suggested that the Office defend a previously imposed death sentence. Appx-227 (citing Appx-198:24–199:5). And when Mr. George's counsel attempted to challenge this assertion by raising several cases in which the DAO had not initially conceded relief, it turned out that in each of them the DAO ultimately did concede. Appx-227–28. Thus, even though Mr. George said that he was not following an office policy to concede in all capital cases, the district court did not believe him and that credibility determination cannot be said to have been based on a clearly erroneous view of the evidence presented. *See Travelers Cas. & Sur. Co. v. INA*, 609 F.3d 143, 156–57 (3d Cir. 2010).

All that having been said, however, the issue presented in this case was whether Mr. George and the DAO had misled Judge Goldberg by making false statements in the *Wharton* case. What the DAO did in other cases may have shed some light on the DAO's motive for acting as it did, but it did not itself make Mr. George's statements false or misleading, and he could not be disciplined on account of what other lawyers did or should have done in other cases.

## **CONCLUSION**

Lawyers may not lie to courts. And they may not state facts to courts—particularly on the asserted basis of their own knowledge—without having first reasonably investigated what those facts were. The district court found that Mr. George repeatedly violated both of these principles. These factual findings on Mr. George's credibility and lack of candor were reasonable and based on the observations of Mr. George's testimony as well as on other found (and m undisputed) facts. Mr. George received constitutionally sufficient due process, including notice and the opportunity to be heard. The imposition of the sanction of disbarment was a reasonable exercise of the district court's discretion and therefore must be affirmed.

Respectfully submitted,

*/s/ Alfred W. Putnam, Jr.*
Alfred W. Putnam, Jr. (Pa. No. 28621)
Renée M. Dudek (Pa. No. 325368)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, Pennsylvania 19103
(215) 988-2700 (telephone)
alfred.putnam@faegredrinker.com
renee.dudek@faegredrinker.com

<em>Counsel for Appellee U.S. District Court for the Eastern District of Pennsylvania</em>

Date: April 30, 2026

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g) and Local Rule 31.1, I certify the following:

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 8,846 words, excluding the parts exempted by Rule 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

3.    This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of the electronic brief is identical to the text of the paper copies and because CrowdStrike Falcon Sensor version 7.36.20805.0 was run on the file containing the electronic version of this brief and no viruses were detected.

*/s/ Alfred W. Putnam, Jr.*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 28.3(d)</u>

I hereby certify, pursuant to Local Rule 28.3(d), that all attorneys whose names appear on this brief are members of the bar of this Court.

<u>*/s/ Alfred W. Putnam, Jr.*</u>

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2026, the foregoing document was filed with the Clerk using the appellate CM/ECF system. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

*/s/Alfred W. Putnam, Jr.*