# United States Court Of Appeals

*for the*

# Third Circuit

Case No. 25-3264

IN RE PAUL M. GEORGE

On Appeal from the United States District Court
for the Eastern District of Pennsylvania, Misc. No. 22-mc-50

---

### REPLY BRIEF OF APPELLANT PAUL M. GEORGE

---

David Rudovsky
KAIRYS, RUDOVSKY, MESSING,
FEINBERG & LIN LLP
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400

Ilana H. Eisenstein
DLA Piper LLP (US)
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103
215-656-3351

*Attorneys for Appellant Paul M. George*

---

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION..............................................................................................................6

ARGUMENT ....................................................................................................................8

I. The Panel's Failure to Recuse from the Full District Court Vote Constitutes Reversible Error in this As-Applied Challenge to that Process .........................................................................................................8

II. The District Court Failed to Apply the Proper Burden of Proof ...........10

III. There is no Clear and Convincing Evidence that Mr. George Knowingly Violated Rules 3.1 or 3.3 ........................................................13

    A. The Record Does Not Support the Panel's Finding of a Blanket Concession Policy..................................................................14

    B. Mr. George Did Not Knowingly or Intentionally Mislead the Court Regarding His Review of the Record...................................17

    C. There is No Clear and Convincing Evidence That Mr. George Knowingly or Intentionally Misled the District Court Regarding the DAO's Communications with the Victims' Family...................................................................................21

IV. Disbarment Is a Disproportionate Sanction...........................................23

    A. Disciplinary Counsel's Arguments for Disbarment Fail...............23

    B. Disbarment Is Extreme, Unprecedented, and Unfair...................26

CONCLUSION ...............................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Clemmons v. Wolfe,*
   377 F.3d 322 (3d Cir. 2004) ...................................................................... 8

*Commonwealth v. Bagnall,*
   235 A.3d 1075 (Pa. 2020) ....................................................................... 28

*Commonwealth v. Brown,*
   196 A.3d 130 (Pa. 2018) ......................................................................... 20

*Commonwealth v. Brown,*
   No. 32-EM-2023 (Pa. Apr. 3, 2024) ....................................... 16, 20, 21, 24

*In re Doherty,*
   No. 21-1258, 2021 WL 5190865 (3d Cir. Nov. 9, 2021) .......................... 27

*Hicks v. City of Phila.,*
   753 F. Supp. 3d 409 (E.D. Pa. 2024) ....................................................... 11

*Joe v. Prison Health Servs., Inc.,*
   782 A.2d 24 (Pa. Commw. Ct. 2001) ....................................................... 25

*Karnoski v. Trump,*
   926 F.3d 1180 (9th Cir. 2019) ................................................................ 25

*Marshall* v. *Jerrico, Inc.,*
   446 U. S. 238 (1980) ................................................................................ 8

*McCarthy v. U.S. Drug Enforcement Administration,*
   171 F.4th 245 (3d Cir. 2026) ..................................................... 17, 18, 26, 27

*Off. of Disciplinary Couns. v. Anonymous Att'y,*
   331 A.3d 523 (Pa. 2025) ...................................................................... 10, 11

*Off. of Disciplinary Couns. v. Cappuccio,*
   48 A.3d 1231 (Pa. 2012) ......................................................................... 26

*Off. of Disciplinary Couns. v. Czmus,*
   889 A.2d 1197 (Pa. 2005) ........................................................................ 27

*Off. of Disciplinary Couns. v. Keller*,
  506 A.2d 872 (Pa. 1986) ..................................................................... 26

*Off. of Disciplinary Couns. v. Lucarini*,
  472 A.2d 186 (Pa. 1983) ..................................................................... 27

*Off. of Disciplinary Couns. v. Pozonsky*,
  177 A.3d 830 (Pa. 2018) ..................................................................... 26

*Off. of Disciplinary Couns. v. Preski*,
  134 A.3d 1027 (Pa. 2016) ................................................................... 27

*Off. of Disciplinary Couns. v. Price*,
  732 A.2d 599 (Pa. 1999) ............................................................... 17, 18

*Off. of Disciplinary Couns. v. Surrick*,
  749 A.2d 441 (Pa. 2000) ..................................................................... 18

*Off. of Disciplinary Couns. v. Wrona*,
  908 A.2d 1281 (Pa. 2006) ................................................................... 26

*Romero v. Beard*,
  No. 08-0528-KSM, 2024 WL 1975475 (E.D. Pa. May 2, 2024) ............... 28

*S.E.C. v. Graystone Nash, Inc.*,
  25 F.3d 187 (3d Cir. 1994) .................................................................. 25

*Tex. v. Cobb*,
  532 U.S. 162 (2001) ........................................................................... 12

*United States v. Arnold*,
  106 F.3d 37 (3d Cir. 1997) .................................................................. 12

*United States v. McLaughlin*,
  203 F. App'x 891 (9th Cir. 2006) ........................................................ 12

*United States v. McNair*,
  No. 22-7115, 2024 WL 1990935 (4th Cir. May 6, 2024)......................... 12

*Wharton v. Superintendent Graterford SCI*,
  95 F.4th 140 (3d Cir. 2024)........................................................... 19, 22

*Wharton v. Vaughn*,
  371 F. Supp. 3d 195 (E.D. Pa. 2019)................................................... 20

4

*Wharton v. Vaughn*,
   772 Fed App'x 268 (3d Cir. 2018) .................................................................. 19

*Wharton v. Vaughn*,
   No. 01-6049, 2012 WL 3535866 (E.D. Pa. Aug. 16, 2012) ........................................ 19

*Wharton v. Vaughn*,
   No. 01-cv-6049 (E.D. Pa. 2022) .................................................................*passim*

*Williams v. Beard*,
   637 F.3d 195 (3d Cir. 2011) ........................................................................ 19

*Williams v. Pennsylvania*,
   579 U.S. 1 (2016)......................................................................... 7, 8, 10

**Statutes**

18 U.S.C. § 3771 ......................................................................................... 22

28 U.S.C. § 47............................................................................................. 8

**Other Authorities**

Civ. R. 83.6(IV)(B)....................................................................................... 11

Civ. R. 83.6(V)(B) ........................................................................................ 9

D.N.J. Civ. R. 104.1(d)(9) ................................................................................ 9

L.R. 83.24.4................................................................................................. 9

LR 83.6(e)(3) .............................................................................................. 9

Pa. R. Prof'l Conduct 3.1 ........................................................................*passim*

Pa. R. Prof'l Conduct 3.3........................................................................ 17

Pa. R. Prof'l Conduct 3.3(a)(1)................................................................*passim*

Rule 11 ....................................................................................................... 27

## INTRODUCTION

The district court's finding that Paul George violated the Pennsylvania Rules of Professional Conduct and that the violation warranted disbarment rested on the unproven premise that Mr. George misled Judge Goldberg in service of a blanket District Attorney Office ("DAO") policy to concede capital relief without valid or legal support.

The frequency of concessions alone cannot establish impropriety as the Panel and Disciplinary Counsel suggest. The evidence instead showed the concession rate was explained by an extraordinarily high rate of constitutional errors in capital convictions in Philadelphia and, conversely, *no* evidence that Mr. George conceded error in other cases without reasonable legal or factual grounds. Further, the district court's conclusion that Mr. George engaged in knowing or intentional deception by representing to Judge Goldberg that he carefully reviewed the record in *Wharton v. Vaughn*, No. 01-cv-6049 (E.D. Pa. 2022) and that the DAO failed to inform the victims' family of the DAO decision to concede death penalty relief cannot be sustained where the court neither invoked nor satisfied the clear and convincing standard of proof required for a disbarment order. Disciplinary Counsel incorrectly attempts to water down the high standard of proof.

Separately, the district court's decision was infected with structural error when the Panel members who issued the Report and Recommendation ("R&R") participated in the review of their factual findings and legal conclusions following the Panel's

6

inquisitorial evidentiary hearing. Fundamental due process protections, as set forth in *Williams v. Pennsylvania*, 579 U.S. 1, 8-9 (2016), preclude judges from appellate review of their own conduct and rulings.

The sanction imposed—disbarment—for what is, at most, a single negligent error, cannot be sustained. Disciplinary Counsel does not grapple with the Panel's flawed rationale for this harsh result, which focused almost exclusively on its unsubstantiated opinion that Mr. George acted in this and other cases in furtherance of a purported DAO concession policy. And Disciplinary Counsel's newly proffered alternative reasons for disbarment cannot be a basis for affirmance, and in any event, fall far short. The facts here bear no resemblance to the extreme misconduct that Pennsylvania law requires for that severe punishment. No Pennsylvania attorney has been suspended or disbarred for a single violation of the Pennsylvania Rules of Professional Conduct 3.1 or 3.3(a)(1). Prosecutors meanwhile have rarely faced any discipline, even where their misconduct led to unconstitutional incarceration, including the imposition of a capital sentence. After nearly 50 years of exemplary service to the bar and public, it is manifestly unjust to impose the harshest of sentences on Mr. George for a single misstep in attempting to defend the constitutional rights of a capital defendant.

**ARGUMENT**

**I.    The Panel's Failure to Recuse from the Full District Court Vote Constitutes Reversible Error in this As-Applied Challenge to that Process**

The Panel violated a core due process principle by failing to recuse after taking on the role of inquisitor with manifest bias against Mr. George and the DAO. Appellant Opening Br. ("Op. Br.") 20-21; *see Clemmons v. Wolfe*, 377 F.3d 322, 325-28 (3d Cir. 2004) ("The bedrock principle . . . that 'no judge shall hear or determine an appeal from the decision of a case or issue tried by him'" applies not only to direct appeals, but to federal habeas reviews of a state court conviction where the habeas judge was the state trial judge (quoting 28 U.S.C. § 47)); *Williams*, 579 U.S. at 16 (due process ensures that "no member of the court is 'predisposed to find against him'" (quoting *Marshall* v. *Jerrico, Inc.*, 446 U. S. 238, 242 (1980))).

Initially, Disciplinary Counsel's suggestion that Mr. George did not object to the Panel's participation in the District Court's deliberations, Appellee's Br. 24-25, is in error. *See* App. to Op. Br. 273 (timely objection to Panelists' participation in the Court's consideration of Mr. George's objections to the R&R). On the merits, Disciplinary Counsel analogizes the Panel's participation and vote in the district court to a circuit panel member's participation in an *en banc* re-hearing. Appellee's Br. 21. But unlike the Panel in this case, which made factual findings and credibility determinations, appellate courts do not make findings of fact or credibility determinations. Moreover, judges who

sit on a panel or who participate in an *en banc* review, may not sit in review of their fact findings or legal conclusions.[1]

Indeed, to the extent Disciplinary Counsel represents that the Panel members were "argu[ing] in favor of discipline at the closed meeting of the court," Appellee's Br. 25 , such active advocacy underscores the due process concerns Mr. George has lodged*, see* App.305 ("The Members of the Disciplinary Panel participated in both the discussion before the vote and in the vote itself.").

Disciplinary Counsel also argues that other district courts use a similar process, and those processes have never been held unconstitutional. Appellee's Br. 22-23. Disciplinary Counsel points to no case, however, where those procedures were challenged. Moreover, Mr. George does not lodge a facial challenge to the voting process; rather, he objects to the Panel's failure to recuse in this case based on the Panel's inquisitorial posture, its demonstrated bias, and the fact that the full Court was reviewing the Panel's highly disputed factual findings and disbarment recommendation.[2]

---

[1] Disciplinary Counsel acknowledges that its analogy to *en banc* review is "not entirely on all fours" with the facts of this case. Appellee's Br. 21. Given that its analogy completely ignores the Panel's fact-finding function, Disciplinary Counsel's acknowledgement is a significant understatement.

[2] District courts in this Circuit preclude participation in the disciplinary process by the judge who refers the matter for discipline and was "involved in the proceeding." M.D. Pa. L.R. 83.24.4; *see also* D.N.J. Civ. R. 104.1(d)(9); D. Del. LR 83.6(e)(3); E.D. Pa. L. Civ. R. 83.6(V)(B); W.D. Pa. LCvR 83.3.B.1. The rationale for this non-participation rule is even stronger with respect to the judges who hear the disciplinary matter.

Disciplinary Counsel does not dispute that the Panel investigated and considered DAO practices well beyond Mr. George's conduct before Judge Goldberg in the *Wharton* case. Disciplinary Counsel also recognizes (though downplays) the disparity in the questioning of Mr. George by Panel members, including aggressive on-the-record exchanges reflecting a prejudgment of the case. Disciplinary Counsel's anodyne description of the evidentiary hearing—stating that the Panel asked "some tough questions" and "occasionally expressed skepticism about those questions," Appellee's Br. 25—cannot be reconciled with the record. The Panel's prejudgment, coupled with its participation in the vote adopting their R&R, violated Mr. George's due process rights.

Disciplinary Counsel fails to even address the ruling in *Williams v. Pennsylvania* of a structural due process violation based on a former district attorney's participation in appellate review of a death case in which he had only supervisory involvement. The reversal of the death penalty in *Williams* mandates the same remedy here, where judges who made credibility findings and conclusions of fact and law participated in a review of their actions.

## II. The District Court Failed to Apply the Proper Burden of Proof

As explained in Mr. George's Opening Brief, Disciplinary Counsel bore the burden of establishing that he violated the Rules of Professional Conduct by clear and convincing evidence. *See Off. of Disciplinary Couns. v. Anonymous Att'y*, 331 A.3d 523, 525-

26 (Pa. 2025). The failure of the Panel and the District Court to apply that standard of proof warrants reversal and remand.

In response, Disciplinary Counsel incorrectly contends that the "district court was not required to apply any particular standard of proof in determining what sanction to impose" and that "several circuits recognize that a preponderance of the evidence standard does not offend due process in disciplinary proceedings." Appellee's Br. 12-13 n.1 (citations omitted). But the Local Rule expressly incorporates the Pennsylvania Rules of Professional Conduct that were adopted and interpreted by the Pennsylvania Supreme Court. *See* E.D. Pa. L. Civ. R. 83.6.IV.B; *Hicks v. City of Phila.*, 753 F. Supp. 3d 409, 414 n.7 (E.D. Pa. 2024). Accordingly, the district court was required to apply a clear and convincing evidence standard in determining whether Mr. George violated the Rules of Professional Conduct.

Disciplinary Counsel also argues that the Panel implicitly adopted that standard by stating it was "beyond any question," App.229, that Mr. George "knowingly and intentionally lied to Judge Goldberg by stating he and the DAO conducted a careful review of the facts and the law." Appellee's Br. 13. But that rhetorical phrasing hardly demonstrates that the Panel applied the clear and convincing standard, which specifically "requires evidence that is so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, the truth of the precise facts [in] issue." *Anonymous Att'y*, 331 A.3d at 533 (alteration in original)

11

(citations and quotations omitted). The Panel did not explain how the evidence met this exceptionally high standard of proof.[3]

Disciplinary Counsel's argument that credibility determinations are "purely factual," and may be reversed only upon "clear error," Appellee's Br. 7 (quotation omitted), is erroneous. Credibility findings are fully subject to reversal where they were made without reference to the applicable standard of proof. *See, e.g., United States v. Arnold,* 106 F.3d 37, 44 (3d Cir. 1997) (vacating criminal sentencing determinations as plain error when made under the preponderance, not clear and convincing standard), abrogated on statutory grounds by *Tex. v. Cobb*, 532 U.S. 162 (2001); *see also United States v. McNair,* No. 22-7115, 2024 WL 1990935, at *4 (4th Cir. May 6, 2024) (vacating and remanding where "it's unclear what standard of proof the district court applied in making its findings"); *United States v. McLaughlin,* 203 F. App'x 891, 893-94 (9th Cir. 2006) (vacating criminal sentence where court applied preponderance not clear and convincing standard).

---

[3] Even if this "beyond any question" language could somehow be equated with the clear and convincing evidence standard, this supposed standard was applied only to the finding that Mr. George acted intentionally in misrepresenting to Judge Goldberg that he made a "careful review" of the record. App.229-30. The Panel's determination that Mr. George acted in furtherance of a blanket DAO concession "policy" was made without reference to any burden of proof and was unsupported by any evidence. *See* Op. Br. 2; *infra* pp. 9-12. The same is true of the Panel's conclusion that Mr. George violated Rule 3.1 "by implying that the victims' family had been contacted about and consented to the penalty-phase concession knowing that he had no factual basis for doing so." App.234.

The district court failed to articulate and apply the clear and convincing standard of proof, Mr. George timely objected and, therefore, under *de novo* review this Court should vacate and remand the disbarment order.

## III.    There is no Clear and Convincing Evidence that Mr. George Knowingly Violated Rules 3.1 or 3.3

As set forth in the Opening Brief, all of the Panel's relevant findings were predicated on its unsupported conclusion that the DAO had a "policy" of conceding error in every capital case and that Mr. George's concession in this case was made pursuant to that policy. Op. Br. 27. Disciplinary Counsel alleged in the Petition for Rule to Show Cause that the DAO had a policy of conceding death penalty relief in every case, regardless of the merits of the case. App.492. The Panel agreed, stating that Mr. George conceded death penalty relief in all post-conviction and habeas matters, that he was "mendacious" because he adamantly denied the existence of such a concession policy and that he was the "architect" of the policy's implementation. App.219, 226. Yet in characterizing the record as "overwhelming," Appellee's Br. 39, Disciplinary Counsel fails to identify any evidence that such a policy existed other than providing the number of conceded capital cases, *id.* 33.

Disciplinary Counsel's response is at war with itself. Disciplinary Counsel claims that the evidence that Mr. George's concession in the *Wharton* case was made pursuant to a blanket concession policy was "overwhelming," Appellee's Br. 39, but at the same time, Disciplinary Counsel (no doubt recognizing the evidentiary void in the record),

downplays the centrality of the purported DAO policy to the Panel's decision, *see* Appellee's Br. 33. In doing so Disciplinary Counsel concedes that, "[w]hat the DAO did in other cases may shed some light on the DAO's motive for acting as it did, but it did not itself make Mr. George's statements false or misleading, and he could not be disciplined on account of what other lawyers did or should have done in other cases." *Id.* at 47.

Disciplinary Counsel's arguments cannot be squared with the Panel's factual findings and legal conclusions and its clear statement that the sanction hinged on the unsupported finding that Mr. George was following a DAO concession policy in making the concession of error in *Wharton. See* App.209 ("George's conduct was intended to further a [DAO] policy, carried out under the guise of its Capital Case Review Committee, to vacate capital sentences.").[4]

## A. *The Record Does Not Support the Panel's Finding of a Blanket Concession Policy*

Disciplinary Counsel fails to address—much less dispute—the empirical data that the DAO's high concession rate is reflective of the prevalence of constitutional errors in capital cases and is not the result of a DAO "policy" of concessions. As set

---

[4] Contrary to Disciplinary Counsel's assertion that Mr. George does not "dispute any of the[] facts" outlined in his statement of the case, Appellee's Br. 19, Mr. George disputes the Panel's findings that he knowingly or intentionally misrepresented that he had carefully reviewed the record with respect to anti-mitigation evidence, that he failed to properly inform the victims' family of the DAO position, and the finding that he was acting pursuant to a DAO blanket concession policy.

14

forth in the Opening Brief, the reversal rates between the current and previous DA were effectively the same (72% reversal rate pre-DA Krasner vs. ~75% reversal rate under DA Krasner). Op. Br. 29. Mr. George provided testimony and documentary evidence that he opposed relief in other death penalty cases, that every concession he made was supported by the facts and legal issues in the case, and that the judges who granted relief did so based on an independent review of the records. App.510-65; 87-88; 109-12. Neither Disciplinary Counsel nor the Panel point to any evidence contradicting that testimony and neither identified a single other concession made by Mr. George that was not made on a sound factual and legal basis.

Disciplinary Counsel provides no evidence supporting the Panel's implausible speculation that Mr. George would engage in a complex, multi-year "stratagem" that would often begin with *opposition* to relief from a capital sentence. App.236. The absence of any support for the Panel's theory is particularly glaring in light of the fact that Disciplinary Counsel alleged the existence of a blanket concession policy, App.492, and that the Panel had access to the records in these cases. Yet, neither the Panel nor Disciplinary Counsel have pointed to a single case that rebuts Mr. George's testimony that he made a careful assessment of each case and that he did not engage in a blanket policy of conceding death penalty claims.[5]

---

[5] In the absence of any record evidence of improper concessions, Disciplinary Counsel references an amicus brief filed by the Pennsylvania Attorney General in a King's Bench Petition currently before the Pennsylvania Supreme Court that cited 120 Philadelphia post-conviction cases in which the Philadelphia DAO had conceded penalty relief.

The Panel's unsupported finding that Mr. George was acting in furtherance of a DAO concession policy was the primary reason for its adverse credibility determinations, its finding that Mr. George acted knowingly or intentionally, and ultimately its disbarment decision. *See, e.g.,* App.209 ("George's conduct was intended to further a [DAO] policy, carried out under the guise of its Capital Case Review Committee, to vacate capital sentences."); App.226 ("These machinations were pursuant to the DAO's policy to not only never seek the death penalty, but also to concede relief in every death penalty case that arises on post-conviction review."); App.229 (finding "the DAO established a policy, with Paul George at quarterback, to undermine duly imposed death sentences challenged in post-conviction proceedings. George filed the concession in *Wharton* pursuant to that policy, not as the result of any review, careful or otherwise, of the facts and the law"); App.231 ("Combined, these facts make clear that George intended to mislead the Court in order to achieve his policy goal. . . .").

---

Appellee's Br. 33 n.5 (citing *Commonwealth v. Brown*, No. 32-EM-2023 (Pa. Apr. 3, 2024)). The Attorney General provided no evidence that any of the concessions in those cases were without legal justification, that the DAO misled the courts, or that the courts granted relief without an independent review. Moreover, that brief lists all post-conviction and habeas reversals (including many non-capital cases), cases in which the DAO Conviction Integrity Unit and not Mr. George found grounds for a new trial (such as actual innocence or serious constitutional violations at trial), and cases involving concessions made by other District Attorneys.

The Panel's factual findings and legal conclusions are inextricably intertwined with its mistaken belief in a blanket DAO concession policy. Without evidence that supports the R&R, much less clear and convincing evidence to support that central finding concerning a blanket DAO policy, the district court's order and sanction should be reversed.

**B.** ***Mr. George Did Not Knowingly or Intentionally Mislead the Court Regarding His Review of the Record***

Once the Court disregards the unsupported "policy" findings, little remains that can support the conclusion that Mr. George knowingly or recklessly violated Rules 3.1 and 3.3. Disciplinary Counsel asserts that Mr. George violated Rule 3.3 on the ground that he was aware of the lack of investigation undertaken by the DAO concerning the anti-mitigation evidence and nevertheless represented that the office had undertaken a "careful review of the facts and the law." Appellee's Br. 27-29. Disciplinary Counsel further contends that under a "recklessness" standard, the "deliberate closing of one's eyes to the facts that one had a duty to see or stating as fact, things of which one was ignorant," is sufficient to establish a violation of the Rules of Professional Conduct. *Id.* at 29 (quoting *Off. of Disciplinary Couns. v. Price*, 732 A.2d 599, 604 (Pa. 1999)). Neither contention is valid.

First, Disciplinary Counsel fails to come to terms with this Court's decision in *McCarthy v. U.S. Drug Enforcement Administration*, 171 F.4th 245 (3d Cir. 2026), which found an attorney's conduct did not violate Rule 3.3(a)(1) where it was "debatable

whether he knew such statements were false as he failed to read the cases," even though the attorney failed to correct false statements made to the Court. *Id.* at 248-49. In *McCarthy,* an attorney filed an appellate brief that contained legal authority summarized and provided to him by a non-lawyer. *Id.* at 247. The attorney had neither read nor verified the authority at the time he submitted the brief, and only after subsequent briefing did he acknowledge that the authority was generated by artificial intelligence. *Id.* Disciplinary Counsel argues that "it makes no difference whether Mr. George actually knew about undisclosed anti-mitigation evidence," Appellee's Br. 30, but *McCarthy* ruled that Rule 3.3(a)(1) cannot be violated if Mr. George did not act knowingly or intentionally. Moreover, other than his negligent failure to search for additional anti-mitigation evidence outside the record, there was nothing inaccurate about Mr. George's statement that he made a "careful review" of *Wharton*'s post-conviction record.

Second, the Pennsylvania Supreme Court's rulings in *Price* and *Office of Disciplinary Counsel v. Surrick*, 749 A.2d 441 (Pa. 2000), did not equate negligence with recklessness and did not permit an inference of willful blindness where Mr. George reviewed the trial and post-conviction record and explained why that review captured the relevant anti-mitigation evidence, conduct that this Court determined was negligent.[6]

---

[6] The fact that the District Attorney decided to concede relief after the disclosure of the escape attempt without a further review by the Capital Case Review Committee does not show that the DAO or Mr. George did not have valid grounds to concede. Indeed, even after learning of Wharton's attempted escape conviction, Judge Goldberg still

Third, Disciplinary Counsel deflects from the key issue by argument that statements "purporting to be made on the lawyer's own knowledge" may be made only when the lawyer knows they are true or believes them true after "a reasonably diligent inquiry" and that Mr. George failed to make that inquiry in this case, Appellee's Br. 27-28 (quoting Pa. R.P.C. 3.3, cmt. 3). Mr. George did not knowingly or intentionally fail to search for anti-mitigation evidence. Following this Court's instruction on remand to "reconstruct the record and assess it anew . . . [to] take account of the anti-mitigation evidence that the Commonwealth would *have presented* to rebut petitioner's mitigation testimony," *Wharton v. Vaughn*, 772 Fed App'x 268, 282-83 (3d Cir. 2018) (emphasis added) (quoting *Williams v. Beard*, 637 F.3d 195, 227 (3d Cir. 2011)), Mr. George reviewed the 17-day death penalty hearing and all post-conviction and habeas pleadings and proceedings. As noted in the Opening Brief, the death penalty prosecutor knew of the escape attempt, Op. Br. 5, but determined it was "not material," and no mention of the escape attempt was made by the prosecution in the voluminous post-trial record. *See* App.147. As this Court has ruled, Mr. George was negligent in not searching Wharton's criminal record, but there is no basis to sustain the Panel's conclusion that there is clear and convincing evidence that he did so knowingly or intentionally. *See Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 150-51 (3d Cir. 2024).

---

issued a certificate of appealability on this issue on a determination that the claim was one on which jurists could have different views. *Wharton v. Vaughn*, No. 01-6049, 2012 WL 3535866, at *84 (E.D. Pa. Aug. 16, 2012).

Disciplinary Counsel also argues the Panel properly found a disciplinary violation on the grounds that Mr. George represented to Judge Goldberg that he could sign the proposed order without conducting an independent review of the reconstructed record. Appellee's Br. 35-36. To the contrary, the submission to Judge Goldberg, App.311, invited the court to engage in the review contemplated by *Commonwealth v. Brown*, 196 A.3d 130, 144-45 (Pa. 2018). The proposed order stated that relief was granted "upon a careful and independent review of all the parties' submissions and all prior proceedings in this matter." App.311. If Judge Goldberg had not yet conducted such a review, the proposed order was an invitation to do so *before* signing—not a fait accompli.

And that is exactly what happened. In accord with *Brown*, Judge Goldberg declined to sign, asked for further briefing, invited amicus participation, held evidentiary hearings, and ultimately denied relief. *See* Op. Br. 6-8. As the *Brown* court stated, "while the government's confession 'is entitled to great weight,' the obligation to properly apply the law rested with the Court rather than on the agreement of the parties." 196 A.3d at 148.

Judge Goldberg recognized that "the law requires that [he] independently evaluate the merits of Wharton's remaining claim." *Wharton v. Vaughn,* 371 F. Supp. 3d 195, 197 (E.D. Pa. 2019). Moreover, Mr. George correctly stated that the DAO "was ethically obligated to concede relief" in *Wharton*, but that the court was "not bound to[] accept that concession." App.317. Nothing about the proposed order, therefore, "suggested," Appellee's Br. 36—much less intentionally misrepresented—that Judge

Goldberg could or should grant relief in the absence of an independent judicial assessment of the DAO's concession, especially in light of *Brown*'s express language and Mr. George's unequivocal statement that the court was "not bound," App.317, to accept such a concession.[7]

### C.  *There is No Clear and Convincing Evidence That Mr. George Knowingly or Intentionally Misled the District Court Regarding the DAO's Communications with the Victims' Family*

The Panel's conclusion that Mr. George violated Rule 3.1 "by implying that the victims' family had been contacted about and consented to the penalty-phase concession knowing that he had no factual basis for doing so," App.234, is unsupported by clear and convincing evidence.

In December 2018, the DAO's Witness Victim Officer ("WVO") contacted Reverend Hart, the brother of the surviving victim, and informed him the DAO was considering conceding relief of the death penalty. *Wharton*, Victim/Witness Coordinator Aff., Dkt. No. 176-2, at 1-2. Reverend Hart represented that he served as a representative for the family and said he would discuss the matter with his family,

---

[7] Disciplinary Counsel insinuates that the cases cited by Mr. George in his supplemental briefing were designed to mislead the court because those cases "antedated *Brown*." Appellee's Br. 36. But those cases were referenced only to show that courts in the Eastern District of Pennsylvania regularly accepted the Commonwealth's concession. App.316. Disciplinary Counsel also failed to mention that immediately following these citations, Mr. George stated that the DAO's concession was "*not binding on this Court*" and that the court "*may, but is not bound to*, accept [DAO's] concession." App.317 (emphasis added).

including Lisa Hart-Newman, the surviving victim, and provide the WVO's contact information to them. *Id.* In January 2019, the WVO informed Reverend Hart that the DAO intended to agree to death penalty relief and Reverend Hart stated he and his brother would like to attend the hearing. *Id.* at 2. The WVO followed up by email, reiterating the request that Reverend Hart share the WVO's contact information with his siblings and other family members. *Id.* at 4.

Thus, it is undisputed that the DAO communicated with a member of the victims' family, and that Reverend Hart stated he would discuss the matter with other family members. The deficiency identified by the courts—that the DAO did not separately contact Ms. Hart-Newman—does not establish that Mr. George's representation that the victims' family was contacted was knowingly false. There is no evidence that Mr. George personally handled or directed these victim contacts; rather, consistent with DAO practice, the WVO was responsible for these contacts, and Mr. George reasonably relied on the WVO to fulfill the notification obligations. As noted, this Court sustained the district court's finding of negligence on the part of the DAO, not intentional deception by Mr. George. *Wharton v. Superintendent Graterford SCI*, 95 F.4th at 150.[8]

---

[8] Disciplinary Counsel separately asserts that the failure to directly contact Ms. Hart-Newman was relevant as she was in opposition to death penalty relief. Appellee's Br. 45-46. But this goes to the adequacy of the DAO's notification process—not to whether Mr. George knowingly made a false statement. Whether the communication was sufficient to satisfy 18 U.S.C. § 3771 is a separate question from whether Mr. George deliberately lied to the court in violation of the Rules of Professional

Disciplinary Counsel also suggests that the DAO's opposition to the OAG calling and cross-examining witnesses is evidence of an intent to conceal the family's opposition. *See* Appellee's Br. at 16, 45-46. But these objections were based on the legitimate institutional concern of OAG usurping the role of the DAO's office in capital cases and, in any event, was taken after the Notice of Concession was filed. App.181-82.

## IV. Disbarment Is a Disproportionate Sanction

Disciplinary Counsel does not directly defend the extreme sanction of disbarment, stating that the sanction was "a matter for the district court to decide." Appellee's Br. 35. Disciplinary Counsel nonetheless offers "some reasons why . . . the district court may have acted as it did" in disbarring Mr. George. *Id.* As Mr. George shows, none of these newly supplied reasons support this disproportionate sanction.

### A. *Disciplinary Counsel's Arguments for Disbarment Fail*

Disciplinary Counsel does not defend the Panel's flawed rationale for the extreme sanction of disbarment—that Mr. George acted in furtherance of the DAO's purported blanket concession "policy." As Mr. George demonstrates, the Panel's conclusion cannot be squared with Disciplinary Counsel's claim that "Mr. George was disciplined not for his (or his office's) conduct in other cases," but rather only for his

---

Conduct. Moreover, as Disciplinary Counsel notes, Ms. Hart-Newman testified in opposition to penalty relief, Appellee's Br. 45, though Judge Goldberg was charged with the duty to make the legal determination concerning habeas relief.

conduct in *Wharton*. Appellee's Br. 33. Rather, the Panel justified disbarment on the ground that Mr. George's concessions of death penalty relief in numerous cases aside from *Wharton* were in furtherance of the DAO's blanket concession policy.

That finding was critical to the Panel's factual findings and legal conclusions, and ultimately to the sanction. The Panel expressly stated it was recommending disbarment because Mr. George had a "dishonest or selfish motive" by placing the "DAO's policy priorities above its professional and prosecutorial obligations[,]" that he showed a "disregard for the authority of the judiciary" by trying to "use a federal court to bypass the state judiciary's limits on prosecutorial authority," and that he was the "chief architect of this stratagem" to concede relief in capital cases, "abrogating capital sentences whenever and however possible." App.235-36. The Panel also asserted that Mr. George "testified falsely when repeatedly denying the existence of a DAO policy to abrogate previously imposed sentences of death when it is beyond obvious that one exists and that the CCRC is the vehicle through which it is carried out." App.237.

Rather than defend the reasons provided by the Panel, Disciplinary Counsel sets forth hypothetical reasons the Panel could have articulated to justify disbarment. Thus, Disciplinary Counsel argues that the sanction was proper because Mr. George tried "to convince Judge Goldberg to sign an order he could not legally sign," Appellee's Br. 35, but as the record shows, Mr. George specifically recognized the court's independent legal obligation under *Brown*. App.311.

Disciplinary Counsel also attempts to support the Panel's conclusion that Mr. George's effort to "reverse" the jury verdict in *Wharton* was an "abuse of both the DAO's authority and that of a federal court in a habeas case," and further argues that if a federal court "blindly" vacated a state court's sentence, it would overstep its authority. Appellee's Br. 36-37. But there is no evidence that Mr. George lacked a legal basis to concede relief or that, in this case, Judge Goldberg would have "abuse[d]" his "authority" had the court vacated the sentence. *Id.* The question is whether Mr. George acted "*with the intent to deceive the court.*" A.B.A. Standards for Imposing Lawyer Sanctions § 9.1 (emphasis added). A hypothetical judgment's impact on "comity" says nothing about Mr. George's conduct, much less his state of mind.

Mr. George's invocation of an evidentiary privilege regarding DAO internal policy discussions also is not grounds "for inflicting sanctions when there is a valid invocation of" a privilege. *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 190-91 (3d Cir. 1994). Indeed, Judge Goldberg suggested that Mr. George should object if he thought "that [its] inquiries . . . impede or infringe on the privileges that you've raised." App.386.[9]

---

[9] Disciplinary Counsel claims that the DAO, and not Mr. George, had the authority to invoke the deliberative process privilege. Appellee's Br. 38 n.7. However, because the DAO is the holder of the deliberative process privilege, only the DAO, and not Mr. George, had the authority to waive it. *Joe v. Prison Health Servs., Inc.*, 782 A.2d 24, 33 (Pa. Commw. Ct. 2001) ("The deliberative process privilege benefits the public and not the officials who assert the privilege."); *Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir.

Finally, Disciplinary Counsel suggests that Mr. George's disbarment could be justified because he failed to express "remorse." Appellee's Br. 39. However, as discussed, Mr. George acknowledged his negligence in not searching Wharton's criminal record. App.138.

## B. *Disbarment Is Extreme, Unprecedented, and Unfair*

Pennsylvania reserves disbarment for only the most "extreme" circumstances, such as forgery, misappropriation, sexual exploitation, or broad patterns of deceit. *Off. of Disciplinary Couns. v. Keller*, 506 A.2d 872, 879 (Pa. 1986); *see also Off. of Disciplinary Couns. v. Pozonsky*, 177 A.3d 830, 840 (Pa. 2018) (disbarment of judge who stole drugs admitted into evidence in criminal cases to support drug habit); *Off. of Disciplinary Couns. v. Cappuccio*, 48 A.3d 1231, 1234-35, 1242 (Pa. 2012) (disbarment of Chief Deputy District Attorney who engaged in sexual relationships with minors in cases in which they were complainants); *Off. of Disciplinary Couns. v. Wrona*, 908 A.2d 1281, 1288-90 (Pa. 2006) (disbarment of attorney who falsely accused judicial officers of doctoring transcripts and audiotapes). This case shares none of those egregious features.

Mr. George's conduct does not even approach the attorney conduct addressed by this Court in *McCarthy*, which affirmed a sanction of *reprimand* where the attorney "misrepresented the legal authorities he cited," "failed to read the cases" cited, failed to

---

2019) (describing the circumstances under which an executive attorney may be compelled to disclose documents protected by the deliberative process privilege).

"correct those statements," and submitted "additional mischaracterizations of the citations in his Reply Brief." 2026 WL 850354, at *3. If a reprimand suffices for that conduct, then disbarment for, at most, a single episode of negligence—already sanctioned through "mild and fitting" Rule 11 remedies—violates the principle that "similar misconduct 'is not punished in radically different ways.'" *Off. of Disciplinary Couns. v. Preski*, 134 A.3d 1027, 1031 (Pa. 2016) (quoting ODC *v. Lucarini,* 472 A.2d 186, 190 (Pa. 1983)). Disciplinary Counsel cites no comparable case where disbarment or even suspension was ordered and upheld.[10]

As *amici* argue, it is also pertinent that prosecutors are rarely sanctioned for violating the constitutional rights of the accused. *See* Brief for Ethics Scholars as Amici Curiae Supporting Appellant, In Re George (No. 25-3264) at 24-26, Dkt. No. 32 (citing multiple examples of misconduct of prosecutors that received only private discipline or mild sanctions). Out of scores of cases in recent decades where Pennsylvania prosecutors have been found to have violated criminal defendants' constitutional rights,

---

[10] Disciplinary Counsel references *In re Doherty*, No. 21-1258, 2021 WL 5190865 (3d Cir. Nov. 9, 2021), and *Off. of Disciplinary Couns. v. Czmus*, 889 A.2d 1197 (Pa. 2005), to support disbarment. In *Doherty*, after being warned by the district court that the attorney's lawsuit was likely frivolous, the attorney proceeded to litigate the case in a manner that multiplied proceedings in an unreasonable and vexatious manner, resulting in over 200 docket entries. 2021 WL 5190865, at *1. Similarly, in *Czmus*, the Pennsylvania Supreme Court affirmed the decision to disbar the attorney because the "quantity and quality of [r]espondent's lies over such a long period of time is unlike anything witnessed by this Board in previous cases." 889 A.2d at 1203 (quotations omitted).

none resulted in disbarment and few led to any sanctions at all. For example, in *Romero v. Beard*, No. 08-0528-KSM, 2024 WL 1975475, at \*41 (E.D. Pa. May 2, 2024), no discipline ensued for the Pennsylvania OAG prosecutor whose false representation that two photo arrays were identical led to a *Brady* claim, years of unnecessary litigation, and caused the defendant to serve eight additional years in prison on what the court found to be a wrongful conviction. Similarly, in *Commonwealth v. Bagnall*, 235 A.3d 1075, 1077-78 (Pa. 2020), the Pennsylvania Supreme Court found the Pennsylvania OAG violated *Brady* where the prosecutor falsely and repeatedly denied the existence of any cooperation agreement with a key witness, but no discipline resulted. [11]

The unprecedented and extreme sanction imposed on Mr. George is without legal or factual support and should be vacated.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's decision and remand with directions that the disciplinary complaint against Mr. George be dismissed. Alternatively, the Court should reverse and remand for a new evidentiary

---

[11] Disciplinary Counsel's assertion that *amici* suggest that the duty to do justice "trumps" the duty of candor, Appellee's Br. 6, is a broad overstatement. *Amici* properly argue that a good-faith prosecutorial concession in a capital habeas case, coupled with an express recognition that the court must independently review the claim, does not support a finding of knowing deceit, absent clear and convincing evidence of knowing or intentional misconduct. Brief for Ethics Scholars as Amici Curiae Supporting Appellant, at 6-7, 20-21.

hearing before a new three-judge panel based on the significant and prejudicial errors discussed above.

Respectfully submitted,

David Rudovsky

*s/Ilana Eisenstein*
Ilana H. Eisenstein

*Counsel for Paul M. George*
June 1, 2026

## COMBINED CERTIFICATIONS

Undersigned counsel certifies as follows:

1.     Undersigned counsel is a member of the bar of the United States Court of Appeals for the Third Circuit. L.A.R. 28.3(d).

2.     This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,022 words.

3.     This Brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office in 14-point Garamond font.

4.     A copy of this brief was served on all counsel of record through the Court's Electronic Case Filing System.

5.     The text of the electronic brief is identical to the text in the paper copies to be filed with the Court. L.A.R. 31.1(c).

6.     A virus check was performed on the PDF file of this brief and no virus was found.

June 1, 2026

_s/Ilana Eisenstein_
Ilana H. Eisenstein